1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  TINHO MANG, #322146
   tmang@marshackhays.com
3  MARSHACK HAYS WOOD LLP
   870 Roosevelt
4  Irvine, California 92620
   Telephone: (949) 333-7777
5  Facsimile: (949) 333-7778

6  Attorneys for Chapter 7 Trustee,
   ARTURO M. CISNEROS
7

8              UNITED STATES BANKRUPTCY COURT

9          CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

10 | In re                          | Case No. 6:23-bk-15163-WJ
11 | SHAMICKA LAWRENCE,             | Chapter 7
12 |            Debtor.            | TRUSTEE'S MOTION FOR ORDER
   |                               | AUTHORIZING SALE OF REAL
13 |                               | PROPERTY: (A) OUTSIDE THE ORDINARY
   |                               | COURSE OF BUSINESS; (B) FREE AND
14 |                               | CLEAR OF LIENS; (C) SUBJECT TO
   |                               | OVERBIDS; AND (D) FOR
15 |                               | DETERMINATION OF GOOD FAITH
   |                               | PURCHASER UNDER § 363(M);
16 |                               | MEMORANDUM OF POINTS AND
   |                               | AUTHORITIES; DECLARATIONS OF
17 |                               | ARTURO M. CISNEROS AND BRIAN
   |                               | THOMPSON IN SUPPORT
18
19                                   Date:    May 21, 2024
                                     Time:    1:00 p.m.
20                                   Ctrm:    304
                                     Address: 3420 Twelfth Street
21                                            Riverside, CA 92501

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY

4868-7491-8323,v.1

# Table of Contents

1.   Summary of Argument ...........................................................................................1

2.   Factual Background ..............................................................................................2

    A.   Procedural and Factual History.................................................................2

    B.   Legal Description of the Property..............................................................3

    C.   Equity Buyback rejected; Subsequent Marketing.......................................4

    D.   Estimated Distribution of Proceeds ..........................................................6

    E.   Overbid Procedure ...................................................................................6

3.   Legal Argument ...................................................................................................9

    A.   By stipulation, there is no need to file an adversary proceeding to sell the co-
         owned Property. ......................................................................................9

    B.   There is a sound business purpose for the sale. ........................................9

    C.   The sale of the Property may be free and clear of all liens, claims, and
         interests pursuant to 11 U.S.C. § 363(f).................................................10

    D.   Trustee will make a decision on abandonment or retention of personal
         property prior to the date of the sale hearing. .........................................11

    E.   Buyers are entitled to a good faith determination.....................................12

    F.   Tax Consequences .................................................................................12

    G.   Waiver of the Fourteen-Day Period for Effectiveness of Sale Order ..........12

4.   Conclusion ........................................................................................................13

Declaration of Arturo M. Cisneros .............................................................................15

Declaration of Brian Thompson..................................................................................17

Request for Judicial Notice........................................................................................19

# Table of Authorities

**Cases**

*In re Baroni*,
   654 B.R. 334, 356-57 (Bankr. C.D. Cal. 2023) (Barash, J.)..............................................8

*Cogliano v. Anderson (In re Cogliano)*,
   355 B.R. 792, 806 (B.A.P. 9th Cir. 2006) .....................................................................9

*In re Continental Air Lines, Inc.*,
   780 F.2d 1223, 1226 (5th Cir. 1986) ...........................................................................10

*Filtercorp*, 163 F.3d at 577 (citing *Ewell v. Diebert (In re Ewell)*,
   958 F.2d 276, 281 (9th Cir. 1992) ...............................................................................12

*In re Gerwer*,
   898 F.2d 730 (9th Cir. 1990) .......................................................................................11

*Kallman & Comp. LLP v. Gottlieb (In re Lewis)*,
   515 B.R. 591, 594-96 (B.A.P. 9th Cir. 2014) ................................................................8

*In re Kellogg-Taxe*,
   2014 Bankr. LEXIS 1033 at *17 (Bankr. C.D. Cal. 2014) (Neiter, J.) .........................10

*Lahijani*,
   325 B.R. at 289 ...........................................................................................................10

*McCarthy v. Goldman (In re McCarthy)*,
   2008 Bankr. LEXIS 4688 at *56 (B.A.P. 9th Cir. 2008) ...............................................8

*Otto Preminger Films, Ltd. v. Qintex Entertainment, Inc. (In re Qintex Entertainment, Inc.)*,
   950 F.2d 1492, 1495 (9th Cir. 1991) ...........................................................................10

*Pacific Capital Bancorp, N.A. v. East Airport Development, LLC (In re East Airport Development, LLC)*,
   443 B.R. 823, 831 (B.A.P. 9th Cir. 2011) ....................................................................11

*Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.)*,
   163 F.3d 570, 577 (9th Cir. 1998) .........................................................................10, 11

1  *Pinnacle Restaurant at Big Sky, LLC v. CH SP Acquisitions, LLC (In re of Spanish Peaks Holdings*
2     *II, LLC)*,

3     862 F.3d 1148 (9th Cir. 2017) ............................................................. 10

4  *Simantob v. Claims Prosecutor, L.L.C. (In re Lahijani)*,

5     325 B.R. 282, 288 (B.A.P. 9th Cir. 2005) ........................................... 9

6  *Starky v. Birdsell (In re Starky)*,

7     522 B.R. 220, 228-29 (B.A.P. 9th Cir. 2014) ...................................... 9

8  *Thomas v. Namba (In re Thomas)*,

9     287 B.R. 782, 785 (B.A.P. 9th Cir. 2002) ........................................... 12

10 *Ung v. Boni (In re Boni)*,

11    240 B.R. 381, 386 (B.A.P. 9th Cir. 1999) ........................................... 9

12 *Walter v. Sunwest Bank (In re Walter)*,

13    83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) ........................................... 10

14 *In re Wilde Horse Enterprises, Inc.*,

15    136 B.R. 830, 841 (Bankr. C.D. Cal. 1991) ....................................... 10, 12

16 **Statutes**

17 § 363(b) ......................................................................................... 9, 12, 16

18 11 U.S.C. § 363(b) ............................................................................ 9

19 11 U.S.C. § 363(f) ............................................................................ 10, 11

20 11 U.S.C. §363(f)(2) ......................................................................... 11

21 11 U.S.C. § 363(h) ............................................................................ 9

22 11 U.S.C. § 363(i) ............................................................................ 8, 9

23 11 U.S.C. § 363(m) ........................................................................... 12, 14

24 Section 363 ..................................................................................... 10

25 Section 363(b)(1) ............................................................................. 10

26 Section 363(f) .................................................................................. 10, 11

27

28

**Other Authorities**

COLLIER ON BANKRUPTCY ¶ 6004.11 (16th ed. 2020) ........................................................................ 13

**Rules**

6004(h) ........................................................................................................................... 12, 16

Fed. R. Bankr. Proc. 7001(3) ........................................................................................ 9

FRBP 6004(h) ............................................................................................................... 12

FRBP 7001(3) ............................................................................................................... 9

Rule 6004 ...................................................................................................................... 12

Rule 6004(g) ................................................................................................................. 12

Rule 6004(h) ................................................................................................................. 12

Rule 7001(2) ................................................................................................................. 9

TO THE HONORABLE WAYNE JOHNSON, UNITED STATES BANKRUPTCY JUDGE, THE

OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

Arturo M. Cisneros, solely in his capacity as the duly appointed, qualified, and acting

Chapter 7 trustee ("Trustee") of the bankruptcy estate ("Estate") of Shamicka Lawrence ("Debtor"),

files this motion for order authorizing the sale of real property ("Motion") located at and commonly

known as 11364 Estates Court, Riverside, California 92503 ("Property"). In support of the Motion,

the Trustee represents as follows:

## 1.    Summary of Argument

A Chapter 7 Trustee may sell assets of a bankruptcy estate if there is a sound business

purpose. By this motion, Trustee is seeking a sale order approving the sale of 11364 Estates Court,

Riverside, California 92503 ("Property"), of which the Estate owns an undivided 50% interest, to

Jonathan Alarcon and Cindy Herrera ("Buyers"), for the amount of $1,700,000.00. Debtor's initial

scheduled value for the Property was $1,200,000,[1] which substantially (and all-too-conveniently)

undervalued the Property by $500,000. Trustee seeks authority to sell the Property to Buyers

pursuant to that certain Real Estate Purchase Agreement and Joint Escrow Instructions ("RPA"),

Addenda (collectively, "Trustee's Addendums", together with the RPA, "PSA"). A true and correct

copy of the PSA is attached to the Declaration of Arturo M. Cisneros ("Cisneros Declaration") as

**Exhibit 1**. The Property has no recorded liens and the proposed sale price is in excess of Debtor's

claimed homestead exemption of $635,000. The proposed sale will result in a significant benefit to

the Estate, including that the co-owner, the Lawrence Children's Trust u/t/a May 6, 2014 ("Trust")

has consented to the sale of the Property under the terms stated in the PSA, and Trustee anticipates

that the sale of the Property will result in a net recovery of $156,814 (as calculated below), of which

40% will be guaranteed by Trustee to be paid to unsecured, non-administrative creditors. The Court

should approve Trustee's proposed sale free and clear of monetary liens, claims and encumbrances,

subject to overbid[2], and find that Buyers are a good faith purchaser.

---

[1] The purchase price of the Property in 2012 was $1,250,000; Debtor's scheduled valuation would
suggest that there was a $50,000 decrease in the value of the Property over the past 11-12 years.
[2] The Overbid Procedures are provided for in Section E of the Motion.

MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY
4868-7491-8323,v.1

## 2.    Factual Background

### A.    Procedural and Factual History

On July 10, 2010, Debtor and her former spouse were married. The date of separation was April 24, 2012.

On or about June 21, 2012, as instrument number 2012-0287965, a grant deed was recorded in the Riverside County Recorder's Office, granting Martin Lawrence, as Trustee of The Lawrence Family Trust of 1994, U/D/T dated June 10, 1994, as amended ("Family Trust") certain real property located at 11364 Estates Court, Riverside, California 92503, APN: 136-050-035-9. The purchase price of the Property was $1,250,000, and the Property was purchased with the intention of providing a residence for the children until they reached the age of majority. In connection with a confidential marital settlement agreement, the Property would be conveyed in equal shares to Debtor and the Trust.

On August 25, 2014, as instrument number 2014-0321210, an interspousal transfer grant deed was recorded in the Riverside County Recorder's Office, transferring a 50% interest in the Property to Debtor, a single woman.

On the same day, as instrument number 2014-0321211, a grant deed was recorded in the Riverside County Recorder's Office, transferring a 50% interest in the Property to the Trust.

On November 3, 2023 ("Petition Date"), Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code commencing Case No. 6:23-bk-15163-WJ. On the same day, Arturo M. Cisneros was appointed as Chapter 7 Trustee of the Estate. Debtor's petition was filed without all schedules.

On November 17, 2023, as Dk. No. 10, Debtor filed schedules and a statement of financial affairs. Debtor's schedules listed the Property with a value of $1,200,000, and a homestead exemption pursuant to California Code of Civil Procedure § 704.730.

On April 9, 2024, as Dk. No. 61, Trustee filed a motion for an order compelling turnover of the Property by Debtor, with a requested deadline for turnover of May 15, 2024 ("Turnover Motion").

/ / /

MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY
4865-4749-4036,v.1

On April 18, 2024, as Dk. No. 71, Debtor filed an amended set of schedules, including an amended Schedule C providing a claimed homestead exemption of $635,000 ("Homestead Exemption"). A true and correct copy of Debtor's amended schedules is attached to the Request for Judicial Notice ("RJN") as **Exhibit 2**.

## B.     Legal Description of the Property

The Property is located at the highest point of a cul-de-sac, featuring extensive panoramic views, and is a five-bedroom residential real property with approximately 6,000 feet of gross living area (including a separated structure which includes a substantial amount of livable area), legally described as follows:

> THE LAND REFERRED TO HEREIN IS SITUATED IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS: LOT 8 OF TRACT NO. 30725, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK 375, PAGES 45 THORUGH 48, INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

> EXCEPT THEREFROM AN UNDIVIDED ONE HALF INTEREST IN AND TO ALL OIL, GAS, PETROLEUM, NAPTHA AND OTHER HYDROCARBON SUBSTANCES AND MINERALS OF WHATSOEVER KIND, REVERSED IN DEED FROM THE FEDERAL LAND BANK OF BERKLEY RECORDED JUNE 3, 1994 IN BOOK 624, PAGE 559, OFFICIAL RECORDS, RIVERSIDE COUNTY RECORDS.

> EXCEPT ALL MINERALS, OIL, GAS AND OTHER HYDROCARBON SUBSTANCES BELOW A DEPTH OF 500.00 FEET FROM TE SURFACE OF SAID LAND, WITHOUT THE RIGHT OF SURFACE ENTRY, AS SAID SUBSTANCES ARE MORE PARTICULARLY DESCRIBED IN AND RESERVED BY CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, A UTAH CORPORATION SOLE, IN THE DOCUMENT RECORDED ON JUNE 6, 2003 AS 2003-410157, OFFICIAL RECORDS.

> ASSESSOR'S PARCEL NUMBER: 136-050-035.

The title owners of the Property are Debtor, as a single woman, and the Trust, both of whom have a 50% title interest. Debtor acquired her interest in the Property in connection with a marital dissolution proceeding from her ex-husband, which was finalized in 2014. Together with her ex-husband, Debtor had two children, who are adults and the beneficiaries of the Trust.

/ / /

---

3

MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY

4865-4749-4036,v.1

In connection with Trustee's investigation of the Property, a preliminary title report was requested from Lawyers' Title Company. A true and correct copy of the preliminary title report ("PTR") dated February 29, 2024, is attached to the Cisneros Declaration as **Exhibit 3**. The PTR reflects no voluntary or involuntary liens recorded against the Property. Trustee is informed that prior to the Petition Date, the mortgage against the Property was paid off by Debtor's ex-husband. Debtor also did not schedule any secured debt against the Property.

## C.    Equity Buyback rejected; Subsequent Marketing

Trustee's broker examined the Property and provided a broker's price opinion of $1,800,000 based on comparable sales and current market conditions, which was $600,000 greater than Debtor's scheduled value.

On January 16, 2024, Trustee sent a equity buyback letter to Debtor, offering an opportunity to Debtor to purchase the equity in the Property (i.e. her calculated one-half share of the equity in the Property, minus her homestead exemption and costs of sale). Debtor declined the offer, and Trustee commenced marketing efforts due to Debtor's refusal of the equity buyback offer.

On January 30, 2024, as Dk. No. 39, Trustee filed an application to employ Brian Thompson of Winterstone Real Estate and Development ("Broker") as the Estate's real estate broker ("Broker Application"). Additionally, Trustee sent an equity buyback proposal to the Trust to repurchase the one-half share owned by the Estate.

In response, the Trust indicated initial nonconsent to Trustee's administration and sale of the Property. On February 14, 2024, as Dk. No. 45, Trustee filed a stipulation with the Trust regarding its consent to Trustee employing a broker ONLY, but no consent to marketing.

On February 28, 2024, as Dk. No. 49, the Court entered an order granting the Broker Application. On March 1, 2024, the Trustee and Trust conferred via videoconference and the Trust provided written confirmation that it consented to Trustee beginning to market the Property for sale. On March 22, 2024, the Property was listed for $1,895,000.

On March 23, 2024, an open house was conducted at the Property by Trustee's broker. Throughout the day, approximately 35 interested groups toured the Property, and Trustee immediately received two offers for the Property. Trustee negotiated these two offers and eventually

4

MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY

1  entered into the PSA with the Buyers, which was the best and highest offer for the Property.

2  Trustee's broker intends to hold another open house on the weekend of April 27, 2024 or May 4-5,

3  and to relist the Property at the overbid proposed price of $1,725,000.

4          On April 11, 2024, as Dk. No. 68, Trustee filed a second stipulation with the Trust

5  confirming its consent to market the Property for sale, but reserving the Trust's rights to approve of

6  any particular sale transaction ("Marketing Stipulation"). A true and correct copy of the Marketing

7  Stipulation is attached to the RJN as **Exhibit 4**. Additionally, in the Marketing Stipulation, the Trust

8  consented to the Trustee proceeding to seek authority to sell the Property without an adversary

9  proceeding, and provided an agreed-upon series of items for distribution of proceeds. By this Motion

10         Upon acceptance of the Buyers' offer, the Trust was provided with a copy of the PSA and

11  Trustee was informed in writing by the Trust that it consented to the sale of the Property upon the

12  terms of the PSA, and for a price of $1,700,000 or higher.

13         The Broker's marketing efforts included listing the Property on the CRMLS Matrix, multiple

14  showings, and open houses. Declaration of Brian Thompson ("Thompson Declaration"), ¶ 5. To

15  date, Broker estimates that he has received over 90 emails, calls, or texts, and during the two open

16  houses conducted by Broker, at least 35 groups toured the Property. On the Zillow.com website, as

17  of April 9, 2024, the Property had 2,713 views and 139 "saves"[3] which was over twice as many

18  views and saves as the directly adjacent property located at 11339 Morning Glory Ct., Riverside,

19  CA, which only had 1,312 views and 62 "saves" as of the same date. A true and correct copy of a

20  Zillow.com printout for the Property and adjacent property as of April 9, 2024 is attached to the

21  Thompson Declaration as **Exhibit 5**.

22         Trustee accepted the highest and best offer at a price of $1,700,000 from Buyers. Buyers

23  provided the Trustee with proof of funds, and transmitted an initial deposit of $52,500, which

24  Trustee is holding pending court approval and closing of the sale. Cisneros Decl., ¶ 7. Broker will

25  continue to market the Property up to the date of the sale hearing, with the objective of obtaining

26  overbidders for the Property and obtain the best and highest price for the Property.

27

28  [3] Zillow only tracks the views and saves for a particular listing on a 30-day rolling basis. Therefore,
it would be difficult to aggregate the views and saves for the overall listing period.

MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY

4865-4749-4036,v.1

## D.   Estimated Distribution of Proceeds

There are no recorded liens against the Property. Trustee proposes to pay any outstanding and pro-rated property taxes, commissions, costs of sale (*i.e.* escrow, title, transfer fees, etc.) and distribute gross and net proceeds in accordance with the Marketing Stipulation. At a sale price of $1,700,000, the proceeds would be estimated to be distributed as follows:

| Item | Amount | Running Remainder |
|------|--------|-------------------|
| Purchase Price | $1,700,000 | $1,700,000 |
| Property Taxes[4] | $9,581.34 | $1,690,418.66 |
| Commission @ 5%[5] | $85,000 | $1,605,418.66 |
| Costs of sale @ 1% (est.)[6] | $17,000 | $1,588,418.66 |
| Trust Reimbursement[7] | $4,790.67 | $1,583,627.99 |
| Trust Distribution (50%)[8] | $791,814 | $791,313.99 |
| Estate's Distribution (50%) | $791,814 | - |
| Debtor's Homestead | $635,000 | $156,814 |

As set forth in the table above, the sale of the Property is expected to result in net proceeds of approximately **$156,814** for the Estate, after payment of Debtor's homestead exemption in full. Of the net proceeds to the Estate, Trustee will ensure that at least 40% of such net proceeds will be distributed to non-administrative general unsecured creditors.

## E.   Overbid Procedure

To maximize the benefit to the Estate, Trustee is setting this sale subject to overbid pursuant to the procedures stated below. Accordingly, Trustee requests that the Court authorize him to implement an overbid procedure regarding the sale of the Property on the terms stated below.

---

[4] Marketing Stipulation, Paragraph 5(a).
[5] *See* Broker Application [Dk. 39], ¶ 12; Marketing Stipulation, Paragraph 5(b).
[6] Marketing Stipulation, Paragraph 5(b). Estimate is exclusive of property taxes, which are a separate line item.
[7] Marketing Stipulation, Paragraph 5(c).
[8] Marketing Stipulation, Paragraph 5(d).

MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY

4865-4749-4036,v.1

Any potential overbidder is encouraged to obtain a copy of the Motion and contact Trustee's counsel and/or Trustee's broker prior to the hearing. The Property will be sold subject to overbid at an open auction ("Auction") to be conducted by Trustee in open court at the time that this Motion is heard. Trustee has established the following overbid procedures, which shall govern any bidding:

1.      Any person or entity interested in purchasing the Property must serve Trustee and his counsel with an initial bid in conformance with these provisions ("Overbid"), such that any qualifying overbid is actually received no later than the close of business on May 20, 2024 ("Bid Deadline"), which is the day before the hearing on this Motion.

2.      Any entity that submits a timely, conforming Overbid shall be deemed a "Qualified Bidder" and may bid for the Property at the hearing. Any entity that fails to submit a timely, conforming bid shall be disqualified from bidding for the Property.

3.      Trustee shall have sole authority to determine whether a party is a Qualified Bidder.

4.      Any Overbid must remain open until the conclusion of the auction ("Auction") of the Property to be held at the hearing on this Motion.

5.      Any Overbid must provide for a minimum purchase price of at least $1,725,000 (*i.e.* $25,000 more than the accepted offer from Buyers).

6.      Any Overbid must be for the Property "as is," "where is," and "with all faults" and shall not contain any financing, due diligence, or any other contingency including any termination fee, or any similar fee or expense reimbursement, and must agree to substantially the same terms as set forth in the PSA.

7.      Any Overbid must be accompanied by a deposit of $52,500 in certified funds, which funds shall be nonrefundable if the bid is determined by the Court to be the highest and best bid for the Property ("Best Bid"), and the deposit shall be accompanied by proof satisfactory to Trustee that such bidder has sufficient funds to complete the sale.

8.      If Trustee receives a timely, conforming Overbid for the Property, the Court will permit Trustee to conduct an auction of such property at the hearing, in which all Qualified Bidders may participate. The Auction shall be governed by the following procedures: (a) All Qualified Bidders shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and to

MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY
4865-4749-4036,v.1

1  have waived any right to jury trial in connection with any disputes relating to the Auction or the sale

2  of the Property; (b) The minimum bidding increment during the Auction shall be $10,000;

3  (c) Bidding shall commence at the best bid presently received and accepted by Trustee; and (d) the

4  Court will resolve any disputes over whether Trustee has accepted the best bid ("Successful

5  Bidder").

6       9.    The Successful Bidder must pay, at the closing, all amounts reflected in the Best Bid

7  in cash and such other consideration as agreed upon.

8       10.   Any bidder other than the Successful Bidder may be deemed, upon their consent, as

9  the Back-Up Bidder who may be substituted for the Successful Bidder without further court order in

10  the event that the Successful Bidder fails to close escrow, at a set price.

11       Trustee believes that the requested overbid procedures, including the minimum initial

12  overbid of $25,000 and the minimum bidding increments of $10,000 is reasonable, and the bidding

13  procedures including the minimum overbid and the bidding increments will not chill bidding. *See*

14  *McCarthy v. Goldman (In re McCarthy)*, 2008 Bankr. LEXIS 4688 at *56 (B.A.P. 9th Cir. 2008).

15       Finally, prior to the filing of this Motion, Trustee negotiated with the Trust regarding its

16  rights under 11 U.S.C. § 363(i) to "…purchase such property at the price at which such sale is to be

17  consummated" at any time "[b]efore the consummation of a sale of property." *See* 11 U.S.C.

18  § 363(i); *see, e.g., Kallman & Comp. LLP v. Gottlieb (In re Lewis)*, 515 B.R. 591, 594-96 (B.A.P.

19  9th Cir. 2014) (analyzing at what point a sale would have been consummated for the purposes of

20  363(i)); *see also, e.g., In re Baroni*, 654 B.R. 334, 356-57 (Bankr. C.D. Cal. 2023) (Barash, J.)

21  (fashioning specific procedural terms to accommodate the debtor's 363(i) rights where a timely

22  objection was filed). Trustee was concerned that the lingering right of first refusal of the Trust would

23  chill bidding, and requested that the Trust, in connection with the PSA, *also* waive its right of first

24  refusal to permit overbidding to occur without any possibility of bidding being chilled. The Trust

25  informed Trustee in writing that it expressly waives its right of first refusal pursuant to the terms in

26  the PSA, provided essentially that any overbidder accept the same terms as the PSA. Therefore,

27  Trustee requests that, pursuant to consent by the Trust, an order be entered confirming the waiver of

28  the 11 U.S.C. § 363(i) rights held by the Trust.

MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY

4865-4749-4036,v.1

**3.     Legal Argument**

A trustee "may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).

### A.     By stipulation, there is no need to file an adversary proceeding to sell the co-owned Property.

The Bankruptcy Code permits the trustee to "sell both the estate's interest… and the interest of any co-owner in property…" 11 U.S.C. § 363(h). An adversary proceeding includes "a proceeding to obtain approval under § 363(h) for the sale of both the interest of the estate and of a co-owner in property." Fed. R. Bankr. Proc. 7001(3). The requirement of an adversary proceeding can be waived, or is otherwise subject to a harmless error analysis. *See Cogliano v. Anderson (In re Cogliano)*, 355 B.R. 792, 806 (B.A.P. 9th Cir. 2006) ("Rule 7001(2) requires an adversary proceeding, ***absent waiver or harmless error***…"); *see also Starky v. Birdsell (In re Starky)*, 522 B.R. 220, 228-29 (B.A.P. 9th Cir. 2014) ("The issue then becomes whether some procedural difference between contested matters and adversary proceedings prejudiced the Debtors in any meaningful way…"). "At a minimum, such a waiver requires that the parties be advised of and have an opportunity to address all the issues being decided." *Ung v. Boni (In re Boni)*, 240 B.R. 381, 386 (B.A.P. 9th Cir. 1999).

Prior to filing this Motion, Trustee engaged in negotiations with the Trust to avoid unnecessary litigation and complications arising from the procedural requirement to file an adversary proceeding to sell the Property. Pursuant to Paragraph 2 of the Marketing Stipulation, the Trust has expressly waived the procedural requirement of FRBP 7001(3) for the sale of the co-owned Property. Therefore, the Marketing Stipulation should be approved in connection with this Motion, and no adversary proceeding is required.

### B.     There is a sound business purpose for the sale.

"The court's obligation in § 363(b) sales are to assure that optimal value is realized by the estate under the circumstances." *Simantob v. Claims Prosecutor, L.L.C. (In re Lahijani)*, 325 B.R. 282, 288 (B.A.P. 9th Cir. 2005). For a trustee to sell property of the estate, "there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business…whether the proffered business justification is sufficient depends on the case."

MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY
4865-4749-4036,v.1

1   *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) (adopting the

2   language of *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986)). Section 363

3   even allows the trustee to sell "substantially all of the assets of the estate." *Otto Preminger Films,*

4   *Ltd. v. Qintex Entertainment, Inc. (In re Qintex Entertainment, Inc.)*, 950 F.2d 1492, 1495 (9th Cir.

5   1991); *see, e.g., In re Kellogg-Taxe*, 2014 Bankr. LEXIS 1033 at *17 (Bankr. C.D. Cal. March 17,

6   2014) (Neiter, J.); *see also, e.g., Pinnacle Restaurant at Big Sky, LLC v. CH SP Acquisitions, LLC*

7   *(In re of Spanish Peaks Holdings II, LLC)*, 862 F.3d 1148 (9th Cir. 2017). The court should approve

8   a sale of property under Section 363(b)(1) if the trustee has established a sound business purpose for

9   the proposed transaction. *Walter*, 83 B.R. at 16; *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830,

10  841 (Bankr. C.D. Cal. 1991) ("In any sale of estate assets, the ultimate purpose is to obtain the

11  highest price for the property sold."). The business judgment standard is deferential. *Lahijani*, 325

12  B.R. at 289 ("Ordinarily, the position of the trustee is afforded deference, particularly where

13  business judgment is entailed in the analysis or where there is no objection.").

14        The Property is being sold after a fair and open marketing process and will be sold subject to

15  overbids. As shown in the estimated distribution of proceeds, the sale of the Property is anticipated

16  to generate substantial funds with which creditors may be paid, of approximately **$156,814**, of which

17  40% will be paid to non-administrative general unsecured creditors.

18  ## C.   The sale of the Property may be free and clear of all liens, claims,

19  ## and interests pursuant to 11 U.S.C. § 363(f).

20        Trustee seeks authority to complete the sale free and clear of all liens, claims, and interests.

21  Section 363(f) allows a trustee to sell property of the bankruptcy estate "free and clear of any interest

22  in such property of an entity," if any one of the following five conditions is met:

23          (1) Applicable non-bankruptcy law permits a sale of such property free
                and clear of such interest;
24          (2) Such entity consents;
25          (3) Such interest is a lien and the price at which such property is to be
                sold is greater than the aggregate value of all liens on such property;
26          (4) Such interest is in bona fide dispute; or
27          (5) Such entity could be compelled, in a legal or equitable proceeding,
                to accept money satisfaction of such interest.

28

MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY

4865-4749-4036,v.1

1  11 U.S.C. § 363(f); *see e.g., Pinnacle Restaurant at Big Sky, LLC v. CH SP Acquisitions, LLC (In re*

2  *of Spanish Peaks Holdings II, LLC)*, 862 F.3d 1148, 1153-54 (9th Cir. 2017). Section 363(f) is

3  written in the disjunctive, such that satisfaction of any one of the five conditions is sufficient to

4  allow a trustee to sell property of the estate free and clear of liens. *In re Gerwer*, 898 F.2d 730 (9th

5  Cir. 1990).

6           i.      **The Property may be sold free and clear of the Trust's 50% co-**

7                   **ownership interest, with its interest satisfied according to the**

8                   **distribution in the Marketing Stipulation.**

9           A Chapter 7 trustee may sell free and clear of a lien if that interest holder consents. 11 U.S.C.

10  §363(f)(2); *Pacific Capital Bancorp, N.A. v. East Airport Development, LLC (In re East Airport*

11  *Development, LLC)*, 443 B.R. 823, 831 (B.A.P. 9th Cir. 2011).

12          Here, the Trust, which has a 50% co-ownership interest in the Property has consented to the

13  sale of the Property under the terms of the PSA. The Trust's consent to the sale of the Property is

14  based on Trustee's agreement to provide the specified distribution to the Trust of the defined net

15  proceeds as set forth in Paragraph 5 of the Marketing Stipulation. Therefore, Trustee requests that

16  the Marketing Stipulation be approved in connection with this sale, to confirm the Trust's consent to

17  the sale of the co-owned Property.

18          D.      **Trustee will make a decision on abandonment or retention of**

19                  **personal property prior to the date of the sale hearing.**

20          Debtor, through counsel, has demanded that Trustee provide his position on whether to

21  abandon or liquidate personal property located at the Property. Trustee will finalize his investigation

22  of such assets prior to the date of the sale hearing. However, at a minimum, any fixtures shall not be

23  removed from the Property, including specifically all of the fixtures located in the home theater at

24  the Property, including the leather-backed seats and theater equipment, shall not be removed from

25  the Property.

26  / / /

27  / / /

28  / / /

MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY
4865-4749-4036,v.1

### E.    Buyers are entitled to a good faith determination.

"A good faith buyer is one who buys in good faith and for value." *Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.)*, 163 F.3d 570, 577 (9th Cir. 1998) (internal quotation marks omitted). "[A]n actual finding of good faith is not an essential element for approval of a sale under § 363(b)." *Thomas v. Namba (In re Thomas)*, 287 B.R. 782, 785 (B.A.P. 9th Cir. 2002). "Good faith encompasses fair value, and further speaks to the integrity of the transaction." *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 842 (Bankr. C.D. Cal. 1991) (internal quotation marks omitted). "Lack of good faith is typically shown by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Filtercorp*, 163 F.3d at 577 (citing *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992)); *see also Thomas*, 287 B.R. at 785.

To the best of Trustee's knowledge, the Buyers have no connection with the Trustee, the Debtor, the Estate's creditors, and their respective professionals, and they are offering substantial value to the Estate for the Property. If the Buyers are the Successful Bidder, they should be entitled to receive a good faith determination under 11 U.S.C. § 363(m). To the best of Trustee's knowledge on this date, any other Successful Bidder would also be entitled to the protections of 11 U.S.C. § 363(m) because all potential purchasers are made aware of the Property through the public listings and all purchasers have the same opportunity to bid and overbid on the Property in accordance with the Overbid Procedures set forth above.

### F.    Tax Consequences

Trustee has employed a tax professional, Don Fife, who has informed Trustee that there will not be any tax consequences expected to accrue to the Estate as a result of the sale of the Property. Moreover, paragraph 5(e) of the Marketing Stipulation provides that the Estate and the Trust shall each bear their own portion of any capital gains taxes arising from the sale of the Property.

### G.    Waiver of the Fourteen-Day Period for Effectiveness of Sale Order

Rule 6004(h) provides that "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FRBP 6004(h). The legislative history to Rule 6004 provides:

MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY
4865-4749-4036,v.1

> The court may, in its discretion, order that Rule 6004(g) [now 6004(h)] is not applicable so that the property may be used, sold, or leased immediately in accordance with the order entered by the court. Alternatively, the court may order that the stay under Rule 6004(g) [now 6004(h)] is for a fixed period less than 10 [now 14] days.

Collier's states that "if an objection [to the sale] has been filed and is overruled, the court should eliminate or reduce the 14-day stay period only upon a showing that there is a sufficient business need to close the transaction within the 14-day period and the interests of the objecting party, taking into account the likelihood of success on appeal, are sufficiently protected." COLLIER ON BANKRUPTCY ¶ 6004.11 (16th ed. 2020).

In order to facilitate the timely and speedy close of escrow, Trustee respectfully requests that the 14-day stay of effectiveness of the sale order be waived in order to allow escrow to proceed without delay.

## 4. Conclusion

Based on the foregoing, Trustee respectfully requests that the Court grant this Motion and enter an order that provides that:

1. The Property in its entirety may be sold by Trustee pursuant to this Motion;

2. Trustee is authorized to sell the Property pursuant to 11 U.S.C. § 363 and is further authorized to pay, pursuant to demands submitted to escrow, all unpaid and outstanding *ad valorem* property taxes.

3. Trustee is authorized to sign all documents necessary to consummate the sale and close escrow, including, but not limited to, purchase and sale agreement, grant deed and escrow instructions;

4. Trustee is authorized to pay all customary costs of sale out of escrow;

5. Trustee is authorized to pay a broker's commission equal to 5% of the sale price, to be divided between seller's broker and buyer's broker according to customary practices;

6. The Marketing Stipulation is approved, and Trustee is authorized to make distributions in accordance with Paragraph 5 of the Marketing Stipulation, including the reimbursement to the Trust of the post-petition property taxes paid by the Trust, and to immediately

/ / /

MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY

remit the one-half portion of net proceeds as set forth in the Marketing Stipulation to the Trust, out of escrow;

7.    The proposed overbid procedures are approved, including that pursuant to consent by the Trust, it has voluntarily waived its rights under 11 U.S.C. § 363(i) in connection with this PSA and this proposed transaction, and shall not have the rights described in 11 U.S.C. § 363(i) solely with respect to this proposed sale transaction;

8.    The sale is in the best interest of the Estate, and the $1,700,000 sale price (or final bid price, if any) is fair and reasonable and represents a fair market value for the Property;

9.    The Buyers (or any Successful Bidder otherwise) are a good faith purchaser entitled to protection under 11 U.S.C. § 363(m);

10.   The sale of the Property shall be "as-is" and "where-is" with all faults and without warranty, representation, or recourse whatsoever;

11.   Should Buyers not timely complete the purchase of the Property pursuant to the terms of the PSA, Buyers' deposit shall be forfeited and the Back-Up Bidder, if any, may be substituted for the Successful Bidder without further order of the Court, and Trustee is authorized to proceed to sell the Property to such Back-Up Bidder;

12.   The 14-day stay regarding the effectiveness of the order is waived;

13.   This Court retains jurisdiction: (a) to interpret, enforce, and implement the terms and provisions of this sale; and (b) to resolve any disputes arising under or related to this order; and

14.   Such other and further relief as the Court may deem just and proper.

Dated: April 24, 2024                    MARSHACK HAYS WOOD LLP

                                         By: */s/ Tinho Mang*
                                             D. EDWARD HAYS
                                             TINHO MANG
                                             Attorneys for Chapter 7 Trustee,
                                             ARTURO M. CISNEROS

14

# Declaration of Arturo M. Cisneros

I, ARTURO M. CISNEROS, say and declare as follows:

1. I am the Chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of Shamicka Lawrence ("Debtor"). I am an individual over 18 years of age and competent to make this Declaration.

2. I have personal knowledge of the matters set forth in this Declaration, and if called upon to do so I could and would competently testify to these facts.

3. I seek approval to sell real property commonly known as 11364 Estates Court, Riverside, California 92503 (the "Property"). A true and correct copy of a preliminary title report for the Property as of February 29, 2024, which I received from the title company is attached as **Exhibit 3**. I am informed based on the preliminary title report, corroborated by Debtor's schedules, that the Property is not subject to any recorded liens.

4. Although Debtor originally scheduled the value of the Property as $1,200,000, I am informed that this was less than the purchase price of the Property in 2012. I believe that the Debtor substantially undervalued the Property in her schedules by at least $500,000, including in her latest amended schedules stating the value as $1,300,000.

5. I believe the sale of the Property is in the best interest of the Estate and will generate substantial funds to pay creditor claims. Prior to commencing marketing efforts, I made an equity buyback offer to the Debtor, which was rejected. After Debtor rejected my equity buyback offer, I made a similar offer to the co-owner of the Property, which was also rejected. With the rejection of the equity buyback to the co-owner, the Lawrence Children's Trust u/t/a May 6, 2014 ("Trust"), I commenced marketing efforts.

6. I negotiated and finally agreed on terms to sell the Property at the price of $1,700,000 to Jonathan Alarcon and Cindy Herrera ("Buyers"). The Buyers provided me with proof of funds, and transmitted an initial deposit of $52,500, which I am holding pending court approval and closing of the sale. A true and correct copy of the purchase and sale agreement for the Property at the price of $1,700,000 is attached as **Exhibit 1.**

---

15

MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY

4865-4749-4036.v.1

7.      I believe the overbid procedures proposed in the Motion regarding the qualification of overbidders, the first overbid of $1,725,000, and the subsequent minimum increment of $10,000 are appropriate and reasonable bidding procedures.

8.      I believe that it is appropriate and good cause exists for the Court to order that Rule 6004(h) is not applicable, and that the Property may be sold immediately upon entry of the order.

9.      To the best of my knowledge, the Motion satisfies the standards for approval of a sale of the Property outside of the ordinary course of business pursuant to § 363(b).

10.      There is no connection between me and the Buyers except through this sale. The sale was negotiated at arms' length through each parties' respective brokers. Accordingly, I believe good cause exists to make a finding that the Buyers or any overbidders are purchasing the Property in "good faith" pursuant to Section 363(m).

11.      I am informed by my duly employed accountant in this case, Don Fife, that there is not expected to be any applicable capital gains tax accruing to the Estate arising from the sale of the Property.

12.      After the filing of this Motion, I will conclude my investigation into whether to abandon or liquidate personal property located at the Property, including furniture and household goods which I understand the Debtor has claimed as exempt. I believe that the improvements constituting the home theater are fixtures which should not be removed from the Property by Debtor. Other than the home theater fixtures, I will advise the Court in advance of the hearing on the sale regarding any other personal property which I either intend to abandon or liquidate.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 23, 2024.

_____
ARTURO M. CISNEROS

MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY

4865-4749-4036.v.1

1

## Declaration of Brian Thompson

2        I, BRIAN THOMPSON, say and declare as follows:

3        1.      I am an individual over 18 years of age and competent to make this Declaration.

4        2.      If called upon to do so, I could and would competently testify as to the facts set forth

5    in this Declaration. The facts set forth below are true of my personal knowledge.

6        3.      I am a licensed real estate agent and employed with Winterstone Real Estate and

7    Development ("Firm"). 23792 Rockfield Blvd., Ste. 101, Lake Forest, CA 92630;

8    telephone (949) 981-9120.

9        4.      I have been hired by the Trustee to market and sell real property commonly known as

10   11364 Estates Court, Riverside, California 92503 (the "Property"), and my employment has been

11   approved by the Court. I am very familiar with the Property and the market for the Property based on

12   my experience as a real estate agent.  I have also personally conducted multiple open houses at the

13   Property.

14       5.      The Property has been listed on the CRMLS Matrix since March 22, 2024, with an

15   initial list price of $1,895,000. On March 23, 2024, I personally conducted an open house at the

16   Property. Throughout the day, approximately 35 interested groups toured the Property.

17       6.      I have continued to receive emails, phone calls, and texts from interested parties

18   regarding the Property. I estimate that I have received a total of 90 inquiries regarding the Property.

19       7.      On April 9, 2024, to create a "snapshot" of the marketing efforts to date, I visited the

20   Zillow.com website and created a screen capture of the Zillow listing for the Property, and also the

21   listing for 11339 Morning Glory Ct., Riverside, CA 92503, which abuts the Property. Attached as

22   Exhibit "5" is a true and correct copy of the screen captures that I took on April 9, 2024, showing

23   that the Property has garnered approximately twice as many views and "saves" as the adjacent

24   property, which was coincidentally listed for sale one day prior to the Property being listed for sale

25   (as of April 9th, the Property had been viewed at least 2,173 times and "saved" 139 times in

26   comparison to the abutting listing which had been viewed 1,312 times and "saved" 62 times).  I am

27   informed based on my familiarity with Zillow that the views and "saves" counter only tracks the last

28

4865-4749-4036,v.1

1  thirty days of the listing and does not reflect the lifetime activity of the listing, and solely for

2  Zillow.com  Other similar websites such as Redfin, Trulia, or the MLS itself either have their own

3  independent listing activity tracking or do not track views/saves at all. Because the listing is more

4  than thirty days old, a screen capture on today's date would be less informative than the April 9

5  screen capture.

6       8.    Based on my expertise and familiarity with the real estate market, I believe that this

7  offer represents a reasonable and fair market value for the Property.

8       9.    We will continue to actively market the Property and seek overbids up to the hearing,

9  including that I have scheduled an open house for the Property on April 27, 2024. The Property will

10  be re-listed at the first overbid price of $1,725,000 and we will attempt to obtain qualified

11  overbidders.

12      10.    There is no connection between me and the proposed Buyers. The transaction has

13  been negotiated at arms' length and the Buyers, if they are the successful bidder, qualifies as a good

14  faith purchaser for value.

15      I declare under penalty of perjury that the foregoing is true and correct. Executed on

16  April _24_, 2024.

17

18                  BRIAN THOMPSON

19

20

21

22

23

24

25

26

27

28

DECLARATION OF BRIAN THOMPSON

## Request for Judicial Notice

Arturo M. Cisneros, solely in his capacity as the duly appointed, qualified, and acting Chapter 7 trustee ("Trustee") of the bankruptcy estate of Shamicka Lawrence, hereby requests pursuant to Federal Rule of Evidence 201, that this Court take judicial notice of the following documents:

| EXHIBIT | JUDICIALLY NOTICED DOCUMENTS |
|---|---|
| 2 | On April 18, 2024, as Dk. No. 71, Debtor filed an amended set of schedules, including an amended Schedule C providing a claimed homestead exemption of $635,000 ("Homestead Exemption"). A true and correct copy of Debtor's amended schedules is attached as **Exhibit 2**. |
| 4 | On April 11, 2024, as Dk. No. 68, Trustee filed a second stipulation with the Trust confirming its consent to market the Property for sale, but reserving the Trust's rights to approve of any particular sale transaction ("Marketing Stipulation"). A true and correct copy of the Marketing Stipulation is attached as **Exhibit 4**. |

Dated: April 24, 2024                    MARSHACK HAYS WOOD LLP


By: _/s/ Tinho Mang_____
   D. EDWARD HAYS
   TINHO MANG
   Attorneys for Chapter 7 Trustee,
   ARTURO M. CISNEROS

Exhibit "1"

Authentisign ID: FB__B9-50FF-EE11-AAF2-6045BDD68161

**CALIFORNIA
ASSOCIATION
OF REALTORS®**

# BUYER COUNTER OFFER No. _1_
(C.A.R. Form BCO, Revised 6/23)

Date **April 20, 2024**

This is a counter offer to the Seller Counter Offer No. ___, OR ☐ Seller Multiple Counter Offer No. ___, ☒ Other **COUNTER**
**OFFER/ADDENDUM WITH TERMS AND CONDITIONS TO THE CA RPA & JOINT ESCROW** ("Offer"),
dated **April 20, 2024** , on property known as **11364 Estates Court, Riverside, CA 92503** ("Property"),
between **Jonathan  Alarcon, Cindy  Herrera** ("Buyer")
and _____ ("Seller").
Buyer and Seller are referred to as the "Parties."

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A. The Liquidated Damages and Arbitration of Disputes paragraphs in the Offer each require initials by all Parties. If either of those paragraphs is not initialed by **all** Parties, that paragraph is excluded from the final Agreement unless specifically referenced for inclusion in **paragraph 1D** of this or another Counter Offer or an addendum.
   B. Unless Otherwise Agreed or altered in another Counter Offer, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer, but the dollar amount of any initial and increased deposit and Seller credits shall remain unchanged from the original Offer.
   C. Unless Otherwise Agreed or altered in another Counter Offer, if in the original offer (such as **paragraph 3L(2)** of the RPA) the appraisal contingency amount is lower than the original offered price, then the dollar amount of any difference ("Appraisal Gap") shall remain unchanged and be deducted from the final contract price to create the final appraisal contingency amount. (For example, if the purchase price in the offer is $1,000,000, and Buyer reduces the appraisal contingency value to $950,000, the" Appraisal Gap" is $50,000. If the purchase price is increased to $1,200,000 as a result of this counter offer, the appraisal contingency value shall be adjusted to $1,150,000 ($1,200,000 less $50,000). If the property appraises below $1,150,000, Buyer may exercise the appraisal contingency right to cancel this Agreement.)
   D. **OTHER TERMS:** _The purchase price to be $1,700,000;_
      _All other terms and conditions on the Counter Offer / Addendum accepted by the buyer's and to remain the same._
      _____
      _____
      _____
      _____
      _____
      _____
   E. The following attached addenda are incorporated into this Buyer Counter Offer only when Signed by both Parties (if both Parties do not Sign and Deliver all attached addenda then any acceptance of this Buyer Counter Offer is not valid):
      ☐ Addendum No. _____     ☐ _____

2. **EXPIRATION:** This Buyer Counter Offer shall be deemed revoked and the deposits, if any, shall be returned:
   A. Unless by 5:00PM on the third Day after the date this Buyer Counter Offer is signed in **paragraph 3** (if more than one signature then, the last signature date)(or ☐ by _____ ☐ AM/☐ PM on _____ (date)) **(i)** it is Signed in **paragraph 4** by Seller and **(ii)** a copy of the Signed Buyer Counter Offer is Delivered to Buyer or Buyer's Authorized Agent.
   B. OR If Buyer withdraws this Buyer Counter Offer anytime prior to Seller's Acceptance by communicating withdrawal to Seller or Seller's Agent (C.A.R. Form WOO may be used).

3. **OFFER: BUYER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY. BY MAKING THIS COUNTER OFFER, ANY PREVIOUS OFFER OR COUNTER OFFER CAN NO LONGER BE ACCEPTED.** The terms and conditions of those documents are incorporated into this Buyer Counter Offer unless Otherwise Agreed.
   Buyer  _Jonathan Alarcon_                                    **Jonathan  Alarcon** Date 04/20/2024
   Buyer  _Cindy Herrera_                                        **Cindy  Herrera** Date 04/20/2024

4. **ACCEPTANCE: I/WE** accept the above Buyer Counter Offer and all Signed Addenda, if any, **(If checked ☐ SUBJECT TO THE ATTACHED SELLER COUNTER OFFER No. _____ OR SELLER MULTIPLE COUNTER OFFER No. _____)** and acknowledge receipt of a Copy.
   Seller  _X Crow , Trustee_                                    Date **4/21/24**
   Seller  _____                    Date _____

© 2023, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

BCO REVISED 6/23 (PAGE 1 OF 1)

**BUYER COUNTER OFFER (BCO PAGE 1 OF 1)**

WE'RE Real Estate, 965 N. Grand Avenue Covina CA 91724     Phone: (714)732-1429     Fax:     j&C
Jack Toro                                                   Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com

Authentisign ID: FF6557B9-50FF-EE11-AAF2-6045BDD68161

COUNTER OFFER/ADDENDUM WITH TERMS AND CONDITIONS TO THE
CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW
INSTRUCTIONS RECEIVED FROM **JONATHAN ALARCON AND CINDY
HERRERA**

**Property Address:**
**11364 Estates Ct., Riverside, CA 92503**, APN# 136-050-035
**("Property")**

1.  **Purchase Agreement:** This is the Seller's proposed Counter Offer/Bankruptcy Addendum to the California Residential Purchase Agreement and Joint Escrow Instructions dated April 17, 2024 in which JONATHAN ALARCON and CINDY HERRERA ("Buyers") are referred to as the Buyers and A. Cisneros ("Trustee/Seller"), exclusively in his capacity as Chapter 7 Trustee for the bankruptcy estate of Shamicka Lawrence ("Debtor"), Case No. 6:23-bk-15163-WJ, is the Seller ("Sale Agreement"). To the extent any terms are inconsistent between the Sale Agreement and this Bankruptcy Addendum, the terms of the Bankruptcy Addendum shall govern the transaction.

2.  **Seller:** In the Sale Agreement and all documents relating thereto, the Seller shall be defined as A. Cisneros, exclusively in his capacity as Chapter 7 Trustee for the bankruptcy estate of Shamicka Lawrence, Case No. 6:23-bk-15163-WJ.

3.  **Deposit:** The Initial Deposit shall be in the amount of **$52,500** ("Initial Deposit"). Buyers agree and are expressly aware that upon acceptance, their offer is **NON CONTINGENT** and the deposit shall be non-refundable if the Buyers cannot complete the sale as described herein, for any reason. Buyers' deposit will only be refunded if the Seller cannot close, for any reason, or Buyers are outbid at auction.

    _JA_ **(Buyer's Initials)**        _CH_ **(Buyer's Initials)**

4.  **Total Purchase Price:** The Total Purchase Price shall be **$1,725,000,** or an amount as increased by overbid at the Bankruptcy Court hearing to approve the sale.

5.  **Escrow, Closing and Title:** Escrow for the sale of the Property shall close as soon as possible, but not later than thirty (30) days after the date of entry of a Bankruptcy Court order approving this Sale Agreement. If the Buyers fail to pay the remaining purchase price (the final Bankruptcy Court approved purchase price after all overbids are received) on the thirtieth (30th) day after entry of the Bankruptcy Court order approving the sale of the Property, the Buyers expressly and unconditionally forfeit their Deposit and all such amounts become nonrefundable. The Seller may then sell the Property to the next highest bidder or re-market the Property. Escrow shall be held by A & A Escrow (Escrow Officer Antonia Delgado) and Title provided by Lawyers' Title.

    Antonia Delgado, Escrow Officer
    A & A Escrow Services, Inc.
    15250 Ventura Blvd. #715
    Sherman Oaks, CA 91403
    Telephone: (310) 550-6055; Facsimile: (310) 550-6130
    Email: antonia@aaescrow.com

Initials: _JA_ _CH_

Authentisign ID: FF6557B9-50FF-EE11-AAF2-6045BDD68161

6.   **Property Sold "as is- where as":** The Property is being sold, "as is - where as," thus the Seller is not making any representations, warranties, either express or implied, as to the Property's condition, uses (prior, present and future), or otherwise. Moreover, the Seller does not warrant or represent the Property's compliance with any applicable federal, state or local environmental laws, zoning laws or applicable regulations, oil and mineral rights, city or government agency notifications regarding work to be done, marketability of title, ownership or physical condition. The Buyers shall agree that as of the close of escrow the Buyers are acquiring the Property "as is," with all faults and conditions then existing on the Property whether known or unknown. Buyers' offer is based entirely on their own independent investigations. The Seller and Seller's agents have not, and will not, inspect the Property or determine its condition, fitness or use for any particular purpose, nor will any of them provide any written disclosures, guarantees or warranties of any kind. Seller and Seller's agents are exempt from complying with the requirements of Article 1.5 of the California Civil Code Sections 1102-1102.17 relating to disclosures upon transfer of real property.

7.   **At Buyers' expense, allocation of expenses:** The Buyers shall, at Buyers' sole expense, acquire any and all insurance policies that the Buyers desire to cover the Property. The Seller does not agree to acquire or transfer any insurance policies to the Buyers. If any state or local ordinance laws require that the Property be brought into compliance, the Buyers, at their sole expense, shall comply with and pay for any such requirements. The Buyers shall, at Buyers' sole expense, install all smoke and carbon monoxide detectors, if any, as may be required by state or local law. The Buyers shall, at Buyers' sole expense, obtain any and all inspection reports that Buyers deem necessary, these reports include but are not limited to; termite, septic, condition, etc. The Seller shall not complete any required or recommended repairs identified in any property reports (including but not limited to termite). Seller will not provide nor pay for any home warranty plan. Seller is not required to deliver to the Buyers a written statement of compliance with any applicable state and/or local law

8.   **Acknowledgment of the Trustee's Capacity:** The Buyers are expressly aware and fully informed that the Seller is selling the Property exclusively in his capacity as the Chapter 7 Trustee for the bankruptcy estate of Shamicka Lawrence, Case No. 6:23-bk-15163-WJ. No personal liability for costs, fees or other charges on the Seller's part is intended; any liability is strictly the liability of the Debtor's bankruptcy estate. Trustee does not represent the Lawrence Children's Trust u/t/a May 6, 2014.

9.   **Sale Subject to Overbids:** The sale of the Property shall be subject to the overbid procedures which will be set forth in the Notice of Chapter 7 Trustee's Motion For Order Authorizing Sale of Real Property Free and Clear of Liens Pursuant to Bankruptcy Code Sections 363(b)(1) and (f), Subject to Overbids and Authorizing Payment of Commissions.

10.  **Approval of the Bankruptcy Court:** The Buyers are expressly aware that this transaction is conditioned on approval of the United States Bankruptcy Court for the Central District of California, Riverside Division. If Buyers wish to obtain a determination of good faith purchaser pursuant to 11 U.S.C. § 363(m), Buyers understand that the Court must make that determination upon a showing of adequate cause, including executing a declaration in support of good faith.

11.  **Bankruptcy Court Jurisdiction:** Since the Seller is selling the Property in his capacity as the Chapter 7 Trustee and further, since the Property or a substantial indivisible portion thereof, is property of the Debtor's bankruptcy estate, the resolution of any and all disputes between the Seller and the Buyers concerning the Property shall be resolved by the United States Bankruptcy Court for the Central District of California.

Initials:   _JA_   _CH_

Authentisign ID: FF6557B9-50FF-EE11-AAF2-6045BDD68161

12. **Sale Free and Clear Of Liens:** The Seller is selling the Property pursuant to Section 363(b) and 363(f) of the Bankruptcy Code, whereby the Property shall be sold free and clear of any and all claims, liens, and encumbrances to the extent permitted by federal law. Any and all claims, liens, and encumbrances shall attach to the sale proceeds.

13. **Disbursements from Escrow:** The Seller shall approve in writing all disbursements to be made from escrow on the sale of the Property. Escrow shall not be authorized to disburse any funds to anyone without the prior written approval of the Trustee.

14. **Allocation of Costs:** Buyers/Seller shall pay all customary closing costs associated with closing this escrow.

15. **Real Property Taxes:** The Seller shall pay any and all real property taxes due at the close of escrow, unless other previous arrangements have been made by and between the Seller and Buyers.

16. **Seller's Right to Terminate:** If the Seller is unable to complete escrow because of unknown defects in the title, or because the liens and encumbrances exceed the closing price, or the seller is divested of title by the Bankruptcy Court, or because the income tax consequences of the sale are excessive, or because the Seller is unable to deliver a full ownership interest, or any other reason, the Buyers' exclusive damages shall be limited to the refund of their deposit less escrow charges and bond charges.

17. **Broker Compensation:** Through escrow on the sale of the Property, and subject to Bankruptcy Court approval, the Seller agrees to pay compensation for real estate broker services in a total amount not to exceed five percent (5%) of the gross selling price

18. **Agency:** Listing agent is Brian Thompson of Winterstone Real Estate and Development.

19. **Entire Agreement:** In the event anything in this Counter Offer/Addendum conflicts with the California Residential Purchase Agreement And Joint Escrow Instructions, the provisions of the Counter Offer/Addendum shall control.

20. **Seller acknowledgement:** Seller acknowledges receipt of a copy and authorizes Broker to deliver a signed copy to the Buyers.

| | |
|---|---|
| Dated: 4/19 | |
| Time: 11 A.M./P.M. | A.Cisneros, exclusively in his capacity as the Chapter 7 Trustee for the bankruptcy estate of Shamicka Lawrence, Case No. 6:23-bk-15163-WJ, Seller |

21. **Acceptance:** Buyers accept the above counter offer and acknowledge receipt of a copy.

| | |
|---|---|
| Dated: 04/20/24 | *Jonathan Alarcon* |
| Time: 8:06 PM A.M./P.M. | JONATHAN ALARCON |
| Dated: 04/20/24 | *Cindy Herrera* |
| Time: 8:06 PM A.M./P.M. | CINDY HERRERA |

Initials: JA   CH

Authentisign ID: FF6557B9-50FF-EE11-AAF2-6045BDD68161

Authentisign ID: 0xxx86C-42FD-EE11-AAF2-6045BDD68161



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

# DISCLOSURE REGARDING
## REAL ESTATE AGENCY RELATIONSHIP
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/21)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k), and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:

To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.

To the Buyer and the Seller:
  (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
  (b)  A duty of honest and fair dealing and good faith.
  (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:

To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.

To the Buyer and the Seller:
  (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
  (b)  A duty of honest and fair dealing and good faith.
  (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
  (a)  A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
  (b)  Other duties to the Seller and the Buyer as stated above in their respective sections.

In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real estate transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE SECOND PAGE.**

| | | |
|---|---|---|
| ☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant  *Jonathan Alarcon* | **Jonathan  Alarcon** | Date 04/18/2024 |
| ☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant  *Cindy Herrera* | **Cindy  Herrera** | Date 04/18/2024 |

Agent  **WE'RE Real Estate**                     DRE Lic. # *02102670*
                    Real Estate Broker (Firm)
By  *Jack Toro*                     **Jack Toro** DRE Lic. # *02198741*        Date 04/18/2024
     (Salesperson or Broker-Associate, if any)

© 2021, California Association of REALTORS®, Inc.

**AD REVISED 12/21 (PAGE 1 OF 2)**



**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

WE'RE Real Estate, 965 N. Grand Avenue Covina CA 91724            Phone: (714)732-1429        Fax:                j&C
Jack Toro                                Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

Authentisign ID: FF6557B9-50FF-EE11-AAF2-6045BDD68161

Authentisign ID: 00A86B6C-42FD-EE11-AAF2-6045BDD68161

## CIVIL CODE SECTIONS 2079.13 – 2079.24 (2079.16 APPEARS ON THE FRONT)

2079.13. As used in Sections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings: (a) "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. (b) "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. (c) "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. (d) "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. (e) "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. (f) "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. (g) "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. (h) "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. (i) "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. (j) "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. (k) "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. (l) "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. (m) "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. (n) "Buyer's agent" means an agent who represents a buyer in a real property transaction.

2079.14. A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgement of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: (a) The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. (b) The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.

2079.15. In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.

2079.16 Reproduced on Page 1 of this AD form.

2079.17(a) As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. (b) As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the seller and buyer. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.

CONFIRMATION: (c) The confirmation required by subdivisions (a) and (b) shall be in the following form:

| | |
|---|---|
| Seller's Brokerage Firm ___DO NOT COMPLETE. SAMPLE ONLY___ | License Number _____ |
| Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent) | |
| Seller's Agent ___DO NOT COMPLETE. SAMPLE ONLY___ | License Number _____ |
| Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent) | |
| Buyer's Brokerage Firm ___DO NOT COMPLETE. SAMPLE ONLY___ | License Number _____ |
| Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent) | |
| Buyer's Agent ___DO NOT COMPLETE. SAMPLE ONLY___ | License Number _____ |
| Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent) | |

(d) The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.

2079.18 (Repealed pursuant to AB-1289)

2079.19 The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

2079.20 Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

2079.21 (a) A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. (b) A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. (c) "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. (d) This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

2079.22 Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.

2079.23 A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

2079.24 Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

AD REVISED 12/21 (PAGE 2 OF 2)



### DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    J&C

Authentisign ID: FF6557B9-50FF-EE11-AAF2-6045BDD68161
Authentisign ID: ...586C-42FD-EE11-AAF2-6045BDD68161



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

## FAIR HOUSING AND DISCRIMINATION ADVISORY
### (C.A.R. Form FHDA, Revised 6/23)

1. **EQUAL ACCESS TO HOUSING FOR ALL:** All housing in California is available to all persons. Discrimination as noted below is prohibited by law. Resources are available for those who have experienced unequal treatment under the law.
2. **FEDERAL AND STATE LAWS PROHIBIT DISCRIMINATION AGAINST IDENTIFIED PROTECTED CLASSES:**
   A. FEDERAL FAIR HOUSING ACT ("FHA") Title VIII of the Civil Rights Act; 42 U.S.C. §§ 3601-3619; Prohibits discrimination in sales, rental or financing of residential housing against persons in protected classes;
   B. CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA") California Government Code ("GC") §§ 12900-12996,12955; 2 California Code of Regulations ("CCR") §§ 12005-12271; Prohibits discrimination in sales, rental or financing of housing opportunity against persons in protected classes by providers of housing accommodation and financial assistance services as related to housing;
   C. CALIFORNIA UNRUH CIVIL RIGHTS ACT ("Unruh") California Civil Code ("CC") § 51; Prohibits business establishments from discriminating against, and requires full and equal accommodation, advantages, facilities, privileges, and services to persons in protected classes;
   D. AMERICANS WITH DISABILITIES ACT ("ADA") 42 U.S.C. §§ 12181-12189; Title III of the ADA prohibits discrimination based on disability in public accommodations; and
   E. OTHER FAIR HOUSING LAWS: § 504 of Rehabilitation Act of 1973 29 U.S.C. § 794; Ralph Civil Rights Act CC § 51.7; California Disabled Persons Act; CC §§ 54-55.32; any local city or county fair housing ordinances, as applicable.
3. **POTENTIAL LEGAL REMEDIES FOR UNLAWFUL DISCRIMINATION:** Violations of fair housing laws may result in **monetary civil fines, injunctive relief, compensatory and/or punitive damages, and attorney fees and costs.**
4. **PROTECTED CLASSES/CHARACTERISTICS:** Whether specified in Federal or State law or both, discrimination against persons based on that person's belonging to, association with, or perceived membership in, certain classes or categories, such as the following, is prohibited. Other classes, categories or restrictions may also apply.

| Race | Color | Ancestry | National Origin | Religion |
|---|---|---|---|---|
| Age | Sex, Sexual Orientation | Gender, Gender Identity, Gender expression | Marital Status | Familial Status (family with a child or children under 18) |
| Citizenship | Immigration Status | Primary Language | Military/Veteran Status | Source of Income (e.g., Section 8 Voucher) |
| Medical Condition | Disability (Mental & Physical) | Genetic Information | Criminal History (non-relevant convictions) | Any arbitrary characteristic |

5. **THE CALIFORNIA DEPARTMENT OF REAL ESTATE REQUIRES TRAINING AND SUPERVISION TO PREVENT HOUSING DISCRIMINATION BY REAL ESTATE LICENSEES:**
   A. California Business & Professions Code ("B&PC") § 10170.5(a)(4) requires 3 hours of training on fair housing for DRE license renewal; Real Estate Regulation § 2725(f) requires brokers who oversee salespersons to be familiar with the requirements of federal and state laws relating to the prohibition of discrimination.
   B. Violation of DRE regulations or real estate laws against housing discrimination by a real estate licensee may result in the loss or suspension of the licensee's real estate license. B&PC §10177(l)(1); 10 CCR § 2780
6. **REALTOR® ORGANIZATIONS PROHIBIT DISCRIMINATION:** NAR Code of Ethics Article 10 prohibits discrimination in employment practices or in rendering real estate license services against any person because of race, color, religion, sex, familial status, national origin, sexual orientation, or gender identity by REALTORS®.
7. **WHO IS REQUIRED TO COMPLY WITH FAIR HOUSING LAWS?**
   Below is a non-exclusive list of providers of housing accommodations or financial assistance services as related to housing who are most likely to be encountered in a housing transaction and who must comply with fair housing laws.

   - Sellers
   - Real estate licensees
   - Mobilehome parks
   - Insurance companies
   - Landlords/Housing Providers
   - Real estate brokerage firms
   - Homeowners Associations ("HOAs");
   - Government housing services
   - Sublessors
   - Property managers
   - Banks and Mortgage lenders
   - Appraisers

8. **EXAMPLES OF CONDUCT THAT MAY NOT BE MOTIVATED BY DISCRIMINATORY INTENT BUT COULD HAVE A DISCRIMINATORY EFFECT:**
   A. Prior to acceptance of an offer, asking for or offering buyer personal information or letters from the buyer, especially with photos. Those types of documents may inadvertently reveal, or be perceived as revealing, protected status information thereby increasing the risk of (i) actual or unconscious bias, and (ii) potential legal claims against sellers and others by prospective buyers whose offers were rejected.
   B. Refusing to rent (i) an upper-level unit to an elderly tenant out of concern for the tenant's ability to navigate stairs or (ii) a house with a pool to a person with young children out of concern for the children's safety.
9. **EXAMPLES OF UNLAWFUL OR IMPROPER CONDUCT BASED ON A PROTECTED CLASS OR CHARACTERISTIC:**
   A. Refusing to negotiate for a sale, rental or financing or otherwise make a housing opportunity unavailable; failing to present offers due to a person's protected status;
   B. Refusing or failing to show, rent, sell or finance housing; "channeling" or "steering" a prospective buyer or tenant to or away from a particular area due to that person's protected status or because of the racial, religious or ethnic composition of the neighborhood;
   C. "Blockbusting" or causing "panic selling" by inducing a listing, sale or rental based on the grounds of loss of value of property, increase in crime, or decline in school quality due to the entry or prospective entry of people in protected categories into the neighborhood;
   D. Making any statement or advertisement that indicates any preference, limitation, or discrimination;

© 2023, California Association of REALTORS®, Inc.
**FHDA REVISED 6/23 (PAGE 1 OF 2)**



### FAIR HOUSING AND DISCRIMINATION ADVISORY (FHDA PAGE 1 OF 2)

| WE'RE Real Estate, 965 N. Grand Avenue Covina CA 91724 | Phone: (714)732-1429        Fax: | J&C |
|---|---|---|
| Jack Toro | Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com | |

Authentisign ID: FF6557B9-50FF-EE11-AAF2-6045BDD68161
Authentisign ID: 00A8686C-42FD-EE11-AAF2-6045BDD68161

E. Inquiring about protected characteristics (such as asking tenant applicants if they are married, or prospective purchasers if they have children or are planning to start a family);

F. Using criminal history information before otherwise affirming eligibility, and without a legally sufficient justification;

G. Failing to assess financial standards based on the portion of the income responsible by a tenant who receives government subsidies (such as basing an otherwise neutral rent to income ratio on the whole rent rather than just the part of rent that is the tenant's responsibility);

H. Denying a home loan or homeowner's insurance;

I. Offering inferior terms, conditions, privileges, facilities or services;

J. Using different qualification criteria or procedures for sale or rental of housing such as income standards, application requirements, application fees, credit analyses, sale or rental approval procedures or other requirements;

K. Harassing a person;

L. Taking an adverse action based on protected characteristics;

M. Refusing to permit a reasonable modification to the premises, as requested by a person with a disability (such as refusing to allow a tenant who uses a wheelchair to install, at their expense, a ramp over front or rear steps, or refusing to allow a tenant with a disability from installing, at their own expense, grab bars in a shower or bathtub);

N. Refusing to make reasonable accommodation in policies, rules, practices, or services for a person with a disability (such as the following, if an actual or prospective tenant with a disability has a service animal or support animal):
   (i) Failing to allow that person to keep the service animal or emotional support animal in rental property,
   (ii) Charging that person higher rent or increased security deposit, or
   (iii) Failing to show rental or sale property to that person who is accompanied by the service animal or support animal, and;

O. Retaliating for asserting rights under fair housing laws.

10. **EXAMPLES OF POSITIVE PRACTICES:**

A. Real estate licensees working with buyers or tenants should apply the same objective property selection criteria, such as location/neighborhood, property features, and price range and other considerations, to all prospects.

B. Real estate licensees should provide complete and objective information to all clients based on the client's selection criteria.

C. Real estate licensees should provide the same professional courtesy in responding to inquiries, sharing of information and offers of assistance to all clients and prospects.

D. Housing providers should not make any statement or advertisement that directly or indirectly implies preference, limitation, or discrimination regarding any protected characteristic (such as "no children" or "English-speakers only").

E. Housing providers should use a selection process relying on objective information about a prospective buyer's offer or tenant's application and not seek any information that may disclose any protected characteristics (such as using a summary document, e.g. C.A.R. Form SUM-MO, to compare multiple offers on objective terms).

11. **FAIR HOUSING RESOURCES:** If you have questions about your obligations or rights under the Fair Housing laws, or you think you have been discriminated against, you may want to contact one or more of the sources listed below to discuss what you can do about it, and whether the resource is able to assist you.

A. Federal: **https://www.hud.gov/program_offices/fair_housing_equal_opp**

B. State: **https://calcivilrights.ca.gov/housing/**

C. Local: local Fair Housing Council office (non-profit, free service)

D. DRE: **https://www.dre.ca.gov/Consumers/FileComplaint.html**

E. Local Association of REALTORS®. List available at: **https://www.car.org/en/contactus/rosters/localassociationroster.**

F. Any qualified California fair housing attorney, or if applicable, landlord-tenant attorney.

12. **LIMITED EXCEPTIONS TO FAIR HOUSING REQUIREMENTS: No person should rely on any exception below without first seeking legal advice about whether the exception applies to their situation. Real estate licensees are not qualified to provide advice on the application of these exceptions.**

A. Legally compliant senior housing is exempt from FHA, FEHA and Unruh as related to age or familial status only;

B. An owner of a single-family residence who resides at the property with one lodger may be exempt from FEHA for rental purposes, **PROVIDED no real estate licensee is involved** in the rental;

C. An owner of a single-family residence may be exempt from FHA for sale or rental purposes, PROVIDED **(i) no real estate licensee is involved** in the sale or rental and (ii) no discriminatory advertising is used, and **(iii)** the owner owns no more than three single-family residences. Other restrictions apply;

D. An owner of residential property with one to four units who resides at the property, may be exempt from FHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental; and

E. Both FHA and FEHA do not apply to roommate situations. See, *Fair Housing Council v Roommate.com LLC*, 666 F.3d 1216 (2019).

F. Since both the 14th Amendment of the U.S. Constitution and the Civil Rights Act of 1866 prohibit discrimination based on race; the FHA and FEHA exemptions do not extend to discrimination based on race.

**Buyer/Tenant and Seller/Housing Provider have read, understand and acknowledge receipt of a copy of this Fair Housing & Discrimination Advisory.**

| | | | |
|---|---|---|---|
| Buyer/Tenant | *Jonathan Alarcon* | Jonathan Alarcon Date 04/18/2024 | |
| Buyer/Tenant | *Cindy Herrera* | Cindy Herrera Date 04/18/2024 | |
| Seller/Housing Provider | *Cesar, Trustee* | Date 4/19/24 | |
| Seller/Housing Provider | | Date | |

© 2023, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized reproduction, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

FHDA REVISED 6/23 (PAGE 2 OF 2)

**FAIR HOUSING AND DISCRIMINATION ADVISORY (FHDA PAGE 2 OF 2)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com      j&C

Authentisign ID: FF655789-50FF-EE11-AAF2-6045BDO68161

Authentisign ID: 0C0E86C-42F0-EE11-AAF2-6045BDO68161



**CALIFORNIA ASSOCIATION OF REALTORS®**

## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER - DISCLOSURE AND CONSENT
### (C.A.R. Form PRBS, Revised 12/21)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

| | | | |
|---|---|---|---|
| Seller | *(signature)* | Date | 4/19/24 |
| Seller | | Date | |
| Buyer | Jonathan Alarcon | Jonathan Alarcon Date | 04/18/2024 |
| Buyer | Cindy Herrera | Cindy Herrera Date | 04/18/2024 |
| Buyer's Brokerage Firm WE'RE Real Estate | | DRE Lic # | 02102670 |
| By Jack Toro | | DRE Lic # 02198741 Date | 04/18/2024 |
| Jack Toro | | | |
| Seller's Brokerage Firm Brian Thompson, Broker | | DRE Lic # | 01828461 |
| By Brian Thompson | | DRE Lic # 01828461 Date | 4-19-24 |

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**PRBS REVISED 12/21 (PAGE 1 OF 1)**

### POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)

| WE'RE Real Estate, 965 N. Grand Avenue Covina CA 91724 | Phone: (714)732-4439 | Fax: | J&C |
| Jack Toro | Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com | | |

Authentisign ID: FF6557B9-50FF-EE11-AAF2-6045BDD68161

Authentisign ID: 004C586C-42FD-EE11-AAF2-6045BDD68161

**CALIFORNIA
ASSOCIATION
OF REALTORS®**

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY
(C.A.R. Form WFA, Revised 12/21)

Property Address: **11364 Estates Court, Riverside, CA 92503** _____ ("Property").

### WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

### ACCORDINGLY, YOU ARE ADVISED:

1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts. Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks. By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.**

| | | |
|---|---|---|
| Buyer/Tenant _Jonathan Alarcon_ | **Jonathan Alarcon** | Date 04/18/2024 |
| Buyer/Tenant _Cindy Herrera_ | **Cindy Herrera** | Date 04/18/2024 |
| Seller/Landlord _____, Trustee | | Date 4/19/24 |
| Seller/Landlord _____ | | Date _____ |

©2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**WFA REVISED 12/21 (PAGE 1 OF 1)**

**WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)**

| | | |
|---|---|---|
| WE'RE Real Estate, 965 N. Grand Avenue Covina CA 91724<br>Jack Toro | Phone: (714)732-1429      Fax:<br>Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com | J&C |

Authentisign ID: FF6557B9-50FF-EE11-AAF2-6045BDD68161
Authentisign ID: 00A8686C-42FD-EE11-AAF2-6045BDD68161

CALIFORNIA
ASSOCIATION
OF REALTORS®

## BUYER HOMEOWNERS' INSURANCE ADVISORY
### (C.A.R. Form BHIA, 12/23)

1. **IMPORTANCE OF OBTAINING PROPERTY INSURANCE:** If the property you are purchasing is destroyed or damaged due to natural disaster or accident or some other event, insurance may be available to help with the cost of repair or rebuilding. In the absence of property insurance, the homeowner would be responsible for the full expense. If the property is purchased with a loan, or refinanced, the lender will require an insurance policy protecting its interest. Insurance policies can cover damage due to one or more of the following: fire, flood, earthquake and other causes. The policy or an insurance broker should be consulted to determine when coverage applies and whether a supplement or rider can be purchased to provide additional coverage or if a separate policy is necessary.

2. **PROPERTY INSURANCE AND PURCHASE CONTRACT TERMS:** Your real estate purchase contract may contain a contingency that gives you the right to legally cancel the agreement within a specified time if you are unable to obtain or afford property insurance. This cancellation right may be part of an overall investigation contingency or may be a specific contingency pertaining to insurance. If buyer waives or removes the applicable contingency before determining the availability and cost of property insurance, buyer is acting against the advice of broker.

3. **CALIFORNIA'S PROPERTY INSURANCE MARKET:** Some insurance carriers in California have stopped issuing new property insurance policies and others are limiting the number and location of new policies. These changes may affect both the availability and cost of insurance. However, over 50 insurance carriers are admitted to sell property insurance in California so it may be possible to obtain insurance even if some carriers will not write a new policy covering the property you intend to buy. An insurance broker may also be able to find a non-admitted insurance carrier offering to insure the property you intend to buy. Because locating an affordable insurance policy could take time and effort, buyers are advised to make all insurance inquiries as early in the home buying process as possible.

4. **INSURANCE CONDITIONS:** Many insurance carriers impose physical condition standards before issuing a policy, or reserve the right to cancel policies even after they are issued, if certain minimum standards are not confirmed in an inspection or otherwise. Physical conditions standards could include, but are not limited to, prohibition of "knob and tube" electrical wiring, requirements related to piping/plumbing materials, standards related to the age and/or quality of the roof or foundation, minimal safety standards related to handrails, tripping hazards, and defensible space requirements.

5. **RESOURCES:** The California Department of Insurance (DOI) maintains a website addressing Residential Home insurance. Resources on this State government webpage include: **(i)** Top Ten tips for Finding Residential Insurance; **(ii)** Residential Insurance Company Contact List; **(iii)** Home Insurance Finder; and **(iv)** information on other insurance issues. The webpage also includes information on how to contact the DOI, and suggestions on what to do if you cannot find insurance. The webpage and link to other documents is located at https://www.insurance.ca.gov/01-consumers/105-type/5-residential/index.cfm.

6. **BROKER RECOMMENDATION:** Buyer is advised to explore available property insurance options early in the home buying process and to consult with a qualified insurance professional of buyer's choosing to understand insurance availability and cost prior to removal of any related contingencies. Real estate brokers do not have expertise in this area.

**By signing below, Buyer acknowledges that Buyer has read, understands, and has received a copy of this Buyer Homeowners' Insurance Advisory.**

Buyer _Jonathan Alarcon_   **Jonathan Alarcon** Date 04/18/2024

Buyer _Cindy Herrera_   **Cindy Herrera** Date 04/18/2024

© 2023, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**BHIA 12/23 (PAGE 1 OF 1)**

**BUYER HOMEOWNERS' INSURANCE ADVISORY (BHIA PAGE 1 OF 1)**

WE'RE Real Estate, 965 N. Grand Avenue Covina CA 91724        Phone: (714)732-1429        Fax:        J&C
Jack Toro                    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com

Authentisign ID: FF6557B9-50FF-EE11-AAF2-6045BDD68161

Authentisign ID: 00XXX8C-42FD-EE11-AAF2-6045BDD68161

**CALIFORNIA
ASSOCIATION
OF REALTORS®**

# CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS
(C.A.R. FORM RPA, Revised 12/22)

Date Prepared: **April 17, 2024**

1. **OFFER:**
   A. **THIS IS AN OFFER FROM** _____ **Jonathan Alarcon, Cindy Herrera** _____ ("Buyer").
   B. **THE PROPERTY** to be acquired is _____ **11364 Estates Court** _____, situated
   in _____ **Riverside** _____ (City), _____ **Riverside** _____ (County), California, _____ **92503** _____ (Zip Code),
   Assessor's Parcel No(s). _____ **136050035** _____ ("Property").
   **(Postal/Mailing address may be different from city jurisdiction. Buyer is advised to investigate.)**
   C. **THE TERMS OF THE** PURCHASE ARE SPECIFIED BELOW AND ON THE FOLLOWING PAGES.
   D. Buyer and Seller are referred to herein as the "Parties." Brokers and Agents are **not** Parties to this Agreement.
2. **AGENCY:**
   A. **DISCLOSURE:** The Parties each acknowledge receipt of a "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD) if represented by a real estate licensee. Buyer's Agent is not legally required to give to Seller's Agent the AD form Signed by Buyer. Seller's Agent is not legally obligated to give to Buyer's Agent the AD form Signed by Seller.
   B. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction.
   Seller's Brokerage Firm _____ **Brian Thompson, Broker** _____ License Number ___ **01828461** ___
   Is the broker of (check one): [X] the Seller; or [ ] both the Buyer and Seller (Dual Agent).
   Seller's Agent _____ **Brian Thompson** _____ License Number ___ **01828461** ___
   Is (check one): [X] the Seller's Agent. (Salesperson or broker associate); or [ ] both the Buyer's and Seller's Agent (Dual Agent).
   Buyer's Brokerage Firm _____ **WE'RE Real Estate** _____ License Number ___ **02102670** ___
   Is the broker of (check one): [X] the Buyer; or [ ] both the Buyer and Seller (Dual Agent).
   Buyer's Agent _____ **Jack Toro** _____ License Number ___ **02198741** ___
   Is (check one): [X] the Buyer's Agent. (Salesperson or broker associate); or [ ] both the Buyer's and Seller's Agent (Dual Agent).
   C. [ ] More than one Brokerage represents [ ] Seller, [ ] Buyer. See, Additional Broker Acknowledgement (C.A.R. Form ABA).
   D. **POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a [X] "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).
3. **TERMS OF PURCHASE AND ALLOCATION OF COSTS:** The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs provide further explanation. This form is 16 pages. The Parties are advised to read all 16 pages.

| | Paragraph # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| A | 5, 5B (cash) | **Purchase Price** | $ *1,700,000.00* | [ ] All Cash |
| B | | **Close of Escrow (COE)** | [ ] _____ Days after Acceptance OR on [X] *05/17/2024* (date) | |
| C | 32A | **Expiration of Offer** | 3 calendar days after all Buyer Signature(s) or _____ (date), at 5PM or _____ [ ] AM [ ] PM | |
| D(1) | 5A(1) | **Initial Deposit Amount** | $ *52,500.00* ( *3.09* % of purchase price) (% number above is for calculation purposes and is not a contractual term) | within 3 (or _____ ) business days after Acceptance by wire transfer OR [ ] |
| D(2) | 5A(2) | [ ] **Increased Deposit** (Money placed into escrow after the initial deposit. Use form DID at time increased deposit is made.) | $ _____ ( _____ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | Upon removal of all contingencies OR [ ] _____ (date) OR [ ] |
| E(1) | 5C(1) | **Loan Amount(s):** First Interest Rate Points | $ *1,360,000.00* ( *80.00* % of purchase price) Fixed rate or [ ] Initial adjustable rate • not to exceed _____ % • Buyer to pay up to _____ points to obtain the rate above | Conventional or, if checked, [ ] FHA (Forms FVAC/HID attached) [ ] VA (Form FVAC attached) [ ] Seller Financing [X] Other: *NON QM LOAN* |
| | | If FHA or VA checked, Deliver list of lender required repairs | 17 (or _____ ) Days after Acceptance | |
| E(2) | 5C(2) | **Additional Financed Amount** Interest Rate Points | $ _____ ( _____ % of purchase price) Fixed rate or [ ] Initial adjustable rate • not to exceed _____ % • Buyer to pay up to _____ points to obtain rate above | Conventional or, if checked, [ ] Seller Financing [ ] Other: _____ |
| E(3) | 7A | **Occupancy Type** | Primary, or if checked, [ ] Secondary [ ] Investment | |
| F | 5D | **Balance of Down Payment** | $ *287,500.00* | |
| | | **PURCHASE PRICE TOTAL** | $ *1,700,000.00* | |

© 2022, California Association of REALTORS®, Inc.

**RPA REVISED 12/22 (PAGE 1 OF 16)**     Buyer's Initials **JA** / **CH**     Seller's Initials _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 1 OF 16)**

Exhibit "1"
Page 31

Authentisign ID: FF6557B9-50FF-EE11-AAF2-6045BDD68161

Authentisign ID: 00A8686C-42FD-EE11-AAF2-6045BDD68161

**Property Address:** *11364 Estates Court, Riverside, CA 92503*                          Date: *April 17, 2024*

| | Paragraph # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| G(1) | 5E | Seller Credit, if any, to Buyer | ☐ $ _____ ( _____ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | Seller credit to be applied to closing costs OR ☐ Other: |
| G(2) | | ADDITIONAL FINANCE TERMS: | | |
| G(3) | 18 | ☐ Seller agrees to pay the obligation of Buyer to compensate Buyer's Broker under a separate agreement (C.A.R. Form SPBB attached). Seller's Broker's offer, if any, to compensate Buyer's Broker is unaffected unless Otherwise Agreed. | | |
| H(1) | 5B | Verification of All Cash (sufficient funds) | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | |
| H(2) | 6A | Verification of Down Payment and Closing Costs | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | |
| H(3) | 6B | Verification of Loan Application | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | ☐ Prequalification ☒ Preapproval ☐ Fully underwritten preapproval |
| I | | **Intentionally Left Blank** | | |
| J | 16 | Final Verification of Condition | 5 (or _____) Days prior to COE | |
| K | 23 | Assignment Request | 17 (or _____) Days after Acceptance | |
| L | 8 | CONTINGENCIES | TIME TO REMOVE CONTINGENCIES | CONTINGENCY REMOVED |
| L(1) | 8A | Loan(s) | 17 (or _____) Days after Acceptance | ☐ No loan contingency |
| L(2) | 8B | Appraisal: Appraisal contingency based upon appraised value at a minimum of purchase price or ☐ $ _____ | 17 (or _____) Days after Acceptance | ☐ No appraisal contingency Removal of appraisal contingency does not eliminate appraisal cancellation rights in FVAC. |
| L(3) | 8C, 12 | Investigation of Property | 17 (or _7_) Days after Acceptance | REMOVAL OR WAIVER OF CONTINGENCY: Any contingency in L(1)-L(7) may be removed or waived by checking the applicable box above or attaching a Contingency Removal (C.A.R. Form CR-B) and checking the applicable box therein. Removal or Waiver at time of offer is against Agent advice. See paragraph 8H. ☐ CR-B attached |
| | | Informational Access to Property Buyer's right to access the Property for informational purposes is NOT a contingency, does NOT create cancellation rights, and applies even if contingencies are removed. | 17 (or _____) Days after Acceptance | |
| L(4) | 8D, 14A | Review of Seller Documents | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(5) | 8E, 13A | Preliminary ("Title") Report | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(6) | 8F, 11L | Common Interest Disclosures required by Civil Code § 4525 or this Agreement | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(7) | 8G, 9B(6) | Review of leased or liened items (Such as for solar panels or propane tanks or PACE or HERO liens) | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(8) | 8J | Sale of Buyer's Property Sale of Buyer's property is not a contingency, UNLESS checked here: ☐ C.A.R. Form COP attached | | |
| M | | Possession | Time for Performance | Additional Terms |
| M(1) | | Time of Possession | Upon notice of recordation, OR ☐ 6 PM or _____ ☐ AM/ ☐ PM on date specified, as applicable, in 3M(2) or attached TOPA. | |
| M(2) | 7C | Seller Occupied or Vacant units | COE date or, if checked below, ☐ _____ days after COE (29 or fewer days) ☐ _____ days after COE (30 or more days) | C.A.R. Form SIP attached if 29 or fewer days. C.A.R. Form RLAS attached if 30 or more days. |
| M(3) | 4A, 7A | Occupied units by tenants or anyone other than the Seller | ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) attached | Seller shall disclose to Buyer if occupied by tenants or persons other than the Seller, and attach TOPA in a counter offer if not part of Buyer's offer. |
| N | | Documents/Fees/Compliance | Time for Performance | |
| N(1) | 14A | Seller Delivery of Documents | 7 (or _____) Days after Acceptance | |
| N(2) | 19B | Sign and return Escrow Holder Provisions and Instructions | 5 (or _____) Days after Delivery | |
| N(3) | 11L(2) | Time to pay fees for ordering HOA Documents | 3 (or _____) Days after Acceptance | |
| N(4) | 10B(1) | Install smoke alarm(s), CO detector(s), water heater bracing | 7 (or _____) Days after Acceptance | |
| N(5) | 28 | Evidence of representative authority | 3 Days after Acceptance | |

RPA REVISED 12/22 (PAGE 2 OF 16)        Buyer's Initials [ JA ] / [ CH ]        Seller's Initials [signature] _____

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 2 OF 16)

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com        J&C

Authentisign ID: FF6557B9-50FF-EE11-AAF2-6045BDD68161

Authentisign ID: 00A8686C-42FD-EE11-AAF2-6045BDD68161

Property Address: *11364 Estates Court, Riverside, CA 92503*      Date: *April 17, 2024*

| O | | Intentionally Left Blank | | |
|---|---|---|---|---|
| P | | **Items Included and Excluded** | | |
| P(1) | 9 | **Items Included** – All items specified in Paragraph 9B are included and the following, if checked: | | |
| | | [X] Stove(s), oven(s), stove/oven combo(s); <br> [ ] Refrigerator(s); <br> [ ] Wine Refrigerator(s); <br> [ ] Washer(s); <br> [ ] Dryer(s); <br> [X] Dishwasher(s); <br> [ ] Microwave(s); <br> **Additional Items Included:** <br> [ ] _____, | [ ] Video doorbell(s); <br> [ ] Security camera equipment; <br> [ ] Security system(s)/alarm(s), other than separate video doorbell and camera equipment; <br> [ ] Smart home control devices; <br> [ ] Wall mounted brackets for video or audio equipment; <br> [ ] _____, | [ ] Above-ground pool(s) / [ ] spa(s); <br> [X] Bathroom mirrors, unless excluded below; <br> [ ] Electric car charging systems and stations; <br> [ ] Potted trees/shrubs; <br> [ ] _____. | |
| P(2) | | **Excluded Items:** <br> [ ] _____; [ ] _____; [ ] _____; | | | |
| Q | | **Allocation of Costs** | | |

| | Paragraph # | Item Description | Who Pays (if Both is checked, cost to be split equally unless Otherwise Agreed) | Additional Terms |
|---|---|---|---|---|
| Q(1) | 10A, 11A | Natural Hazard Zone Disclosure Report, including tax information | [ ] Buyer [X] Seller [ ] Both _____ <br> _____ <br> [X] Provided by: *MyNHD **Best Value** | [X] Environmental <br> [ ] Other _____ |
| Q(2) | 10A | _____ | [ ] Buyer [ ] Seller [ ] Both _____ <br> Provided by: _____ | |
| Q(3) | | Report | [ ] Buyer [ ] Seller [ ] Both _____ | |
| Q(4) | 10B(1) | Smoke alarms, CO detectors, water heater bracing | [ ] Buyer [X] Seller [ ] Both _____ | |
| Q(5) | 10A 10B(2) | Government Required Point of Sale inspections, reports | [ ] Buyer [X] Seller [ ] Both _____ | |
| Q(6) | 10B(2) | Government Required Point of Sale corrective/remedial actions | [ ] Buyer [X] Seller [ ] Both _____ | |
| Q(7) | 19B | Escrow Fee | [ ] Buyer [ ] Seller [ ] Both _____ <br> Escrow Holder: *Exclusive Escrow* | [X] Each to pay their own fees |
| Q(8) | 13 | Owner's title insurance policy | [ ] Buyer [X] Seller [ ] Both _____ <br> Title Co. (If different from Escrow Holder): *Pacific Coast Title* | |
| Q(9) | | Buyer's Lender title insurance policy | Buyer | Unless Otherwise Agreed, Buyer shall purchase any title insurance policy insuring Buyer's lender. |
| Q(10) | | County transfer tax, fees | [ ] Buyer [X] Seller [ ] Both _____ | |
| Q(11) | | City transfer tax, fees | [ ] Buyer [X] Seller [ ] Both _____ | |
| Q(12) | 11L(2) | HOA fee for preparing disclosures | Seller | |
| Q(13) | | HOA certification fee | Buyer | |
| Q(14) | | HOA transfer fees | [ ] Buyer [ ] Seller [ ] Both _____ | Unless Otherwise Agreed, Seller shall pay for separate HOA move-out fee and Buyer shall pay for separate move-in fee. Applies if separately billed or itemized with cost in transfer fee. |
| Q(15) | | Private transfer fees | Seller, or if checked, [ ] Buyer [ ] Both | |
| Q(16) | | _____ fees or costs | [ ] Buyer [ ] Seller [ ] Both _____ | |
| Q(17) | | _____ fees or costs | [ ] Buyer [ ] Seller [ ] Both _____ | |
| Q(18) | 10C | Home warranty plan chosen by Buyer. Coverage includes, but is not limited to: *Eagle Premier* _____ | [ ] Buyer [X] Seller [ ] Both _____ <br> Issued by: *First American Home Warranty* <br> [ ] Buyer waives home warranty plan | If Seller or Both checked, Seller's cost not to exceed $ *800.00* . |
| R | | OTHER TERMS: _____ <br> _____ <br> _____ | | |

RPA REVISED 12/22 (PAGE 3 OF 16)    Buyer's Initials [JA] / [CH]    Seller's Initials _____

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 3 OF 16)
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    J&C

Authentisign ID: FF6557B9-50FF-EE11-AAF2-6045BDD68161

Authentisign ID: 00A8686C-42FD-EE11-AAF2-6045BDD68161
Property Address: **11364 Estates Court, Riverside, CA 92503**                                      Date: **April 17, 2024**

**4. PROPERTY ADDENDA AND ADVISORIES:** (check all that apply)

**A. PROPERTY TYPE ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) (Should be checked whether current tenants will remain or not.)
☐ Probate Agreement Purchase Addendum (C.A.R. Form PA-PA)
☐ Manufactured Home Purchase Addendum (C.A.R. Form MH-PA)
☐ Tenancy in Common Purchase Addendum (C.A.R. Form TIC-PA)
☐ Stock Cooperative Purchase Addendum (C.A.R. Form COOP-PA)
☐ Mixed Use Purchase Addendum (C.A.R. Form MU-PA)    ☐ Other _____

**B. OTHER ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
☐ Addendum # _____ (C.A.R. Form ADM)    ☐ Short Sale Addendum (C.A.R. Form SSA)
☐ Back Up Offer Addendum (C.A.R. Form BUO)    ☐ Court Confirmation Addendum (C.A.R. Form CCA)
☐ Septic, Well, Property Monument and Propane Addendum (C.A.R. Form SWPI)
☐ Buyer Intent to Exchange Addendum (C.A.R. Form BXA) ☐ Seller Intent to Exchange Addendum (C.A.R. Form SXA)
☐ Other _____    ☐ Other _____

**C. BUYER AND SELLER ADVISORIES:** (Note: All Advisories below are provided for reference purposes only and are not intended to be incorporated into this Agreement.)
☒ Buyer's Investigation Advisory (C.A.R. Form BIA)    ☒ Fair Housing and Discrimination Advisory (C.A.R. Form FHDA)
☒ Wire Fraud Advisory (C.A.R. Form WFA)    ☒ Cal. Consumer Privacy Act Advisory (C.A.R. Form CCPA)
                                                              (Parties may also receive a privacy disclosure from their own Agent.)
☐ Wildfire Disaster Advisory (C.A.R. Form WFDA)    ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
☐ Trust Advisory (C.A.R. Form TA)    ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)
☐ REO Advisory (C.A.R. Form REO)    ☐ Probate Advisory (C.A.R. Form PA)
☐ Other _____    ☐ Other _____

**5. ADDITIONAL TERMS AFFECTING PURCHASE PRICE:** Buyer represents that funds will be good when deposited with Escrow Holder.

**A. DEPOSIT:**
(1) **INITIAL DEPOSIT:** Buyer shall deliver deposit directly to Escrow Holder. If a method other than wire transfer is specified in **paragraph 3D(1)** and such method is unacceptable to Escrow Holder, then upon notice from Escrow Holder, delivery shall be by wire transfer.
(2) **INCREASED DEPOSIT:** Increased deposit specified in **paragraph 3D(2)** is to be delivered to Escrow Holder in the same manner as the Initial Deposit. If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount by signing a new liquidated damages clause (C.A.R. Form DID) at the time the increased deposit is delivered to Escrow Holder.
(3) **RETENTION OF DEPOSIT: Paragraph 29**, if initialed by all Parties or otherwise incorporated into this Agreement, specifies a remedy for Buyer's default. Buyer and Seller are advised to consult with a qualified California real estate attorney: (i) Before adding any other clause specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase. Any such clause shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code; and (ii) Regarding possible liability and remedies if Buyer fails to deliver the deposit.

**B. ALL CASH OFFER:** If an all cash offer is specified in **paragraph 3A**, no loan is needed to purchase the Property. This Agreement is NOT contingent on Buyer obtaining a loan. Buyer shall, within the time specified in **paragraph 3H(1)**, Deliver written verification of funds sufficient for the purchase price and closing costs.

**C. LOAN(S):**
(1) **FIRST LOAN:** This loan will provide for conventional financing **UNLESS** FHA, VA, Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(1).**
(2) **ADDITIONAL FINANCED AMOUNT:** If an additional financed amount is specified in **paragraph 3E(2)**, that amount will provide for conventional financing **UNLESS** Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(2).**
(3) **BUYER'S LOAN STATUS:** Buyer authorizes Seller and Seller's Authorized Agent to contact Buyer's lender(s) to determine the status of any Buyer's loan specified in **paragraph 3E**, or any alternate loan Buyer pursues, whether or not a contingency of this Agreement. If the contact information for Buyer's lender(s) is different from that provided under the terms of **paragraph 6B**, Buyer shall Deliver the updated contact information within 1 Day of Seller's request.
(4) **FHA/VA: If FHA or VA is checked in paragraph 3E(1)**, a FHA/VA amendatory clause (C.A.R. Form FVAC) shall be incorporated and Signed by all Parties. Buyer shall, within the time specified in **paragraph 3E(1)**, Deliver to Seller written notice (C.A.R. Form RR or AEA) (i) of any lender requirements that Buyer requests Seller to pay for or otherwise correct or (ii) that there are no lender requirements. Notwithstanding Seller's agreement that Buyer may obtain FHA or VA financing, Seller has no obligation to pay or satisfy any or all lender requirements unless agreed in writing.

**D. BALANCE OF PURCHASE PRICE (DOWN PAYMENT, paragraph 3F) (including all-cash funds)** to be deposited with Escrow Holder pursuant to Escrow Holder instructions.

**E. LIMITS ON CREDITS TO BUYER:** Any credit to Buyer as specified in **paragraph 3G(1)** or Otherwise Agreed, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender, if any, and made at Close Of Escrow. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit from Seller shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**6. ADDITIONAL FINANCING TERMS:**

**A. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Written verification of Buyer's down payment and closing costs, within the time specified in **paragraph 3H(2)** may be made by Buyer or Buyer's lender or loan broker pursuant to **paragraph 6B.**

**B. VERIFICATION OF LOAN APPLICATIONS:** Buyer shall Deliver to Seller, within the time specified in **paragraph 3H(3)** a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in **paragraph 3E.** If any loan specified in **paragraph 3E** is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate.

RPA REVISED 12/22 (PAGE 4 OF 16)          Buyer's Initials **JA** / **CH**      Seller's Initials ___ / ___

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 4 OF 16)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com.          j&C

Authentisign ID: FF6557B9-50FF-EE11-AAF2-6045BDD68161

Authentisign ID: 00A8686C-42FD-EE11-AAF2-6045BDD68161
Property Address: **11364 Estates Court, Riverside, CA  92503**                                            Date: **April 17, 2024**

    **C.**  **BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including, but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price, and to sell to Buyer in reliance on Buyer's specified financing. Buyer shall pursue the financing specified in this Agreement, even if Buyer also elects to pursue an alternative form of financing. Buyer has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in this Agreement but shall not interfere with closing at the purchase price on the COE date (**paragraph 3B**) even if based upon alternate financing. Buyer's inability to obtain alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**7.  CLOSING AND POSSESSION:**

    **A.**  **OCCUPANCY:** If Buyer intends to occupy as a primary or secondary residence (see **paragraph 3E(3)**), and unless Otherwise Agreed, such as in C.A.R. Form TOPA: (i) Buyer intends to occupy shall be vacant at the time possession is delivered to Buyer, and (ii) if the Property contains more than one unit, within **3 Days** after Acceptance Buyer shall give Seller written notice of which unit Buyer intends to occupy. Occupancy may impact available financing. **Seller shall disclose to Buyer if occupied by tenants or persons other than Seller, and attach C.A.R. Form TOPA in a counter offer if not part of Buyer's offer.**

    **B.**  **CONDITION OF PROPERTY ON CLOSING:**

        (1)  Unless Otherwise Agreed: **(i)** the Property shall be delivered **"As-Is"** in its PRESENT physical condition as of the date of Acceptance; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow or at the time possession is delivered to Buyer, if not on the same date. If items are not removed when possession is delivered to Buyer, all items shall be deemed abandoned. Buyer, after first Delivering to Seller written notice to remove the items within **3 Days**, may pay to have such items removed or disposed of and may bring legal action, as per this Agreement, to receive reasonable costs from Seller.

        (2)  **Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller and Agents may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had all required permits issued and/or finalized.**

    **C.**  **SELLER REMAINING IN POSSESSION AFTER CLOSE OF ESCROW:** If Seller has the right to remain in possession after Close Of Escrow pursuant to **paragraph 3M(2)** or as Otherwise Agreed: The Parties are advised to (i) consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and (ii) consult with a qualified California real estate attorney where the Property is located to determine the ongoing rights and responsibilities of both Buyer and Seller with regard to each other, including possible tenant rights, and what type of written agreement to use to document the relationship between the Parties. Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

    **D.**  **At Close Of Escrow: (i)** Seller assigns to Buyer any assignable warranty rights for items included in the sale; and **(ii)** Seller shall Deliver to Buyer available Copies of any such warranties. Agents cannot and will not determine the assignability of any warranties.

    **E.**  Seller shall, on Close Of Escrow unless Otherwise Agreed and even if Seller remains in possession, provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems, intranet and Internet-connected devices included in the purchase price, garage door openers, and all items included in either **paragraph 3P** or **paragraph 9.** If the Property is a condominium or located in a common interest development, Seller shall be responsible for securing or providing any such items for Association amenities, facilities, and access. Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**8.  CONTINGENCIES AND REMOVAL OF CONTINGENCIES:**

    **A.**  **LOAN(S):**

        (1)  This Agreement is, **unless otherwise specified in paragraph 3L(1) or an attached CR-B form,** contingent upon Buyer obtaining the loan(s) specified. If contingent, Buyer shall act diligently and in good faith to obtain the designated loan(s). **If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan and Buyer is able to satisfy lender's non-appraisal conditions for closing the loan.**

        (2)  Buyer is advised to investigate the insurability of the Property as early as possible, as this may be a requirement for lending. Buyer's ability to obtain insurance for the Property, including fire insurance, is part of Buyer's Investigation of Property contingency. Failure of Buyer to obtain insurance may justify cancellation based on the Investigation contingency but not the loan contingency.

        (3)  Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies of** this Agreement, unless Otherwise Agreed.

        (4)  If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

        (5)  NO LOAN CONTINGENCY: If "No loan contingency" is checked in **paragraph 3L(1)**, obtaining any loan specified is NOT a contingency of this Agreement. If Buyer does not obtain the loan specified, and as a result is unable to purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

    **B.**  **APPRAISAL:**

        (1)  This Agreement is, **unless otherwise specified in paragraph 3L(2) or an attached CR-B form,** contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the amount specified in **paragraph 3L(2)**, without requiring repairs or improvements to the Property. Appraisals are often a reliable source to verify square footage of the subject Property. However, the ability to cancel based on the measurements provided in an appraisal falls within the Investigation of Property contingency. The appraisal contingency is solely limited to the value determined by the appraisal. For any cancellation based upon this appraisal contingency, Buyer shall Deliver a Copy of the written appraisal to Seller, upon request by Seller.

        (2)  NO APPRAISAL CONTINGENCY: If "No appraisal contingency" is checked in **paragraph 3L(2)**, then Buyer may not use the loan contingency specified in **paragraph 3L(1)** to cancel this Agreement if the sole reason for not obtaining the loan is that the appraisal relied upon by Buyer's lender values the property at an amount less than that specified in **paragraph 3L(2)**. If Buyer is unable to obtain the loan specified solely for this reason, Seller may be entitled to Buyer's deposit or other legal remedies.

        (3)  [X] Fair Appraisal Act: The Parties acknowledge receipt of the attached Fair Appraisal Act Addendum (C.A.R. Form FAAA).

    **C.**  **INVESTIGATION OF PROPERTY:** This Agreement is, as specified in **paragraph 3L(3)**, contingent upon Buyer's acceptance of the condition of, and any other matter affecting, the Property. See **paragraph 12.**

    **D.**  **REVIEW OF SELLER DOCUMENTS:** This Agreement is, as specified in **paragraph 3L(4)**, *contingent upon* Buyer's review and approval of Seller's documents required in **paragraph 14A.**

RPA REVISED 12/22 (PAGE 5 OF 16)          Buyer's Initials  _JA_ / _CH_          Seller's Initials  _AC_ / _____

Authentisign ID: FF6557B9-50FF-EE11-AAF2-6045BDD68161

Authentisign ID: 00A8686C-42FD-EE11-AAF2-6045BDD68161

Property Address: **11364 Estates Court, Riverside, CA 92503**                    Date: **April 17, 2024**

**E.   TITLE:**
  (1)  This Agreement is, as specified in **paragraph 3L(5)**, contingent upon Buyer's ability to obtain the title policy provided for in **paragraph 13G** and on Buyer's review of a current Preliminary Report and items that are disclosed or observable even if not on record or not specified in the Preliminary Report, and satisfying Buyer regarding the current status of title. Buyer is advised to review all underlying documents and other matters affecting title, including, but not limited to, any documents or deeds referenced in the Preliminary Report and any plotted easements.
  (2)  Buyer has **5 Days** after receipt to review a revised Preliminary Report, if any, furnished by the Title Company and cancel the transaction if the revised Preliminary Report reveals material or substantial deviations from a previously provided Preliminary Report.

**F.   CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES (IF APPLICABLE):** This Agreement is, as specified in **paragraph 3L(6)**, contingent upon Buyer's review and approval of Common Interest Disclosures required by Civil Code § 4525 and under **paragraph 11L** ("CI Disclosures").

**G.   BUYER REVIEW OF LEASED OR LIENED ITEMS CONTINGENCY:** Buyer's review of and ability and willingness to assume any lease, maintenance agreement or other ongoing financial obligation, or to accept the Property subject to any lien, disclosed pursuant to **paragraph 9B(6)**, is, as specified in **paragraph 3L(7)**, a contingency of this Agreement. Any assumption of the lease shall not require any financial obligation or contribution by Seller. Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement if Buyer, by the time specified in **paragraph 3L(7)**, refuses to enter into any necessary written agreements to accept responsibility for all obligations of Seller-disclosed leased or liened items.

**H.   REMOVAL OR WAIVER OF CONTINGENCIES WITH OFFER: Buyer shall have no obligation to remove a contractual contingency unless Seller has provided all required documents, reports, disclosures, and information pertaining to that contingency.** If Buyer does remove a contingency without first receiving all required information from Seller, Buyer is relinquishing any contractual rights that apply to that contingency. **If Buyer removes or waives any contingencies without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Agent.**

**I.   REMOVAL OF CONTINGENCY OR CANCELLATION:**
  (1)  **For any contingency specified in paragraph 3L, 8, or elsewhere, Buyer shall, within the applicable period specified, remove the contingency or cancel this Agreement.**
  (2)  For the contingencies for review of Seller Documents, Preliminary Report, and Condominium/Planned Development Disclosures, Buyer shall, within the time specified in **paragraph 3L** or **5 Days** after Delivery of Seller Documents or CI Disclosures, whichever occurs later, remove the applicable contingency in writing or cancel this Agreement.
  (3)  If Buyer does not remove a contingency within the time specified, Seller, after first giving Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), shall have the right to cancel this Agreement.

**J.   SALE OF BUYER'S PROPERTY:** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer unless the Sale of Buyer's Property (C.A.R. Form COP) is checked as a contingency of this Agreement in **paragraph 3L(8)**.

**9.   ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**

**A.   NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the Multiple Listing Service (MLS), flyers, marketing materials, or disclosures are NOT included in the purchase price or excluded from the sale unless specified in this paragraph or **paragraph 3P** or as Otherwise Agreed. Any items included herein are components of the home and are not intended to affect the price. All items are transferred without Seller warranty.

**B.   ITEMS INCLUDED IN SALE:**
  (1)  All EXISTING fixtures and fittings that are attached to the Property;
  (2)  EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances and appliances for which special openings or encasements have been made (whether or not checked in **paragraph 3P**), window and door screens, awnings, shutters, window coverings (which includes blinds, curtains, drapery, shutters or any other materials that cover any portion of the window) and any associated hardware and rods, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment (including, but not limited to, any cleaning equipment such as motorized/automatic pool cleaners, pool heaters, pool nets, pool covers), garage door openers/remote controls, mailbox, in-ground landscaping, water features and fountains, water softeners, water purifiers, light bulbs (including smart bulbs) and all items specified as included in **paragraph 3P, if currently existing at the time of Acceptance.**
       **Note:** If Seller does not intend to include any item specified as being included above because it is not owned by Seller, whether placed on the Property by Agent, stager or other third party, the item should be listed as being excluded in **paragraph 3P** or excluded by Seller in a counter offer.
  (3)  Security System includes any devices, hardware, software, or control units used to monitor and secure the Property, including but not limited to, any motion detectors, door or window alarms, and any other equipment utilized for such purpose. If checked in **paragraph 3P**, all such items are included in the sale, whether hard wired or not.
  (4)  Home Automation (Smart Home Features) includes any electronic devices and features including, but not limited to, thermostat controls, kitchen appliances not otherwise excluded, and lighting systems, that are connected (hard wired or wirelessly) to a control unit, computer, tablet, phone, or other "smart" device. Any Smart Home devices and features that are physically affixed to the real property, and also existing light bulbs, are included in the sale. Buyer is advised to use **paragraph 3P(1)** or an addendum to address more directly specific items to be included. Seller is advised to use a counter offer to address more directly any items to be excluded.
  (5)  Non-Dedicated Devices: If checked in **paragraph 3P**, all smart home and security system control devices are included in the sale, except for any non-dedicated personal computer, tablet, or phone used to control such features. Buyer acknowledges that a separate device and access to wifi or Internet may be required to operate some smart home features and Buyer may have to obtain such device after Close Of Escrow. Seller shall de-list any devices from any personal accounts and shall cooperate with any transfer of services to Buyer. Buyer is advised to change all passwords and ensure the security of any smart home features.
  (6)  LEASED OR LIENED ITEMS AND SYSTEMS: Seller, within the time specified in **paragraph 3N(1)**, shall (i) disclose to Buyer if any item or system specified in **paragraph 3P** or **9B** or otherwise included in the sale is leased, or not owned by Seller, or is subject to any maintenance or other ongoing financial obligation, or specifically subject to a lien or other encumbrance or loan, and (ii) Deliver to Buyer all written materials (such as lease, warranty, financing, etc.) concerning any such item.

RPA REVISED 12/22 (PAGE 6 OF 16)        Buyer's Initials  JA  /  CH        Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 6 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com        j&C

Authentisign ID: FF6557B9-50FF-EE11-AAF2-6045BDD68161

Authentisign ID: 00A8686C-42FD-EE11-AAF2-6045BDD68161
Property Address: **11364 Estates Court, Riverside, CA  92503**                                    Date: **April 17, 2024**

(7)   Seller represents that all items included in the purchase price, unless Otherwise Agreed, **(i)** are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to **paragraph 9B(6)**, and **(ii)** are transferred without Seller warranty regardless of value. Seller shall cooperate with the identification of any software or applications and Buyer's efforts to transfer any services needed to operate any Smart Home Features or other items included in this Agreement, including, but not limited to, utilities or security systems.

C.   **ITEMS EXCLUDED FROM SALE:** Unless Otherwise Agreed, the following items are excluded from sale: **(i)** All items specified in **paragraph 3P(2)**; **(ii)** audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; **(iii)** furniture and other items secured to the Property for earthquake or safety purposes. **Unless otherwise specified in paragraph 3P(1), brackets attached to walls, floors or ceilings for any such component, furniture or item will be removed and holes or other damage shall be repaired, but not painted.**

10. **ALLOCATION OF COSTS:**
A.   **INSPECTIONS, REPORTS, TESTS AND CERTIFICATES: Paragraphs 3Q(1), (2), (3), and (5)** only determines who is to pay for the inspection, report, test, certificate or service mentioned; **it does not determine who is to pay for any work recommended or identified in any such document. Agreements for payment of required work should be specified elsewhere in paragraph 3Q, or 3R, or in a separate agreement (such as C.A.R. Forms RR, RRRR, ADM or AEA).** Any reports in these paragraphs shall be Delivered in the time specified in **paragraph 3N(1).**
B.   **GOVERNMENT REQUIREMENTS AND CORRECTIVE OR REMEDIAL ACTIONS:**
(1)   **LEGALLY REQUIRED INSTALLATIONS AND PROPERTY IMPROVEMENTS:** Any required installation of smoke alarm or carbon monoxide device(s) or securing of water heater shall be completed within the time specified in **paragraph 3N(4)** and paid by the Party specified in **paragraph 3Q(4).** If Buyer is to pay for these items, Buyer, as instructed by Escrow Holder, shall deposit funds into escrow or directly to the vendor completing the repair or installation. Prior to Close Of Escrow, Seller shall Deliver to Buyer written statement(s) of compliance in accordance with any Law, unless Seller is exempt. If Seller is to pay for these items and does not fulfill Seller's obligation in the time specified, and Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for Buyer's costs.
(2)   **POINT OF SALE REQUIREMENTS:**
(A)   Point of sale inspections, reports and repairs refer to any such actions required to be completed before or after Close Of Escrow that are required in order to close under any Law and paid by Party specified in **paragraphs 3Q(5) and 3Q(6).** Unless Parties Otherwise Agree to another time period, any such repair, shall be completed prior to final verification of Property. If Buyer agrees to pay for any portion of such repair, Buyer, shall **(i)** directly pay to the vendor completing the repair or **(ii)** provide an invoice to Escrow Holder, deposit funds into escrow sufficient to pay for Buyer's portion of such repair and request Escrow Holder pay the vendor completing the repair.
(B)   Buyer shall be provided, within the time specified in **paragraph 3N(1)**, unless Parties Otherwise Agree to another time period, a Copy of any required government-conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.
(3)   **REINSPECTION FEES:** If any repair in **paragraph 10B(1)** is not completed within the time specified and the lender requires an additional inspection to be made, Seller shall be responsible for any corresponding reinspection fee. If Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for those costs.
(4)   **INFORMATION AND ADVICE ON REQUIREMENTS:** Buyer and Seller are advised to seek information from a knowledgeable source regarding local and State mandates and whether they are point of sale requirements or requirements of ownership. Agents do not have expertise in this area and cannot ascertain all of the requirements or costs of compliance.
C.   **HOME WARRANTY:**
(1)   Buyer shall choose the home warranty plan and any optional coverages. Buyer shall pay any cost of that plan, chosen by Buyer, that exceeds the amount allocated to Seller in **paragraph 3Q(18).** Buyer is informed that home warranty plans have many optional coverages, including but not limited to, coverages for Air Conditioner and Pool/Spa. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer and their cost.
(2)   **If Buyer waives the purchase of a home warranty plan in paragraph 3Q(18), Buyer may still purchase a home warranty plan, at Buyer's expense, prior to Close Of Escrow.**
11. **STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**
A.   **TDS, NHD, AND OTHER STATUTORY AND SUPPLEMENTAL DISCLOSURES:**
(1)   Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: unless exempt, fully completed disclosures or notices required by §§ 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement (C.A.R. Form TDS), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD), and, if the Property is in a high or very high fire hazard severity area, the information, notices, documentation, and agreements required by §§ 1102.6(f) and 1102.19 of the Civil Code (C.A.R. Form FHDS).
(2)   The Real Estate Transfer Disclosure Statement required by this paragraph is considered fully completed if Seller has completed the section titled Coordination with Other Disclosure Forms by checking a box (Section I), and Seller has completed and answered all questions and Signed the Seller's Information section (Section II) and the Seller's Agent, if any, has completed and Signed the Seller's Agent's section (Section III), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Section V acknowledgment of receipt of a Copy of the TDS shall be Signed after all previous sections, if applicable, have been completed. Nothing stated herein relieves a Buyer's Agent, if any, from the obligation to **(i)** conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or **(ii)** complete any sections on all disclosures required to be completed by Buyer's Agent.
(3)   Seller shall, within the time specified in **paragraph 3N(1)**, provide "Supplemental Disclosures" as follows: **(i)** unless exempt from the obligation to provide a TDS, complete a Seller Property Questionnaire (C.A.R. Form SPQ) by answering all questions and Signing and Delivering a Copy to Buyer; **(ii)** if exempt from the obligation to provide a TDS, complete an Exempt Seller Disclosure (C.A.R. Form ESD) by answering all questions and Signing and Delivering a Copy to Buyer.

RPA REVISED 12/22 (PAGE 7 OF 16)          Buyer's Initials   **JA** / **CH**     Seller's Initials  _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 7 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201  www.lwolf.com                J&C

Authentisign ID: FF6557B9-50FF-EE11-AAF2-6045BDD68161

Authentisign ID: 00A8686C-42FD-EE11-AAF2-6045BDD68161

Property Address: *11364 Estates Court, Riverside, CA 92503*       Date: *April 17, 2024*

   (4) In the event Seller or Seller's Agent, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer under this paragraph, Seller shall, in writing, promptly provide a subsequent or amended TDS, Seller Property Questionnaire or other document, in writing, covering those items. Any such document shall be deemed an amendment to the TDS or SPQ. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are discovered by Buyer or disclosed in reports or documents provided to or ordered and paid for by Buyer.**

**B. LEAD DISCLOSURES:**
   (1) Seller shall, within the time specified in **paragraph 3N(1)**, for any residential property built before January 1, 1978, unless exempted by Law, Deliver to Buyer a fully completed Federal Lead-Based Paint Disclosures (C.A.R. Form LPD) and pamphlet ("Lead Disclosures").
   (2) Buyer shall, within the time specified in **paragraph 3L(3)**, have the opportunity to conduct a risk assessment or to inspect for the presence of lead-based paint hazards.

**C. HOME FIRE HARDENING DISCLOSURE AND ADVISORY:** For any transaction where a TDS is required, the property is located in a high or very high fire hazard severity zone, and the home was constructed before January 1, 2010 , Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: (i) a home hardening disclosure required by law; and (ii) a statement of features of which the Seller is aware that may make the home vulnerable to wildfire and flying embers; and (iii) a final inspection report regarding compliance with defensible space requirements if one was prepared pursuant to Government Code § 51182 (C.A.R. Form FHDS).

**D. DEFENSIBLE SPACE DISCLOSURE AND ADDENDUM:** For any transaction in which a TDS is required and the property is located in a high or very high fire hazard severity zone, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer (i) a disclosure of whether the Property is in compliance with any applicable defensible space laws designed to protect a structure on the Property from fire; and (ii) an addendum allocating responsibility for compliance with any such defensible space law (C.A.R. Form FHDS).

**E. WAIVER PROHIBITED:** Waiver of Statutory, Lead, and other Disclosures in **paragraphs 11A(1), 11B, 11C**, and **11D** are prohibited by Law.

**F. RETURN OF SIGNED COPIES:** Buyer shall, within the time specified in **paragraph 3L(4)** OR **5 Days** after Delivery of any disclosures specified in paragraphs **11 A, B, C** or **D**, and defensible space addendum in **paragraph 11D**, whichever is later, return Signed Copies of the disclosures, and if applicable, addendum, to Seller.

**G. TERMINATION RIGHTS:**
   (1) **Statutory and Other Disclosures:** If any disclosure specified in paragraphs **11A, B, C**, or **D**, or subsequent or amended disclosure to those just specified, is Delivered to Buyer after the offer is Signed, Buyer shall have the right to terminate this Agreement within **3 Days** after Delivery in person, or **5 Days** after Delivery by deposit in the mail, or by an electronic record or email satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of rescission to Seller or Seller's Authorized Agent. If Buyer does not rescind within this time period, Buyer has been deemed to have approved the disclosure and shall not have the right to cancel.
   (2) **Defensible Space Compliance:** If, by the time specified in **paragraph 11F**, Buyer does not agree to the terms regarding defensible space compliance Delivered by Seller, as indicated by mutual signatures on the FHDS, then Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement.

**H. WITHHOLDING TAXES:** Buyer and Seller hereby instruct Escrow Holder to withhold the applicable required amounts to comply with federal and California withholding Laws and forward such amounts to the Internal Revenue Service and Franchise Tax Board, respectively. However, no federal withholding is required if, prior to Close Of Escrow, Seller Delivers (i) to Buyer and Escrow Holder a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law (FIRPTA); OR (ii) to a qualified substitute (usually a title company or an independent escrow company) a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law AND the qualified substitute Delivers to Buyer and Escrow Holder an affidavit signed under penalty of perjury (C.A.R. Form QS) that the qualified substitute has received the fully completed Seller's affidavit and the Seller states that no federal withholding is required; OR (iii) to Buyer other documentation satisfying the requirements under Internal Revenue Code § 1445 (FIRPTA). No withholding is required under California Law if, prior to Close Of Escrow, Escrow Holder has received sufficient documentation from Seller that no withholding is required, and Buyer has been informed by Escrow Holder.

**I. MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to § 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov.** Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**J. NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/.** To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Website. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**K. NATURAL AND ENVIRONMENTAL HAZARDS:** Seller shall, within the time specified in **paragraph 3N(1)**, if required by Law: **(i)** Deliver to Buyer the earthquake guide and environmental hazards booklet, and for all residential property with 1-4 units and any manufactured or mobile home built before January 1, 1960, fully complete and Deliver the Residential Earthquake Risk Disclosure Statement; and **(ii)** even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

**L. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
   (1) Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer whether the Property is a condominium or is located in a planned development, other common interest development, or otherwise subject to covenants, conditions, and restrictions (C.A.R. Form SPQ or ESD).

**RPA REVISED 12/22 (PAGE 8 OF 16)**     Buyer's Initials _JA_ / _CH_     Seller's Initials _AC_ / ____ 

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 8 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com       J&C

Authentisign ID: FF6557B9-50FF-EE11-AAF2-6045BDD68161

AuthenIsign ID: 00A8686C-42FD-EE11-AAF2-6045BDD68161

Property Address: **11364 Estates Court, Riverside, CA 92503**                    Date: **April 17, 2024**

(2)  If the Property is a condominium or is located in a planned development or other common interest development with a HOA, Seller shall, within the time specified in **paragraph 3N(3)**, order from, and pay any required fee as specified in **paragraph 3Q(12)** for the following items to the HOA (C.A.R. Form HOA-IR): **(i)** Copies of any documents required by Law (C.A.R. Form HOA-RS); **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; **(v)** the names and contact information of all HOAs governing the Property; **(vi)** pet restrictions; **and (vii)** smoking restrictions ("CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Seller shall, as directed by Escrow Holder, deposit funds into escrow or direct to HOA or management company to pay for any of the above.

M.  **SOLAR POWER SYSTEMS:** For properties with solar panels or solar power systems, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all known information about the solar panels or solar power system. Seller may use the Solar Advisory and Questionnaire (C.A.R. Form SOLAR).

N.  **KNOWN MATERIAL FACTS:** Seller shall, within the time specified in **paragraph 3N(1)**, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including, but not limited to, known insurance claims within the past five years, or provide Buyer with permission to contact insurer to get such information (C.A.R. Form ARC), and make any and all other disclosures required by Law.

12.  **BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

A.  Buyer shall, within the time specified in **paragraph 3L(3)**, have the right, at Buyer's expense unless Otherwise Agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations").

B.  Buyer Investigations include, but are not limited to:

(1)  Inspections regarding any physical attributes of the Property or items connected to the Property, such as:
   (A)  A general home inspection.
   (B)  An inspection for lead-based paint and other lead-based paint hazards.
   (C)  An inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2).
   (D)  Any other specific inspections of the physical condition of the land and improvements.

(2)  Investigation of any other matter affecting the Property, other than those that are specified as separate contingencies. Buyer Investigations include, but are not limited to, an investigation of the availability and cost of general homeowner's insurance, flood insurance and fire insurance. See, Buyer's Investigation Advisory (C.A.R. Form BIA) for more.

C.  Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report, which shall not include any holes or drilling through stucco or similar material; or **(ii)** inspections by any governmental building or zoning inspector or government employee, unless required by Law.

D.  Seller shall make the Property available for all Buyer Investigations. Seller is not obligated to move any existing personal property. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is delivered to Buyer. Buyer shall, **(i)** by the time specified in **paragraph 3L(3)**, complete Buyer Investigations and satisfy themselves as to the condition of the Property, and either remove the contingency or cancel this Agreement, and **(ii)** by the time specified in **paragraph 3L(3)** or **3 Days** after receipt of any Investigation report, whichever is later, give Seller at no cost, complete Copies of all such reports obtained by Buyer, which obligation shall survive the termination of this Agreement. This Delivery of Investigation reports shall not include any appraisal, except an appraisal received in connection with an FHA or VA loan.

E.  **Buyer indemnity and Seller protection for entry upon the Property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

13.  **TITLE AND VESTING:**

A.  Buyer shall, within the time specified in **paragraph 3N(1)**, be provided a current Preliminary Report by the person responsible for paying for the title report in **paragraph 3Q(8)**. If Buyer is responsible for paying, Buyer shall act diligently and in good faith to obtain such Preliminary Report within the time specified. The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities.

B.  Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing. For any lien or matter not being transferred upon sale, Seller will take necessary action to deliver title free and clear of such lien or matter.

C.  Seller shall within **7 Days** after request, give Escrow Holder necessary information to clear title.

D.  Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer all matters known to Seller affecting title, whether of record or not.

E.  If Buyer is a legal entity and the Property purchase price is at least $300,000 and the purchase price is made without a bank loan or similar form of external financing, a Geographic Targeting Order (GTO) issued by the Financial Crimes Enforcement Network, U.S. Department of the Treasury, requires title companies to collect and report certain information about the Buyer, depending on where the Property is located. Buyer agrees to cooperate with the title company's effort to comply with the GTO.

RPA REVISED 12/22 (PAGE 9 OF 16)          Buyer's Initials  JA / CH        Seller's Initials ____ / ____

Authentisign ID: FF6557B9-50FF-EE11-AAF2-6045BDD68161

Authentisign ID: 00A6686C-42FD-EE11-AAF2-6045BDD68161

Property Address: **11364 Estates Court, Riverside, CA 92503**                      Date: **April 17, 2024**

**F.** Buyer shall, after Close Of Escrow, receive a recorded grant deed or any other conveyance document required to convey title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's vesting instructions. The recording document shall contain Buyer's post-closing mailing address to enable Buyer's receipt of the recorded conveyance document from the County Recorder. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

**G.** Buyer shall receive a "ALTA Homeowner's Policy of Title Insurance" or equivalent policy of title insurance, if applicable to the type of property and buyer. Escrow Holder shall request this policy. If a ALTA Homeowner's Policy of Title Insurance is not offered, Buyer shall receive a CLTA Standard Coverage policy unless Buyer has chosen another policy and instructed Escrow Holder in writing of the policy chosen and agreed to pay any increase in cost. Buyer should consult with the Title Company about the availability, and difference in coverage, and cost, if any, between an ALTA Homeowner's Policy and a CLTA Standard Coverage policy and other title policies and endorsements. Buyer should receive notice from the Title Company on its Preliminary (Title) Report of the type of coverage offered. If Buyer is not notified on the Preliminary (Title) Report or is not satisfied with the policy offered, and Buyer nonetheless removes the contingency for Review of the Preliminary Report, Buyer will receive the policy as specified in this paragraph.

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR-B or CC).**

**A.** **SELLER DELIVERY OF DOCUMENTS:** Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all reports, disclosures and information ("Reports") for which Seller is responsible as specified in **paragraphs 7A, 9B(6), 10, 11A, 11B, 11C, 11D, 11H, 11K, 11L, 11M, 11N, 13A, 13C, and 28.**

**B.** **BUYER REVIEW OF DOCUMENTS; REPAIR REQUEST; CONTINGENCY REMOVAL OR CANCELLATION**

(1) Buyer has the time specified in **paragraph 3** to: **(i)** perform Buyer Investigations; review all disclosures, Reports, lease documents to be assumed by Buyer pursuant to **paragraph 9B(6)**, and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Other Disclosures Delivered by Seller in accordance with **paragraph 11**.

(2) Buyer may, within the time specified in **paragraph 3L(3)**, request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests (C.A.R. Form RR or RRRR). If Seller does not agree or does not respond, Buyer is not contractually entitled to have the repairs or other requests made and may only cancel based on contingencies in this Agreement.

(3) Buyer shall, by the end of the times specified in **paragraph 3L** (or as Otherwise Agreed), Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement (C.A.R. Form CR-B or CC). However, if any report, disclosure, or information for which Seller is responsible is not Delivered within the time specified in **paragraph 3N(1)**, then Buyer has **5 Days** after Delivery of any such items, or the times specified in **paragraph 3L**, whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement. If Delivery of any Report occurs after a contractual contingency pertaining to that Report has already been waived or removed, the Delivery of the Report does not revive the contingency but there may be a right to terminate for a subsequent or amended disclosure under **paragraph 11G**.

(4) **Continuation of Contingency:** Even after the end of the time specified in **paragraph 3L** and before Seller cancels, if at all, pursuant to **paragraph 14C**, Buyer retains the right, in writing, to either **(i)** remove remaining contingencies, or **(ii)** cancel this Agreement based on a remaining contingency. Once Buyer's written removal of contingency is Delivered to Seller before Seller cancels, Seller may not cancel this Agreement based on that contingency pursuant to **paragraph 14C(1).**

**C.** **SELLER RIGHT TO CANCEL:**

(1) **SELLER RIGHT TO CANCEL; BUYER CONTINGENCIES:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

(2) **SELLER RIGHT TO CANCEL; BUYER CONTRACT OBLIGATIONS:** Seller, after first Delivering to Buyer a Notice to Buyer to Perform, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by **paragraph 3D(1) or 3D(2)** or if the funds deposited pursuant to **paragraph 3D(1) or 3D(2)** are not good when deposited; **(ii)** Deliver updated contact information for Buyer's lender(s) as required by **paragraph 5C(3)**; **(iii)** Deliver a notice of FHA or VA costs or terms, if any, as specified by **paragraph 5C(4)** (C.A.R. Form RR); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by **paragraph 5B or 6A**; **(v)** Deliver a letter as required by **paragraph 6B**; **(vi)** In writing assume or accept leases or liens specified in **paragraph 8G**; **(vii)** Return Statutory and Other Disclosures as required by **paragraph 11F**; **(viii)** Cooperate with the title company's effort to comply with the GTO as required by **paragraph 13E**; **(ix)** Sign or initial a separate liquidated damages form for an increased deposit as required by **paragraphs 5A(2) and 29**; **(x)** Provide evidence of authority to Sign in a representative capacity as specified in **paragraph 28**; or **(xi)** Perform any additional Buyer contractual obligation(s) included in this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Seller's cancellation.

(3) **SELLER RIGHT TO CANCEL; SELLER CONTINGENCIES:** Seller may cancel this Agreement by good faith exercise of any Seller contingency included in this Agreement, or Otherwise Agreed, so long as that contingency has not already been removed or waived in writing.

**D.** **BUYER RIGHT TO CANCEL:**

(1) **BUYER RIGHT TO CANCEL; SELLER CONTINGENCIES:** If, by the time specified in this Agreement, Seller does not Deliver to Buyer a removal of the applicable contingency or cancellation of this Agreement, then Buyer, after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Buyer's cancellation.

(2) **BUYER RIGHT TO CANCEL; SELLER CONTRACT OBLIGATIONS:** If, by the time specified, Seller has not Delivered any item specified in **paragraph 3N(1)** or Seller has not performed any Seller contractual obligation included in this Agreement by the time specified, Buyer, after first Delivering to Seller a Notice to Seller to Perform, may cancel this Agreement.

(3) **BUYER RIGHT TO CANCEL; BUYER CONTINGENCIES:** Buyer may cancel this Agreement by good faith exercise of any Buyer contingency included in this Agreement, or Otherwise Agreed, so long as that contingency has not already been removed in writing.

RPA REVISED 12/22 (PAGE 10 OF 16)      Buyer's Initials _JA_ / _CH_      Seller's Initials _____ / _____



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 10 OF 16)**

Exhibit "1"
Page 40

Authentisign ID: FF6557B9-50FF-EE11-AAF2-6045BDD68161

Authentisign ID: 00A8686C-42FD-EE11-AAF2-6045BDD68161

Property Address: **11364 Estates Court, Riverside, CA  92503**                                    Date: **April 17, 2024**

E. **NOTICE TO BUYER OR SELLER TO PERFORM:** The Notice to Buyer to Perform or Notice to Seller to Perform shall: (i) be in writing; (ii) be Signed by the applicable Buyer or Seller; and (iii) give the other Party at least **2 Days** after Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform or Notice to Seller to Perform may not be Delivered any earlier than **2 Days** prior to the Scheduled Performance Day to remove a contingency or cancel this Agreement or meet an obligation specified in **paragraph 14**, whether or not the Scheduled Performance Day falls on a Saturday, Sunday or legal holiday. If a Notice to Buyer to Perform or Notice to Seller to Perform is incorrectly Delivered or specifies a time less than the agreed time, the notice shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new Notice to Buyer to Perform or Notice to Seller to Perform with the specified timeframe.

F. **EFFECT OF REMOVAL OF CONTINGENCIES:**
   (1) **REMOVAL OF BUYER CONTINGENCIES:** If Buyer removes any contingency or cancellation rights, unless Otherwise Agreed, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of Reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for the non-delivery of any Reports, disclosures or information outside of Seller's control and for any Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.
   (2) **REMOVAL OF SELLER CONTINGENCIES:** If Seller removes any contingency or cancellation rights, unless Otherwise Agreed, Seller shall conclusively be deemed to have: (i) satisfied themselves regarding such contingency, (ii) elected to proceed with the transaction; and (iii) given up any right to cancel this Agreement based on such contingency.

G. **DEMAND TO CLOSE ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a Demand to Close Escrow (C.A.R. Form DCE). The DCE shall: (i) be Signed by the applicable Buyer or Seller; and (ii) give the other Party at least **3 Days** after Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** prior to the Scheduled Performance Day for the Close Of Escrow. If a DCE is incorrectly Delivered or specifies a time less than the above timeframe, the DCE shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new DCE.

H. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign and Deliver mutual instructions to cancel the sale and escrow and release deposits, if any, to the Party entitled to the funds, less (i) fees and costs paid by Escrow Holder on behalf of that Party, if required by this Agreement; and (ii) any escrow fee charged to that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. A release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. **A Party may be subject to a civil penalty of up to $1,000 for refusal to Sign cancellation instructions if no good faith dispute exists as to which Party is entitled to the deposited funds (Civil Code § 1057.3). Note: Neither Agents nor Escrow Holder are qualified to provide any opinion on whether either Party has acted in good faith or which Party is entitled to the deposited funds. Buyer and Seller are advised to seek the advice of a qualified California real estate attorney regarding this matter.**

15. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless Otherwise Agreed. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. Buyer acknowledges that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain invoices and paid receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

16. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property condition within the time specified in **paragraph 3J**, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to **paragraph 7B**; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

17. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless Otherwise Agreed, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, Seller rental payments to third parties, HOA regular assessments due prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. Seller shall pay any HOA special or emergency assessments due prior to Close Of Escrow. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special or emergency assessments that are due after Close Of Escrow. Property will be reassessed upon change of ownership. Any supplemental tax bills delivered to Escrow Holder prior to closing shall be prorated and paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). Seller agrees all service fees, maintenance costs and utility bills will be paid current up and through the date of Close Of Escrow. TAX BILLS AND UTILITY BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

18. **BROKERS AND AGENTS:**
   A. **COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between that Seller or Buyer. If Seller agrees to pay Buyer's Broker (see **paragraph 3G(3)**), Seller shall be entitled to a copy of the written portion of the compensation agreement between Buyer and Buyer's Broker identifying the compensation to be paid. See C.A.R. Form SPBB for further information.
   B. **SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Agent: (i) Does not decide what price Buyer should pay or Seller should accept; (ii) Does not guarantee the condition of the Property; (iii) Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; (v) Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Agent; (vi) Shall not be responsible for inspecting public records or permits concerning the title or use of Property; (vii) Shall not be responsible for identifying the location of boundary lines or other items affecting title; (viii) Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; (ix) Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; (x) Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and (xi) Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

RPA REVISED 12/22 (PAGE 11 OF 16)         Buyer's Initials  _JA_  _CH_          Seller's Initias  ___

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 11 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com                J&C

Authentisign ID: FF6557B9-50FF-EE11-AAF2-6045BDD68161

Authentisign ID: 00A8686C-42FD-EE11-AAF2-6045BDD68161
Property Address: **11364 Estates Court, Riverside, CA 92503** _____ Date: **April 17, 2024**
**19. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

**A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3A, 3B, 3D-G, 3N(2), 3Q, 3R, 4A, 4B, 5A(1-2) 5D, 5E, 10B(2)(A), 10B(3), 10C, 11H, 11L(2), 13 (except 13D), 14H, 17, 18A, 19, 23, 25, 27, 28, 32, 33, and **paragraph 3 of the Real Estate Brokers Section.** If a Copy of the separate compensation agreement(s) provided for in **paragraph 18A** or **paragraph 3 of the Real Estate Brokers Section** is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned.

**B.** Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller shall Sign and return Escrow Holder's general provisions or supplemental instructions within the time specified in **paragraph 3N(2).** Buyer and Seller shall execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 Days,** shall pay to Escrow Holder or HOA or HOA management company or others any fee required by **paragraphs 3, 8, 10, 11,** or elsewhere in this Agreement.

**C.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** after **Acceptance.** Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title Company when received from Seller, if a separate company is providing title insurance. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under **paragraph 11H,** Escrow Holder shall deliver to Buyer, Buyer's Agent, and Seller's Agent a Qualified Substitute statement that complies with federal Law. If Escrow Holder's Qualified Substitute statement does not comply with federal law, the Parties instruct escrow to withhold all applicable required amounts under **paragraph 11H.**

**D.** Agents are not a party to the escrow, except for Brokers for the sole purpose of compensation pursuant to **paragraph 18A and paragraph 3 of the Real Estate Brokers Section.** If a Copy of the separate compensation agreement(s) provided for in either of those paragraphs is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s).Buyer and Seller irrevocably assign to Brokers compensation specified in **paragraph 18A,** and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

**E.** Buyer and Seller acknowledge that Escrow Holder may require invoices for expenses under this Agreement. Buyer and Seller, upon request by Escrow Holder, within **3 Days** or within a sufficient time to close escrow, whichever is sooner, shall provide any such invoices to Escrow Holder.

**F.** Upon receipt, Escrow Holder shall provide Buyer, Seller, and each Agent verification of Buyer's deposit of funds pursuant to **paragraphs 5A(1) and 5A(2).** Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify each Agent: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

**G.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3 Days** after mutual execution of the amendment.

**20. SELECTION OF SERVICE PROVIDERS:** Agents do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Agent or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**21. MULTIPLE LISTING SERVICE ("MLS"):** Agents are authorized to report to the MLS that an offer has been accepted and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS. Buyer acknowledges that: **(i)** any pictures, videos, floor plans (collectively, "Images") or other information about the Property that has been or will be inputted into the MLS or internet portals, or both, at the instruction of Seller or in compliance with MLS rules, will not be removed after Close Of Escrow; **(ii)** California Civil Code § 1088(c) requires the MLS to maintain such Images and information for at least three years and as a result they may be displayed or circulated on the Internet, which cannot be controlled or removed by Seller or Agents; and **(iii)** Seller, Seller's Agent, Buyer's Agent, and MLS have no obligation or ability to remove such Images or information from the Internet.

**22. ATTORNEY FEES AND COSTS:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in **paragraph 30A.**

**23. ASSIGNMENT/NOMINATION:** Buyer shall have the right to assign all of Buyer's interest in this Agreement to Buyer's own trust or to any wholly owned entity of Buyer that is in existence at the time of such assignment. Otherwise, Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Prior to any assignment, Buyer shall disclose to Seller the name of the assignee and the amount of any monetary consideration between Buyer and assignee. Buyer shall provide assignee with all documents related to this Agreement including, but not limited to, the Agreement and any disclosures. If assignee is a wholly owned entity or trust of Buyer, that assignee does not need to re-sign or initial all documents provided. Whether or not an assignment requires seller's consent, at the time of assignment, assignee shall deliver a letter from assignee's lender that assignee is prequalified or preapproved as specified in **paragraph 6B.** Should assignee fail to deliver such a letter, Seller, after first giving Assignee an Notice to Buyer to Perform, shall have the right to terminate the assignment. Buyer shall, within the time specified in **paragraph 3K,** Deliver any request to assign this Agreement for Seller's consent. If Buyer fails to provide the required information within this time frame, Seller's withholding of consent shall be deemed reasonable. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless Otherwise Agreed by Seller (C.A.R. Form AOAA). Parties shall provide any assignment agreement to Escrow Holder within 1 Day after the assignment. Any nomination by Buyer shall be subject to the same procedures, requirements, and terms as an assignment as specified in this paragraph.

**24. EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

RPA REVISED 12/22 (PAGE 12 OF 16)        Buyer's Initials JA / CH        Seller's Initials ___ / ___        

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 12 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com        j&C

Exhibit "1"
Page 42

Authentisign ID: FF6557B9-50FF-EE11-AAF2-6045BDD68161

Authentisign ID: 00A8686C-42FD-EE11-AAF2-6045BDD68161
Property Address: *11364  Estates Court, Riverside, CA  92503*                    Date: *April 17, 2024*

**25.  DEFINITIONS and INSTRUCTIONS:** The following words are defined terms in this Agreement, shall be indicated by initial capital letters throughout this Agreement, and have the following meaning whenever used:

**A.**   **"Acceptance"** means the time the offer or final counter offer is fully executed, in writing, by the recipient Party and is Delivered to the offering Party or that Party's Authorized Agent.

**B.**   **"Agent"** means the Broker, salesperson, broker-associate or any other real estate licensee licensed under the brokerage firm identified in **paragraph 2B.**

**C.**   **"Agreement"** means this document and any counter offers and any incorporated addenda or amendments, collectively forming the binding agreement between the Parties. Addenda and amendments are incorporated only when Signed and Delivered by all Parties.

**D.**   **"As-Is"** condition: Seller shall disclose known material facts and defects as specified in this Agreement. Buyer has the right to inspect the Property and, within the time specified, request that Seller make repairs or take other corrective action, or exercise any contingency cancellation rights in this Agreement. Seller is only required to make repairs specified in this Agreement or as Otherwise Agreed.

**E.**   **"Authorized Agent"** means an individual real estate licensee specified in the Real Estate Broker Section.

**F.**   **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the Parties.

**G.**   **"Close Of Escrow"**, including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded for any real property, or the date of Delivery of a document evidencing the transfer of title for any non-real property transaction.

**H.**   **"Copy"** means copy by any means including photocopy, facsimile and electronic.

**I.**   **Counting Days** is done as follows unless Otherwise Agreed: (1) The first Day after an event is the first full calendar date following the event, and ending at 11:59 pm. For example, if a Notice to Buyer to Perform (C.A.R. form NBP) is Delivered at 3 pm on the 7th calendar day of the month, or Acceptance of a counter offer is personally received at 12 noon on the 7th calendar day of the month, then the 7th is Day "0" for purposes of counting days to respond to the NBP or calculating the Close Of Escrow date or contingency removal dates and the 8th of the month is Day 1 for those same purposes. (2) All calendar days are counted in establishing the first Day after an event. (3) All calendar days are counted in determining the date upon which performance must be completed, ending at 11:59 pm on the last day for performance ("Scheduled Performance Day"). (4) After Acceptance, if the Scheduled Performance Day for any act required by this Agreement, including Close Of Escrow, lands on a Saturday, Sunday, or Legal Holiday, the performing party shall be allowed to perform on the next day that is not a Saturday, Sunday or Legal Holiday ("Allowable Performance Day"), and ending at 11:59 pm. "Legal Holiday" shall mean any holiday or optional bank holiday under Civil Code §§ 7 and 7.1, any holiday under Government Code § 6700. (5) For the purposes of COE, any day that the Recorder's office in the County where the Property is located is closed or any day that the lender or Escrow Holder under this Agreement is closed, the COE shall occur on the next day the Recorder's office in that County, the lender, and the Escrow Holder is open. (6) COE is considered Day 0 for purposes of counting days Seller is allowed to remain in possession, if permitted by this Agreement.

**J.**   **"Day"** or **"Days"** means calendar day or days. However, delivery of deposit to escrow is based on business days.

**K.**   **"Deliver", "Delivered" or "Delivery"** of documents, unless Otherwise Agreed, means and shall be effective upon personal receipt of the document by Buyer or Seller or their Authorized Agent. Personal receipt means (I) a Copy of the document, or as applicable, link to the document, is in the possession of the Party or Authorized Agent, regardless of the Delivery method used (i.e. e-mail, text, other), or (II) an Electronic Copy of the document, or as applicable, link to the document, has been sent to any of the designated electronic delivery addresses specified in the Real Estate Broker Section on page 16. After Acceptance, Agent may change the designated electronic delivery address for that Agent by, in writing, Delivering notice of the change in designated electronic delivery address to the other Party. Links could be, for example, to DropBox or GoogleDrive or other functionally equivalent program. If the recipient of a link is unable or unwilling to open the link or download the documents or otherwise prefers Delivery of the documents directly, Recipient of a link shall notify the sender in writing, within **3 Days** after Delivery of the link (C.A.R. Form RFR). In such case, Delivery shall be effective upon Delivery of the documents and not the link. Failure to notify sender within the time specified above shall be deemed consent to receive, and Buyer opening, the document by link.

**L.**   **"Electronic Copy" or "Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Unless Otherwise Agreed, Buyer and Seller agree to the use of Electronic Signatures. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

**M.**   **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

**N.**   **"Legally Authorized Signer"** means an individual who has authority to Sign for the principal as specified in **paragraph 32** or **paragraph 33.**

**O.**   **"Otherwise Agreed"** means an agreement in writing, signed by both Parties and Delivered to each.

**P.**   **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

**Q.**   **"Sign" or "Signed"** means either a handwritten or Electronic Signature on an original document, Copy or any counterpart.

**26.  TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the terms and conditions herein. The individual Liquidated Damages and Arbitration of Disputes paragraphs are incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a Counter Offer or addendum. **If at least one but not all Parties initial, a Counter Offer is required until agreement is reached.** Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance and to market the Property for backup offers after Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing. By signing this offer or any document in the transaction, the Party Signing the document is deemed to have read the document in its entirety.

**27.  TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter and may not be contradicted by evidence of any prior agreement or contemporaneous oral argument. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as Otherwise Agreed, this Agreement shall be interpreted, and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

RPA REVISED 12/22 (PAGE 13 OF 16)          Buyer's Initials   *JA*  / *CH*       Seller's Initials  *PL* ____

Authentisign ID: FF6557B9-50FF-EE11-AAF2-6045BDD68161

Authentisign ID: 00A8686C-42FD-EE11-AAF2-6045BDD68161

Property Address: **11364 Estates Court, Riverside, CA 92503**                    Date: **April 17, 2024**

28. **LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer identified in **paragraph 32 or 33** appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer **(i)** represents that the entity for which that person is acting already exists and is in good standing to do business in California and **(ii)** shall Deliver to the other Party and Escrow Holder, within the time specified in **paragraph 3N(5)**, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

29. **LIQUIDATED DAMAGES** (By initialing in the space below, you are agreeing to Liquidated Damages):
**If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM DID).**

Buyer's Initials  *JA* / *CH*                    Seller's Initials  _____ / _____

30. **MEDIATION:**
    A.  The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. The mediation shall be conducted through the C.A.R. Real Estate Mediation Center for Consumers (www.consumermediation.org) or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Agents(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Agent.** Mediation fees, if any, shall be divided equally among the Parties involved, and shall be recoverable under the prevailing party attorney fees clause. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.
    B.  **ADDITIONAL MEDIATION TERMS:** (i) Exclusions from this mediation agreement are specified in paragraph 31B; (ii) The obligation to mediate does not preclude the right of either Party to seek a preservation of rights under paragraph 31C; and (iii) Agent's rights and obligations are further specified in paragraph 31D. These terms apply even if the Arbitration of Disputes paragraph is not initialed.

31. **ARBITRATION OF DISPUTES:**
    A.  The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Agents(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Agent. The arbitration shall be conducted through any arbitration provider or service mutually agreed to by the Parties. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the Parties mutually agree to a different arbitrator. Enforcement of, and any motion to compel arbitration pursuant to, this agreement to arbitrate shall be governed by the procedural rules of the Federal Arbitration Act, and not the California Arbitration Act, notwithstanding any language seemingly to the contrary in this Agreement. The Parties shall have the right to discovery in accordance with Code of Civil Procedure § 1283.05. The arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction.
    B.  **EXCLUSIONS:** The following matters are excluded from mediation and arbitration: (i) Any matter that is within the jurisdiction of a probate, small claims or bankruptcy court; (ii) an unlawful detainer action; and (iii) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985.
    C.  **PRESERVATION OF ACTIONS:** The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, provided the filing party concurrent with, or immediately after such filing makes a request to the court for a stay of litigation pending any applicable mediation or arbitration proceeding; or (iii) the filing of a mechanic's lien.
    D.  **AGENTS:** Agents shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Agents(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.
    E.  **"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

    **"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

Buyer's Initials  *JA* / *CH*                    Seller's Initials  _____ / _____

RPA REVISED 12/22 (PAGE 14 OF 16)         Buyer's Initials  *JA* / *CH*    Seller's Initials  _____ / _____     

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 14 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com     j&C

Exhibit "1"
Page 44

Authentisign ID: FF6557B9-50FF-EE11-AAF2-6045BDD68161

Authentisign ID: 00A8686C-42FD-EE11-AAF2-6045BDD68161
Property Address: **11364 Estates Court, Riverside, CA 92503** _____ Date: **April 17, 2024**

**32. BUYER'S OFFER**

    **A.** **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless by the date and time specified in **paragraph 3C**, the offer is Signed by Seller and a Copy of the Signed offer is Delivered to Buyer or Buyer's Authorized Agent. **Seller has no obligation to respond to an offer made.**

    **B.** ☐ **ENTITY BUYERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

        (1) One or more Buyers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

        (2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 28** for additional terms.

        (3) The name(s) of the Legally Authorized Signer(s) is/are: _____

        (4) If a trust, identify Buyer as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust).

        (5) If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #:

        _____

        _____

    **C.** The RPA has 16 pages. Buyer acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

    **D.** **BUYER SIGNATURE(S):**

(Signature) By, *Jonathan Alarcon* _____ Date: 04/18/2024

    Printed name of BUYER: **Jonathan Alarcon**

    ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

(Signature) By, *Cindy Herrera* _____ Date: 04/18/2024

    Printed name of BUYER: **Cindy Herrera**

    ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

**33. ACCEPTANCE**

    **A.** **ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement and authorizes Agent to Deliver a Signed Copy to Buyer.
**Seller's acceptance is subject to the attached Counter Offer or Back-Up Offer Addendum, or both, checked below.**
Seller shall return and include the entire agreement with any response.

    ☒ **Seller Counter Offer** (C.A.R. Form SCO or SMCO) COUNTER OFFER/ADDENDUM WITH TERMS AND CONDITIONS

    ☐ **Back-Up Offer Addendum** (C.A.R. Form BUO)

    **B.** ☐ **Entity Sellers: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure form (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

        (1) One or more Sellers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

        (2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 28** for additional terms.

        (3) The name(s) of the Legally Authorized Signer(s) is/are: _____

        (4) If a trust, identify Seller as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust).

        (5) If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #:

        _____

        _____

    **C.** The RPA has 16 pages. Seller acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

    **D.** **SELLER SIGNATURE(S):**

(Signature) By, *Risa, Trustee* _____ Date: 4/19/24

    Printed name of SELLER: _____

    ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

(Signature) By, _____ Date: _____

    Printed name of SELLER: _____

    ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

**OFFER NOT ACCEPTED:** _____/_____ No Counter Offer is being made. This offer was not accepted by Seller _____ (date)
    Seller's Initials



RPA REVISED 12/22 (PAGE 15 OF 16)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 15 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com      J&C

Authentisign ID: FF6557B9-50FF-EE11-AAF2-6045BDD68161

Authentisign ID: 00A8666C-42FD-EE11-AAF2-6045BDD68161

Property Address: **11364 Estates Court, Riverside, CA 92503**        Date: **April 17, 2024**

REAL ESTATE BROKERS SECTION:
1. **Real Estate Agents are not parties to the Agreement between Buyer and Seller.**
2. **Agency relationships are confirmed as stated in paragraph 2.**
3. **Cooperating Broker Compensation:** Seller's Broker agrees to pay Buyer's Broker and Buyer's Broker agrees to accept, out of Seller's Broker's proceeds in escrow, the amount specified in the MLS, provided Buyer's Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Seller's Broker and Buyer's Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.
4. **Presentation of Offer:** Pursuant to the National Association of REALTORS® Standard of Practice 1-7, if Buyer's Agent makes a written request, Seller's Agent shall confirm in writing that this offer has been presented to Seller.
5. Agents' Signatures and designated electronic delivery address:
   A. Buyer's Brokerage Firm **WE'RE Real Estate** _____ Lic. # **02102670**
      By _~Jack Toro~_ **Jack Toro** Lic. # **02198741** _____ Date 04/18/2024
      By _____ Lic. # _____ Date _____
      Address **965 N. Grand Avenue** _____ City **Covina** _____ State **CA** Zip **91724**
      Email **jack@werereatestate.com** _____ Phone # **(714)732-1429**
      ☐ More than one agent from the same firm represents Buyer. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
      ☐ More than one brokerage firm represents Buyer. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

      Designated Electronic Delivery Address(es) (Check all that apply):
      ☐ Email above; ☐ Text to Phone # above; ☐ Alternate: _____

   B. Seller's Brokerage Firm **Brian Thompson, Broker** _____ Lic. # **01828461**
      By _[signature]_ **Brian Thompson** Lic. # **01828461** ____ Date **4-19-21**
      By _____ Lic. # _____ Date _____
      Address **23792 Rockfield Blvd** _____ City **Lake Forest** _____ State **CA** Zip **92630**
      Email **briant@winterstonerealestate.com** _____ Phone # **(949)981-9120**
      ☐ More than one agent from the same firm represents Seller. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
      ☐ More than one brokerage firm represents Seller. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

      Designated Electronic Delivery Address(es) (To be filled out by Seller's Agent) (Check all that apply):
      ☐ Email above; ☐ Text to Phone # above; ☐ Alternate: _____

---

ESCROW HOLDER ACKNOWLEDGMENT:
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____), Counter Offer numbers _____ and _____, and agrees to act as Escrow Holder subject to paragraph 19 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised by _____ that the date of Acceptance of the Agreement is _____
Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Financial Protection and Innovation, ☐ Department of Insurance, ☐ Department of Real Estate.

---

PRESENTATION OF OFFER: _____/_____ Seller's Brokerage Firm presented this offer to Seller on _____ (date).
        Agent or Seller Initials

Buyer's Initials **JA** / **CH**     Seller's Initials _[initials]_

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

RPA REVISED 12/22 (PAGE 16 OF 16)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 16 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com      j&C

Authentisign ID: FF6557B9-50FF-EE11-AAF2-6045BDD68161
Authentisign ID: 0061386C-42FD-EE11-AAF2-6045BDD68161



CALIFORNIA
ASSOCIATION
OF REALTORS®

# BUYER'S INVESTIGATION ADVISORY
### (C.A.R. Form BIA, Revised 12/21)

**Property Address** _11364 Estates Court, Riverside, CA 92503_

1. **IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

2. **BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.

3. **YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

   A. **GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and non-structural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.

   B. **SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.

   C. **WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.

   D. **SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.

   E. **WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS; WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.

   F. **ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).

   G. **EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.

   H. **FIRE, HAZARD, AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.

   I. **BUILDING PERMITS, ZONING, GOVERNMENTAL REQUIREMENTS, AND ADDRESS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size. Postal/mailing address and zip code may not accurately reflect the city which has jurisdiction over the property.

   J. **RENTAL PROPERTY RESTRICTIONS:** The State, some counties, and some cities impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.

   K. **SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

© 2021, California Association of REALTORS®, Inc.

**BIA REVISED 12/21 (PAGE 1 OF 2)**



EQUAL HOUSING
OPPORTUNITY

## BUYER'S INVESTIGATION ADVISORY (BIA PAGE 1 OF 2)

| WE'RE Real Estate, 965 N. Grand Avenue Covina CA 91724 | Phone: (714)733-1429 | Fax: | j&C |
| Jack Toro | Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 | www.lwolf.com | |

Authentisign ID: FF6557B9-50FF-EE11-AAF2-6045BDD68161
Authentisign ID: 00A8686C-42FD-EE11-AAF2-6045BDD68161

**L. NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

**By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.**

Buyer  _Jonathan Alarcon_                                    **Jonathan Alarcon** Date 04/18/2024

Buyer  _Cindy Herrera_                                       **Cindy Herrera** Date 04/18/2024

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

BIA REVISED 12/21 (PAGE 2 OF 2)

**BUYER'S INVESTIGATION ADVISORY (BIA PAGE 2 OF 2)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201    www.lwolf.com                    J&C

Authentisign ID: FF6557B9-50FF-EE11-AAF2-6045BDD68161
Authentisign ID: 00A866EC-42FD-EE11-AAF2-6045BDD68161



**FAIR APPRAISAL ACT ADDENDUM**
(C.A.R. Form FAAA, 6/22)

The following terms and conditions are hereby incorporated in and made a part of the Purchase Agreement, OR ☐ Other
_____ ("Agreement"),
dated  _04/17/2024_ , on property known as  _____11364 Estates Court, Riverside, CA 92503_____ ("Property"),
in which _____ is referred to as ("Seller")
and _____Jonathan Alarcon, Cindy Herrera_____ is referred to as ("Buyer").

Any appraisal of the property is required to be unbiased, objective, and not influenced by improper or illegal considerations, including, but not limited to, any of the following: race, color, religion (including religious dress, grooming practices, or both), gender (including, but not limited to, pregnancy, childbirth, breastfeeding, and related conditions, and gender identity and gender expression), sexual orientation, marital status, medical condition, military or veteran status, national origin (including language use and possession of a driver's license issued to persons unable to provide their presence in the United States is authorized under federal law), source of income, ancestry, disability (mental and physical, including, but not limited to, HIV/AIDS status, cancer diagnosis, and genetic characteristics), genetic information, or age.

If a buyer or seller believes that the appraisal has been influenced by any of the above factors, the seller or buyer can report this information to the lender or mortgage broker that retained the appraiser and may also file a complaint with the Bureau of Real Estate Appraisers at https://www2.brea.ca.gov/complaint/ or call (916) 552-9000 for further information on how to file a complaint.

**By signing below, Buyer and Seller has each read, understands and acknowledges receipt of a copy of this Fair Appraisal Act Addendum.**

Buyer  _Jonathan Alarcon_____  Date _04/18/2024_____
Jonathan  Alarcon

Buyer  _Cindy Herrera_____  Date _04/18/2024_____
Cindy  Herrera

Seller  _____  Date _4/19/24_____

Seller  _____  Date _____

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

FAAA 6/22 (PAGE 1 OF 1)

**FAIR APPRAISAL ACT ADDENDUM (FAAA PAGE 1 OF 1)**

WE'RE Real Estate, 965 N. Grand Avenue Covina CA 91724                Phone: (714)732-1429        Fax:                                    j&C
Jack Toro                                Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com

Authentisign ID: FF6557B9-50FF-EE11-AAF2-6045BDD68161
AuthentiSign ID: 00A8686C-42FD-EE11-AAF2-6045BDD68161



## CALIFORNIA CONSUMER PRIVACY ACT ADVISORY, DISCLOSURE AND NOTICE
### (C.A.R. Form CCPA, Revised 12/22)

The California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA"), as amended by California voters in 2020, grants to California residents certain rights in their private, personal information ("PI") that is collected by companies with whom they do business. Under the CCPA, PI is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you. PI could potentially include photographs of, or sales information about, your property.

During the process of buying and selling real estate your PI will be collected and likely shared with others, including real estate licensees, a Multiple Listing Service, real estate internet websites, service providers, lenders, and title and escrow companies, to name several possibilities. Businesses that are covered by the CCPA are required to grant you various rights in your PI, including the right to know what PI is collected, the right to know what PI is sold or shared and to whom, the right to request that the business correct or delete your PI, the right to "opt out" or stop the transfer of your PI to others, and the right to limit the use of certain PI which is considered "sensitive." You may get one or more notices regarding your CCPA rights from businesses you interact with in a real estate transaction. However, not all businesses that receive or share your PI are obligated to comply with the CCPA. Moreover, businesses that are otherwise covered under the CCPA may have a legal obligation to maintain PI, notwithstanding your instruction to the contrary. For instance, regardless of whether they are covered by CCPA, under California law, brokers and Multiple Listing Services are required to maintain their records for 3 years. If you wish to exercise your rights under CCPA, where applicable, you should contact the respective business directly.

You can obtain more information about the CCPA and your rights under the law from the State of California Department of Justice (oag.ca.gov/privacy/ccpa). Additionally, the California Privacy Protection Agency is authorized to promulgate regulations which may further clarify requirements of the CCPA (cppa.ca.gov/regulations/).

**I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory, Disclosure and Notice.**

Buyer/Seller/Landlord/Tenant _Jonathan Alarcon_____  Date 04/18/2024
                             **Jonathan  Alarcon**

Buyer/Seller/Landlord/Tenant _Cindy Herrera_____  Date 04/18/2024
                             **Cindy  Herrera**

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**CCPA REVISED 12/22 (PAGE 1 OF 1)**

**CALIFORNIA CONSUMER PRIVACY ACT ADVISORY (CCPA PAGE 1 OF 1)**

| WE'RE Real Estate, 965 N. Grand Avenue Covina CA 91724 | Phone: (714)732-1429 | Fax: | J&C |
|---|---|---|---|
| Jack Toro | Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com | | |

Exhibit "2"

| Attorney or Party Name, Address, Telephone & FAX Nos.,State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Marc A. Lieberman<br>1875 Century Park East, Ste 2230<br>Los Angeles, CA 90067<br>(310) 284-7350 Fax: (310) 432-5999<br>157318 CA<br>marc.lieberman@flplip.com | |

☐ *Individual appearing without attorney*
☑ *Attorney for Debtor*

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| In re:<br><br>          Shamicka Lawrence | CASE NO.: 6:23-bk-15163-WJ |
|---|---|
| | CHAPTER: 7 |
| | **SUMMARY OF AMENDED SCHEDULES,<br>MASTER MAILING LIST,<br>AND/OR STATEMENTS<br>[LBR 1007-1(c)]** |
| Debtor(s) | |

A filing fee is required to amend Schedules D, or E/F (see Abbreviated Fee Schedule on the Court's website www.cacb.uscourts.gov). A supplemental master mailing list (do not repeat any creditors on the original) is also required as an attachment if creditors are being added to the Schedule D or E/F. Are one or more creditors being added? ☐ Yes ☑ No

The following schedules, master mailing list or statements (check all that apply) are being amended:

☑ Schedule A/B      ☑ Schedule C      ☐ Schedule D      ☐ Schedule E/F      ☐ Schedule G

☐ Schedule H      ☐ Schedule I      ☐ Schedule J      ☐ Schedule J-2      ☐ Statement of Financial Affairs

☐ Statement About Your Social Security Number(s)      ☐ Statement of Intentions      ☐ Master Mailing List

☐ Other *(specify)* _____

I/we declare under penalty of perjury under the laws of the United States that the amended schedules, master mailing list, and/or statements are true and correct.

Date:     **April 18, 2024**                    _____
                                              Shamicka Lawrence
                                              Debtor 1 Signature

                                              _____
                                              Debtor 2 (Joint Debtor) Signature (if applicable)

**NOTE:** It is the responsibility of the Debtor, or the Debtor's attorney, to serve copies of all amendments on all creditors listed in this Summary of Amended Schedules, Master Mailing List, and/or Statements, and to complete and file the attached Proof of Service Document.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2015*                    Page 1                    F 1007-1.1.AMENDED.SUMMARY

| Fill in this information to identify your case and this filing: | |
|---|---|

**Debtor 1**  Shamicka Lawrence
First Name     Middle Name      Last Name

**Debtor 2**
(Spouse, if filing)  First Name     Middle Name      Last Name

United States Bankruptcy Court for the:  CENTRAL DISTRICT OF CALIFORNIA

Case number  6:23-bk-15163-WJ

■ Check if this is an amended filing

---

Official Form 106A/B

# Schedule A/B: Property                                         12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:   Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.

■ Yes.  Where is the property?

1.1

**Residence**
**11364 Estates Court**
Street address, if available, or other description

**Riverside       CA    92503-0000**
City          State    ZIP Code

**Riverside**
County

**What is the property?** Check all that apply
■ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**136-050-035-9**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?   **$1,300,000.00**

Current value of the portion you own?   **$650,000.00**

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Co-tenancy (See attachment A/B)**

☐ Check if this is community property (see instructions)

---

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here..........................................................=>   **$650,000.00**

**Part 2:   Describe Your Vehicles**

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

Exhibit "2"
Page 52

Debtor 1     **Shamicka Lawrence**                                          Case number *(if known)*    **6:23-bk-15163-WJ**

**3. Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
■ Yes

| | | |
|---|---|---|
| 3.1 Make: **Mercedes** | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
| Model: **G-Wagon** | ☐ Debtor 1 only | |
| Year: **2021** | ☐ Debtor 2 only | Current value of the entire property?  /  Current value of the portion you own? |
| Approximate mileage: **17,198** | ☐ Debtor 1 and Debtor 2 only | |
| Other information: | ■ At least one of the debtors and another | |
| **Co-owned with Coastal Massage Oxnard Inc. which made down payment.** | ☐ Check if this is community property (see instructions) | $120,000.00        $60,000.00 |

| | | |
|---|---|---|
| 3.2 Make: **Tesla** | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
| Model: **X** | ☐ Debtor 1 only | |
| Year: **2022** | ☐ Debtor 2 only | Current value of the entire property?  /  Current value of the portion you own? |
| Approximate mileage: **15,150** | ☐ Debtor 1 and Debtor 2 only | |
| Other information: | ■ At least one of the debtors and another | |
| **Down payment and monthly payments made by Coastal Massage Oxnard, Inc.** | ☐ Check if this is community property (see instructions) | $80,000.00        $40,000.00 |

**4. Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

■ No
☐ Yes

**5   Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here..................................................................=>** | $100,000.00

**Part 3:   Describe Your Personal and Household Items**

Do you own or have any legal or equitable interest in any of the following items? | Current value of the portion you own? Do not deduct secured claims or exemptions.

**6. Household goods and furnishings**
*Examples:* Major appliances, furniture, linens, china, kitchenware
☐ No
■ Yes.  Describe.....

| | |
|---|---|
| Misc. household goods and furnishings. | $10,000.00 |

**7. Electronics**
*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
☐ No
■ Yes.  Describe.....

| | |
|---|---|
| Television, computer, printer and cellphone. | $2,500.00 |

**8. Collectibles of value**
*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
■ No

Exhibit "2"
Page 53

| Debtor 1 | Shamicka Lawrence | Case number (if known) | 6:23-bk-15163-WJ |
|---|---|---|---|

☐ Yes. Describe.....

**9. Equipment for sports and hobbies**
*Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments

☐ No
■ Yes. Describe.....

| Exercise equipment, including bicycle and eliptical. | $2,000.00 |
|---|---|

**10. Firearms**
*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment

☐ No
■ Yes. Describe.....

| Miscellaneous fireams. | $1,400.00 |
|---|---|

**11. Clothes**
*Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories

☐ No
■ Yes. Describe.....

| Women's everyday clothing, shoes and purses. | $5,000.00 |
|---|---|

**12. Jewelry**
*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver

☐ No
■ Yes. Describe.....

| Rings, bracelets, watch, necklaces (itemization on request). | $4,500.00 |
|---|---|

**13. Non-farm animals**
*Examples:* Dogs, cats, birds, horses

☐ No
■ Yes. Describe.....

| 2 rescued dogs (Bob & Checha) | $1.00 |
|---|---|

**14. Any other personal and household items you did not already list, including any health aids you did not list**

■ No
☐ Yes. Give specific information.....

**15.** Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here .................................................................................

| | $25,401.00 |
|---|---|

| Part 4: | Describe Your Financial Assets |
|---|---|

Do you own or have any legal or equitable interest in any of the following?

*Current value of the portion you own?* Do not deduct secured claims or exemptions.

**16. Cash**
*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

☐ No
■ Yes.......................................................................................

Exhibit "2"
Page 54

| Debtor 1 | Shamicka Lawrence | Case number *(if known)* | **6:23-bk-15163-WJ** |
|---|---|---|---|

| | | **Cash** | **$0.00** |
|---|---|---|---|

**17. Deposits of money**
   *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No
■ Yes.......................    Institution name:

| | | | |
|---|---|---|---|
| 17.1. | **Checking** | **Navy Federal Bank Acct. No. 0991** | **$0.00** |
| 17.2. | **Checking** | **Bank of America Acct. No. 4024** | **$486.00** |
| 17.3. | **Brokerage** | **UBS Bank Acct. No. 5650** | **$1,136.58** |
| 17.4. | **Savings** | **Navy Federal Bank Acct. No. 8957** | **$5.01** |

**18. Bonds, mutual funds, or publicly traded stocks**
   *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

■ No
☐ Yes...................    Institution or issuer name:

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

☐ No
■ Yes.  Give specific information about them....................
   Name of entity:    % of ownership:

| **See attachment No. 19** | **%** | **$0.00** |
|---|---|---|

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**
   *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
   *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

■ No
☐ Yes. Give specific information about them
   Issuer name:

**21. Retirement or pension accounts**
   *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

■ No
☐ Yes. List each account separately.
   Type of account:    Institution name:

**22. Security deposits and prepayments**
   Your share of all unused deposits you have made so that you may continue service or use from a company
   *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

■ No
☐ Yes. ....................    Institution name or individual:

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

■ No
☐ Yes............    Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
   26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

■ No

Official Form 106A/B                    Schedule A/B: Property                    page 4

| Debtor 1 | **Shamicka Lawrence** | Case number *(if known)* | **6:23-bk-15163-WJ** |
|---|---|---|---|

☐ Yes.............     Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25.  Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**
■ No
☐ Yes.  Give specific information about them...

**26.  Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
■ No
☐ Yes.  Give specific information about them...

**27.  Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
■ No
☐ Yes.  Give specific information about them...

**Money or property owed to you?**

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

**28.  Tax refunds owed to you**
■ No
☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

**29.  Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
■ No
☐ Yes. Give specific information......

**30.  Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security benefits; unpaid loans you made to someone else
■ No
☐ Yes.  Give specific information..

**31.  Interests in insurance policies**
*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
☐ No
■ Yes. Name the insurance company of each policy and list its value.

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|
| **The Equitable Life Insurance Company** | **Children** | **$2,500.00** |

**32.  Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.
■ No
☐ Yes.  Give specific information..

**33.  Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue
■ No
☐ Yes.  Describe each claim.........

**34.  Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
■ No
☐ Yes.  Describe each claim.........

Debtor 1   Shamicka Lawrence                                       Case number *(if known)*   6:23-bk-15163-WJ

**35. Any financial assets you did not already list**

☐ No

■ Yes.  Give specific information..

| | |
|---|---|
| Debtor has personally guaranteed certain obligations of her limited liability companies and corporations (the "Entities"). As guarantor, she has indemnity rights against the Entities. However, each of the Entities is insolvent such that her indemnity rights have no value. | $0.00 |

**36. Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here**...................................................................................................      $4,127.59

**Part 5:   Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.**

**37. Do you own or have any legal or equitable interest in any business-related property?**

■ No. Go to Part 6.

☐ Yes.  Go to line 38.

**Part 6:   Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.**
If you own or have an interest in farmland, list it in Part 1.

**46. Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

■ No. Go to Part 7.

☐ Yes.  Go to line 47.

**Part 7:   Describe All Property You Own or Have an Interest in That You Did Not List Above**

**53. Do you have other property of any kind you did not already list?**
*Examples:* Season tickets, country club membership

■ No

☐ Yes. Give specific information.........

**54. Add the dollar value of all of your entries from Part 7. Write that number here** ......................................      $0.00

**Part 8:   List the Totals of Each Part of this Form**

| | | |
|---|---|---|
| **55. Part 1: Total real estate, line 2** ......................................................................................................... | | $650,000.00 |
| **56. Part 2: Total vehicles, line 5** | $100,000.00 | |
| **57. Part 3: Total personal and household items, line 15** | $25,401.00 | |
| **58. Part 4: Total financial assets, line 36** | $4,127.59 | |
| **59. Part 5: Total business-related property, line 45** | $0.00 | |
| **60. Part 6: Total farm- and fishing-related property, line 52** | $0.00 | |
| **61. Part 7: Total other property not listed, line 54** + | $0.00 | |
| **62. Total personal property. Add lines 56 through 61**... | $129,528.59 | Copy personal property total    $129,528.59 |
| **63. Total of all property on Schedule A/B. Add line 55 + line 62** | | $779,528.59 |

Exhibit "2"
Page 57

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | Shamicka Lawrence |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (if known) | 6:23-bk-15163-WJ |

☐ Check if this is an amended filing

## Official Form 106C

## Schedule C: The Property You Claim as Exempt

4/22

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.

**Part 1:    Identify the Property You Claim as Exempt**

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ☒ You are claiming state and federal nonbankruptcy exemptions.  11 U.S.C. § 522(b)(3)

   ☐ You are claiming federal exemptions.  11 U.S.C. § 522(b)(2)

2. **For any property you list on** *Schedule A/B* **that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| Residence 11364 Estates Court Riverside, CA 92503  Riverside County<br>136-050-035-9<br>Line from *Schedule A/B*: 1.1 | $650,000.00 | ☒  $635,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.730 |
| 2021 Mercedes G-Wagon 17,198 miles<br>**Co-owned with Coastal Massage Oxnard Inc. which made down payment.**<br>Line from *Schedule A/B*: 3.1 | $60,000.00 | ☒  $7,500.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.010 |
| Misc. household goods and furnishings.<br>Line from *Schedule A/B*: 6.1 | $10,000.00 | ☒  $10,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.020 |
| Television, computer, printer and cellphone.<br>Line from *Schedule A/B*: 7.1 | $2,500.00 | ☒  $2,500.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.020 |

Case 6:23-bk-15163-WJ   Doc 71   Filed 04/18/24   Entered 04/18/24 11:02:09   Desc
Main Document    Page 9 of 15

| Debtor 1 | Shamicka Lawrence | | Case number (if known) | 6:23-bk-15163-WJ |
|---|---|---|---|---|

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **Exercise equipment, including bicycle and eliptical.**<br>Line from *Schedule A/B*: **9.1** | $2,000.00 | ■ $2,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.020 |
| **Miscellaneous firearms.**<br>Line from *Schedule A/B*: **10.1** | $1,400.00 | ■ $1,400.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.020 |
| **Women's everyday clothing, shoes and purses.**<br>Line from *Schedule A/B*: **11.1** | $5,000.00 | ■ $5,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.020 |
| **Rings, bracelets, watch, necklaces (itemization on request).**<br>Line from *Schedule A/B*: **12.1** | $4,500.00 | ■ $4,500.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.040 |
| **Checking: Bank of America Acct. No. 4024**<br>Line from *Schedule A/B*: **17.2** | $486.00 | ■ $486.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.225 |
| **Brokerage: UBS Bank Acct. No. 5650**<br>Line from *Schedule A/B*: **17.3** | $1,136.58 | ■ $1,136.58<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.225 |
| **Savings: Navy Federal Bank Acct. No. 8957**<br>Line from *Schedule A/B*: **17.4** | $5.01 | ■ $5.01<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.225 |

3. **Are you claiming a homestead exemption of more than $189,050?**
(Subject to adjustment on 4/01/25 and every 3 years after that for cases filed on or after the date of adjustment.)

☐  No

■  Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

    ■  No

    ☐  Yes

Exhibit "2"
Page 59

**In re Shamicka Lawrence**

**Case No. 6:23-bk-15163-WJ**

**Attachment to Amended Schedule C**

Debtor's Schedule "C" is being amended at the insistence of the Chapter 7 trustee, who has demanded that Debtor state a dollar amount for each category exempt property, even though applicable law places no dollar limit on certain categories of exempt property. See, e.g., CCP §704.020.  The only material difference between Debtor's original Schedule "C" and this amended Schedule "C" is that Debtor has stated the amount of her homestead to be $635,000 rather than $600,000.

With respect to categories of exemptions marked "estimated," the amounts listed are Debtor's best estimate of value and not a representation or warranty of the actual collective value of such items in that category.   Debtor has provided to the trustee photos of items exempted under CCP § 704.030 and the trustee's agent has inspected and video recorded the items exempted under CCP § 704.020.

Debtor declares that, as to the items exempt pursuant to CCP § 704.020 (her household furnishings, appliances, provisions, wearing apparel and other personal effects):

1. Are all ordinarily and reasonably necessary to, and personally used or procured for use by her and/or the members of her family at her principal residence.

2. All are ordinarily found in households.

3. None are of extraordinary value as compared to items of the same type found in other households.

4. No particular item has a value of more than approximately $1,200, which is the value Debtor ascribes to her most expensive piece of furniture (a sofa which she purchased new for about $4,000) and her exercise bicycle (which she purchased new for about $2,500).

Debtor estimates that the items she has exempted pursuant to CCP § 704.030 (her jewelry, heirlooms, and works of art) have a collective value of about $4,500.  However, Debtor reserves the right to claim up to the full statutory limit ($8,725) if her estimate is mistaken and the collective value of such the collective value turns out to be higher.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

FLP LAW GROUP, LLP, 1875 Century Park East, Suite 2230, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*): **SUMMARY OF AMENDED SCHEDULES, MASTER MAILING LIST, AND/OR STATEMENTS [LBR 1007-1(c)]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 18, 2024,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Arturo Cisneros (TR)**   amctrustee@mclaw.org, acisneros@iq7technology.com;ecf.alert+Cisneros@titlexi.com
- **Alan W Forsley**   alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy@flpllp.com
- **Thomas M Geher**   tmg@jmbm.com, bt@jmbm.com;tmg@ecf.courtdrive.com
- **Eric D Goldberg**   eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- **D Edward Hays**   ehays@marshackhays.com, ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- **Marc A Lieberman**   marc.lieberman@flpllp.com, safa.saleem@flpllp.com,addy@flpllp.com
- **Tinho Mang**   tmang@marshackhays.com, tmang@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com
- **United States Trustee (RS)**   ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**II.  SERVED BY UNITED STATES MAIL**:
On **April 18, 2024,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 18, 2024 | ADELAIDA HERNANDEZ | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

Label Matrix for local noticing
0973-6
Case 6:23-bk-15163-WJ
Central District of California
Riverside
Wed Apr 17 09:42:41 PDT 2024

Hahn Fife & Company
1055 E. Colorado Blvd #5
Pasadena, CA 91106-2371

14652-8 Ventura, LLC
17245 Luverne Pl.
Encino, CA 91316-3933

14652-8 Ventura, LLC
Attn: Row Zadeh
14652 Ventura Blvd.
Los Angeles, CA 91403-3686

5077 Lankershim Health
Associates, LLC
11801 Pierce St., Suite 200
Riverside, CA 92505-4400

ADT - Attn. Bankruptcy
1501 W. Yamato Rd.
Boca Raton, FL 33431-4438

AT&T
PO Box 5014
Carol Stream, IL 60197-5014

American Express
c/o Becket and Lee
Po Box 3001
Malvern, PA 19355-0701

American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern  PA 19355-0701

Aqua Clear, Inc.
1235 Flyn Rd. #408
Camarillo, CA 93012-6214

Avalon Bay Communities, Inc.
PO Box 215568
Tampa, FL 33622

Bank of America, N.A.
PO Box 15168
Wilmington, DE 19850-5168

Beauchamp Family LLC
10700 Santa Monica Blvd., Suite 215
Los Angeles, CA 90025-6588

Beautiful Girls, LLC
11801 Pierce St., Suite 200
Riverside, CA 92505-4400

Bridgeport Marketplace, LLC
25134 Rye Canyon Loop, #300
Valencia, CA 91355-5031

Bridgeport Marketplace, LLC
Attn: Dale Donohoe
28338 Constellation Road, Suite 900
Valencia, CA 91355-5098

(p)CAPITAL ONE
PO BOX 30285
SALT LAKE CITY UT 84130-0285

Capital One N.A.
by American InfoSource as agent
PO Box 71083
Charlotte, NC 28272-1083

Capital One/Neiman Marcus/
Bergdorf Goodm
Attn: Bankruptcy
Po Box 30285
Salt Lake City, UT 84130-0285

(p)JPMORGAN CHASE BANK  N A
BANKRUPTCY MAIL INTAKE TEAM
700 KANSAS LANE FLOOR 01
MONROE LA 71203-4774

(p)OFFICE OF FINANCE  CITY OF LOS ANGELES
200 N SPRING ST RM 101 CITY HALL
LOS ANGELES CA 90012-3224

City of Ventura
Business Tax Office
501 Poli St., Rm 107
Ventura, CA 93001-2632

Coastal Massage Channel Islands
Harbor, Inc.
11801 Pierce St., Suite 200
Riverside, CA 92505-4400

Coastal Massage Oxnard, Inc.
11801 Pierce St., Suite 200
Riverside, CA 92505-4400

Coastal Massage Ventura Inc.
11801 Pierce St., Suite 200
Riverside, CA 92505-4400

County of Los Angeles
Dept. of Treasurer & Tax Collector
PO Box 514818
Los Angeles, CA 90051-4818

Donahue Schriber Realty Group, L.P.
200 E. Baker St., Suite 100
Costa Mesa, CA 92626-4551

Eleven Eight, LLC
11801 Pierce St., Suite 200
Riverside, CA 92505-4400

Essex
PO Box 82752
Goleta, CA 93118-2681

Essex Monarch Santa Monica
Apartments, L.P.
1100 Park Pl., Ste. 200
San Mateo, CA 94403-7107

Faith Page LLC
11801 Pierce St., Suite 200
Riverside, CA 92505-4400

Frontier
PO Box 211579
Eagan, MN 55121-2879

Glen March
1 Century Dr., #32A
Los Angeles, CA 90067-3413

Golden Spectrum Property LLC
c/o Shin Yen Management Inc.
Attn: Brian Ho
3808 Grand Ave., Suite B
Chino, CA 91710-5496

Golden Spectrum Property, LLC
4016 Grand ave., Suite B
Chino, CA 91710-5491

JPMorgan Chase Bank, N.A.
s/b/m/t Chase Bank USA, N.A.
c/o Robertson, Anschutz, Schneid,
& Crane LLP
6409 Congress Avenue, Suite 100
Boca Raton, FL 33487-2853

Jamie Altman Buggy
Harvest LLP
10940 Wilshire Blvd., Suite 1600
Los Angeles, CA 90024-3910

Jeffrey D. Montez, Esq.
Bower & Associates, APLC
PO Box 11748
Newport Beach, CA 92658-5040

Joyful Wellness, LLC
11801 Pierce St., Suite 200
Riverside, CA 92505-4400

Joyfully Gifted, Inc.
11801 Pierce St., Suite 200
Riverside, CA 92505-4400

Kenneth J. Freed, Esq.
Law Offices of Kenneth J. Freed
4340 Fulton Ave, Floor 3
Sherman Oaks CA 91423-6262

Lawrence Girls, LLC
11801 Pierce St., Suite 200
Riverside, CA 92505-4400

Lumen/Cenury Link
PO Box 52187
Phoenix, AZ 85072-2187

Macerich Buenaventura L.P.
401 Wilshire Blvd., Suite 700
Santa Monica, CA 90401-1452

Massage Envy Franchising, LLC
14350 N. 87th Street
Suite 200
Scottsdale, AZ 85260-2660

Massage Envy Franchising, LLC
Agent for Service of Process
3260 N. Hayden Rd #210
Scottsdale AZ 85251-6651

Mercedes - Benz Financial Services
Attn: Bankruptcy
P.O. Box 685
Roanoke, TX 76262-0685

Na Shaun Neal
3756 Santa Rosalia Dr., Suite 326
Los Angeles, CA 90008-3615

Navy Federal Credit Union
Attn: Bankruptcy
Po Box 3000
Merrifield, VA 22119-3000

Navy Federal Credit Union
P.O. Box 3000
Merrifield, VA 22119-3000

ROIC California LLC
MS 631099
PO Box 3953
Seattle, WA 98124-3953

ROIC California, LLC
c/o Merino Yebri LLP
1925 Century Park E Ste 2100
Los Angeles, CA 90067-2722

Regus
11801 Pierce Street
Suite 200
Riverside, CA 92505-4400

SOCM I, LLC
655 Brea Canyon Rd.
Walnut, CA 91789-3078

Safe and Sound Security
18545 Topham Street
Unit G
Reseda, CA 91335-6880

Sam Yebri, Esq.
Alexander M. Merino, Esq.
Merino Yebri LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067-2722

Simi Gold Center
292 S. La Cienega Blvd., #3308
Beverly Hills, CA 90211-3330

Simi Gold Center
6006 Reseda Blvd.
Tarzana, CA 91356-1507

Siria Amador
c/o Nick Badii, Esq.
Lawyers for Employee &
Consumer Rights APC
3500 W. Olive Ave., 3rd Floor
Burbank, CA 91505-4628

Small Business Administration
409 3rd Street SW
Washington, DC 20024-3212

Southern Cal Gas
PO Box C
Monterey Park, CA 91754-0932

Spectrio
PO Box 890271
Charlotte, NC 28289-0271

Strategem Investments, LLC
410 S. Juanita Avenue
Redondo Beach, CA 90277-3824

The Collection at Riverpark
Centercal Properties, LLC
2751 Park View Court, Suite 261
Oxnard, CA 93036-5451

The Darvish Firm, APC
10990 Wilshire Boulevard
Suite 800
Los Angeles, CA 90024-3931

Trinity Fifteen, LLC
11801 Pierce St.
Riverside, CA 92505-5191

(p)US BANK
PO BOX 5229
CINCINNATI OH 45201-5229

U.S. Small Business Administration/CESC
14925 Kingsport Road
Ft. Worth, TX 76155-2243

Ventura County Tax Collector
Attn: Bankruptcy
800 S. Victoria Ave.
Ventura, CA 93009-1290

West Coast Baby, LLC
11801 Pierce St., Suite 200
Riverside, CA 92505-4400

World Pay Merchant Services
PO Box 639726
Cincinnati, OH 45263-9726

Brian Thompson
Winterstone Real Estate Development
23792 Rockfield Blvd., Ste. 101
Lake Forest, CA 92630-2868

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Capital One  N.A
Bankruptcy Department
P.O. Box 5155
Norcross, GA 30091

Chase Card Services
Attn: Bankruptcy
P.O. 15298
Wilmington, DE 19850

City of Los Angeles
Office of Finance
PO Box 53233
Los Angeles, CA 90053-0233

(d)City of Los Angeles
Office of Financial Special Desk Unit
200 N. Spring St., Rm 101
Los Angeles, CA 90012

U.S. Bank
PO Box 2188
Oshkosh, WI 54903

Arturo Cisneros (TR)
3403 Tenth Street, Suite 714
Riverside, CA 92501

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Courtesy NEF                          (u)Massage Envy Franchising, LLC

End of Label Matrix
Mailable recipients      76
Bypassed recipients       2
Total                    78

Exhibit "3"



Lawyers Title - Los Angeles
7530 N Glenoaks Blvd
Burbank, CA 91504
Phone: 800.747.7777

# Title Report

---

A & A ESCROW SERVICES
15250 Ventura Blvd #715
Sherman Oaks, CA 91403

Attn: ANTONIA DELGADO

Your Reference No: 11364 ESTATES CT

Property Address: 11364 Estates Court, Riverside Area, California

Title Officer: Michael Chediak--So
Email: tu07@ltic.com
Phone No.: (818) 252-6050 x 6050
File No.: 124070782

---



**Key Features**
*of your LiveLOOK Prelim Report*




Summary Page



Linked Documents



Mobile-Friendly



Flagged Items



Shortcuts

24/7 real-time access to all information related to a title insurance transaction.



**Effortless, Efficient, Compliant, and Accessible**



Lawyers Title Company
7530 N. Glenoaks Blvd.
Burbank, CA 91504
Phone: (818) 767-2000
Fax: (818) 504-4937

A & A ESCROW SERVICES
15250 Ventura Blvd #715
Sherman Oaks, CA 91403

Attn: ANTONIA DELGADO

Title Officer: Michael Chediak--So
email: tu07@ltic.com
Phone No.: (818) 252-6050 x 6050
Fax No.: (818) 252-4549
File No.: 124070782

Your Reference No:                              11364 ESTATES CT

Property Address:  11364 Estates Court, Riverside Area, California

---

# PRELIMINARY REPORT

---

Dated as of February 29, 2024 at 7:30 a.m.

In response to the application for a policy of title insurance referenced herein, Lawyers Title Company hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One.  The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitation on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One.  Copies of the policy forms should be read.  They are available from the office which issued this report.

The policy(s) of title insurance to be issued hereunder will be policy(s) of **Commonwealth Land Title Insurance Company**.

***Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Attachment One of this report carefully.  The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered. It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.***

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby.  If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

CLTA Preliminary Report Form – Modified (11-17-06)

Exhibit "3"
Page 67

File No:  124070782

# SCHEDULE A

The form of policy of title insurance contemplated by this report is:

**CLTA/ALTA 2021 Homeowner's Policy of Title Insurance**
**ALTA Loan 2021**

The estate or interest in the land hereinafter described or referred to covered by this report is:

**A Fee**

Title to said estate or interest at the date hereof is <u>vested in:</u>

**Shamicka Lawrence, a single woman, an undivided one-half interest and Robert Lawrence, as Trustee of The Lawrence Children's Trust U/D/T Dated May 6, 2014, an undivided one-half interest, subject to proceedings pending in the bankruptcy court where a petition for relief was filed.**

**Name of Debtor:  Lawrence, Shamicka**
**Date of Filing:  November 03, 2023**
**U.S. District Court:  United States Bankruptcy Court Central District of California**
**Case No:  6:23-BK-15163-WJ**

The land referred to herein is situated in the County of Riverside, State of California, and is described as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF**

Exhibit "3"
Page 68

File No:  124070782

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN IS SITUATED IN THE COUNTY OF RIVERSIDE, STATE OF
CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 8 OF TRACT NO. 30725, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN
BY MAP ON FILE IN BOOK 375, PAGES 45 THORUGH 48, INCLUSIVE, OF MAPS, IN THE OFFICE OF
THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM AN UNDIVIDED ONE HALF INTEREST IN AND TO ALL OIL, GAS, PETROLEUM,
NAPTHA AND OTHER HYDROCARBON SUBSTANCES AND MINERALS OF WHATSOEVER KIND,
REVERSED IN DEED FROM THE FEDERAL LAND BANK OF BERKLEY RECORDED JUNE 3, 1994 IN
BOOK 624, PAGE 559, OFFICIAL RECORDS, RIVERSIDE COUNTY RECORDS.

EXCEPT ALL MINERALS, OIL, GAS AND OTHER HYDROCARBON SUBSTANCES BELOW A DEPTH OF
500.00 FEET FROM TE SURFACE OF SAID LAND, WITHOUT THE RIGHT OF SURFACE ENTRY, AS
SAID SUBSTANCES ARE MORE PARTICULARLY DESCRIBED IN AND RESERVED BY CORPORATION
OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, A UTAH
CORPORATION SOLE, IN THE DOCUMENT RECORDED ON JUNE 6, 2003 AS 2003-410157, OFFICIAL
RECORDS.

ASSESSOR'S PARCEL NUMBER: 136-050-035

File No:  124070782

# SCHEDULE B

At the date hereof Exceptions to coverage in addition to the printed exceptions and exclusions in said policy form would be as follows:

A.  Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the fiscal year 2024-2025.

B.  Property taxes, including any personal property taxes and any assessments collected with taxes, are as follows:

| | |
|---|---|
| Tax Identification No.: | 136-050-035 |
| Fiscal Year: | 2023-2024 |
| 1st Installment: | $9,581.34, Paid |
| 2nd installment: | $9,581.34, Open (Delinquent after April 10) |
| Penalty and Cost: | $996.19 |
| Homeowners Exemption: | None Shown |
| Code Area: | 053-021 |

C.  The lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the provisions of Chapter 3.5 (commencing with Section 75) or Part 2, Chapter 3, Articles 3 and 4, respectively, of the Revenue and Taxation Code of the State of California as a result of the transfer of title to the vestee named in Schedule A or as a result of changes in ownership or new construction occurring prior to Date of Policy.

1.  Water rights, claims or title to water, whether or not disclosed by the Public Records.

2.  All easements, recitals, offers and dedications as shown on the official map

| | |
|---|---|
| Tract of: | 30725 |

3.  Easement(s) for the purpose(s) shown below and rights incidental thereto as granted in a document:

| | |
|---|---|
| Granted To: | Southern California Edison Company, a Corporation |
| Purpose: | Public utilities |
| Recording Date: | August 23, 2005 |
| Recording No: | 2005-691236, of Official Records |
| Affects: | said land more particularly described therein |

Limitations on the use, by the owners of said Land, of the easement area as set forth in the easement document shown hereinabove.

Reference is hereby made to said document for full particulars.

4.  The search did not disclose any open mortgages or deeds of trust of record, therefore the Company reserves the right to require further evidence to confirm that the property is unencumbered, and further reserves the right to make additional requirements or add additional items or exceptions upon receipt of the requested evidence.

File No:  124070782

5.  Any invalidity or defect in the title of Vestees in the event such trust is invalid or fails to confer sufficient powers in the trustees or in the event there is lack of compliance with the terms and provisions of the trust instrument.

   If title is to be insured in the trustee(s) of a trust, (or if their act is to be insured), this Company will require a Trust Certification pursuant to California Probate Code Section 18100.5.

   The Company reserves the right to add additional items or make further requirements after review of the requested documentation.

6.  Any rights of the parties in possession of a portion of, or all of, said Land, which rights are not disclosed by the Public Records.

   The Company will require, for review, a full and complete copy of any unrecorded agreement, contract, license and/or lease, together with all supplements, assignments and amendments thereto, before issuing any policy of title insurance without excepting this item from coverage.

   The Company reserves the right to except additional items and/or make additional requirements after reviewing said documents.

**END OF SCHEDULE B EXCEPTIONS**

**PLEASE REFER TO THE "NOTES AND REQUIREMENTS SECTION" WHICH FOLLOWS FOR INFORMATION NECESSARY TO COMPLETE THIS TRANSACTION**

File No:  124070782

# REQUIREMENTS SECTION:

Req. No. 1:    In order to complete this report, the Company requires a Statement of Information to be completed by the following party(s),

Party(s):                All Parties

The Company reserves the right to add additional items or make further requirements after review of the requested Statement of Information.

NOTE:  The Statement of Information is necessary to complete the search and examination of title under this order.  Any title search includes matters that are indexed by name only, and having a completed Statement of Information assists the Company in the elimination of certain matters which appear to involve the parties but in fact affect another party with the same or similar name. Be assured that the Statement of Information is essential and will be kept strictly confidential to this file.

Req. No. 2:    The Company will require either (a) a complete copy of the trust agreement and any amendments thereto certified by the trustee(s) to be a true and complete copy with respect to the hereinafter named trust, or (b) a Certification, pursuant to California Probate Code Section 18100.5, executed by all of the current trustee(s) of the hereinafter named trust, a form of which is attached.

Name of Trust:  The Lawrence Children's Trust U/D/T Dated May 6, 2014.

Req. No. 3:    Pursuant to the type of transaction contemplated in this Report, a Documentary Transfer Tax Affidavit must be filled out and executed to accompany the Transfer Deed, a form of which can be obtained by going to the following Website www.riversideacr.com or by contacting your Title Officer or Escrow Officer.

File No:  124070782

# INFORMATIONAL NOTES SECTION

Note No. 1:    The information on the attached plat is provided for your convenience as a guide to the general location of the subject property.  The accuracy of this plat is not guaranteed, nor is it a part of any policy, report or guarantee to which it may be attached.

Note No. 2:    California insurance code section 12413.1 regulates the disbursement of escrow and sub-escrow funds by title companies. The law requires that funds be deposited in the title company escrow account and available for withdrawal prior to disbursement. Funds deposited with the company by wire transfer may be disbursed upon receipt. Funds deposited with the company via cashier's check or teller's check drawn on a California based bank may be disbursed on the next business day after the day of deposit. If funds are deposited with the company by other methods, recording and/or disbursement may be delayed.  All escrow and sub-escrow funds received by the company will be deposited with other escrow funds in one or more non-interest bearing escrow accounts of the company in a financial institution selected by the company. The company may receive certain direct or indirect benefits from the financial institution by reason of the deposit of such funds or the maintenance of such accounts with such financial institution, and the company shall have no obligation to account to the depositing party in any manner for the value of, or to pay to such party, any benefit received by the company. Those benefits may include, without limitation, credits allowed by such financial institution on loans to the company or its parent company and earnings on investments made with the proceeds of such loans, accounting, reporting and other services and products of such financial institution. Such benefits shall be deemed additional compensation of the company for its services in connection with the escrow or sub-escrow.

**For wiring Instructions please contact your Title Officer or Title Company Escrow officer.**

Note No. 3:    Lawyers Title is a division of Commonwealth Land Title Insurance Company. The insurer in policies of title insurance, when issued in this transaction, will be Commonwealth Land Title Insurance Company.

Note No. 4:    Notice: Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

Note No. 5:    None of the items shown in this report will cause the Company to decline to attach CLTA Endorsement Form 100 to an ALTA Loan Policy, when issued.

Note No. 6:    The following information will be included in the CLTA Form 116 or ALTA Form 22-06 Endorsement to be issued pursuant to this order:

There is located on said Land: Single Family Residence
Known as: 11364 Estates Court, Riverside Area, California.

Note No. 7:    There are no conveyances affecting said land recorded within 24 months of the date of this report.

Exhibit "3"
Page 73

File No:  124070782

Note No. 8:    The Company requires current beneficiary demands prior to closing. If the demand is expired and a current demand cannot be obtained, our requirements will be as follows:

(a) If this Company accepts a verbal update on the demand, we may hold an amount equal to one monthly mortgage payment. This hold will be in addition to the verbal hold the lender may have stipulated.

(b) If this Company cannot obtain a verbal update on the demand, we will either pay off the expired demand, or wait for the amended demand, at our discretion.

(c) All payoff figures are verified at closing. If the customer's last payment was made within 15 days of closing, our Payoff Department may hold one month's payment to insure check has cleared the bank (unless a copy of the cancelled check is provided, in which case there will be no hold).

Note No. 9:    Pursuant to Government Code Section 27388.1, as amended and effective as of 1-1-2018, a Documentary Transfer Tax (DTT) Affidavit may be required to be completed and submitted with each document when DTT is being paid or when an exemption is being claimed from paying the tax. If a governmental agency is a party to the document, the form will not be required. DTT Affidavits may be available at a Tax Assessor-County Clerk-Recorder.

Processor: SY
Date Typed: March 13, 2024

CLTA Preliminary Report Form – Modified (11-17-06)

Exhibit "3"
Page 74

File No:  124070782

### ATTACHMENT ONE

(Rev 11-04-22 (CA))

**CALIFORNIA LAND TITLE ASSOCIATION
STANDARD COVERAGE POLICY – 1990 (11-09-18)**

#### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a)    Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

    (b)    Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.  Defects, liens, encumbrances, adverse claims or other matters:

    (a)    whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

    (b)    not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

    (c)    resulting in no loss or damage to the insured claimant;

    (d)    attaching or created subsequent to Date of Policy; or

    (e)    resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.  Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

#### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

File No: 124070782

1.    Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2.    Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3.    Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4.    Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5.    (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6.    Any lien or right to a lien for services, labor or material unless such lien is shown by the public records at Date of Policy.

EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART II

(Variable exceptions such as taxes, easements, CC&R's, etc., are inserted here)]

### CALIFORNIA LAND TITLE ASSOCIATION
### STANDARD COVERAGE OWNER'S POLICY (02-04-22)

### EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.    a.    any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
      i.    the occupancy, use, or enjoyment of the Land;
      ii.    the character, dimensions, or location of any improvement on the Land;
      iii.    the subdivision of land; or
      iv.    environmental remediation or protection.
    b.    any governmental forfeiture, police, regulatory, or national security power.
    c.    the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
    Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.

2.    Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.

3.    Any defect, lien, encumbrance, adverse claim, or other matter:
    a.    created, suffered, assumed, or agreed to by the Insured Claimant;
    b.    not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    c.    resulting in no loss or damage to the Insured Claimant;
    d.    attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or
    e.    resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.

4.    Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction vesting the Title as shown in Schedule A is a:
    a.    fraudulent conveyance or fraudulent transfer;

File No:  124070782

b.    voidable transfer under the Uniform Voidable Transactions Act; or

c.    preferential transfer:

    i.    to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or

    ii.    for any other reason not stated in Covered Risk 9.b.

5.    Any claim of a PACA-PSA Trust. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.

6.    Any lien on the Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.

7.    Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

## EXCEPTIONS FROM COVERAGE

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.**

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

## PART I

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land, or (b) asserted by persons or parties in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.

4. Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6. Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.

7. Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

## PART II

*(Variable exceptions such as taxes, easements, CC&R's, etc., are inserted here)*

**CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (07-01-2021)**

File No: 124070782

## EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy and We will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  a.  any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
    i.  the occupancy, use, or enjoyment of the Land;
    ii.  the character, dimensions, or location of any improvement on the Land;
    iii.  the subdivision of land; or
    iv.  environmental remediation or protection.
    b.  any governmental forfeiture, police, or regulatory, or national security power.
    c.  the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
    Exclusion 1 does not modify or limit the coverage provided under Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23, or 27.

2.  Any power to take the Land by condemnation. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 17.

3.  Any defect, lien, encumbrance, adverse claim, or other matter:
    a.  created, suffered, assumed, or agreed to by You;
    b.  not Known to Us, not recorded in the Public Records at the Date of Policy, but Known to You and not disclosed in writing to Us by You prior to the date You became an Insured under this policy;
    c.  resulting in no loss or damage to You;
    d.  attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 5, 8.f., 25, 26, 27, 28, or 32); or
    e.  resulting in loss or damage that would not have been sustained if You paid consideration sufficient to qualify You as a bona fide purchaser of the Title at the Date of Policy.

4.  Lack of a right:
    a.  to any land outside the area specifically described and referred to in Item 3 of Schedule A; and
    b.  in any street, road, avenue, alley, lane, right-of-way, body of water, or waterway that abut the Land.
    Exclusion 4 does not modify or limit the coverage provided under Covered Risk 11 or 21.

5.  The failure of Your existing structures, or any portion of Your existing structures, to have been constructed before, on, or after the Date of Policy in accordance with applicable building codes. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 14 or 15.

6.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transfer of the Title to You is a:
    a.  fraudulent conveyance or fraudulent transfer;
    b.  voidable transfer under the Uniform Voidable Transactions Act; or
    c.  preferential transfer:
    i.  to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
    ii.  for any other reason not stated in Covered Risk 30.

7.  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

8.  Negligence by a person or an entity exercising a right to extract or develop oil, gas, minerals, groundwater, or any other subsurface substance.

9.  Any lien on Your Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 9 does not modify or limit the coverage provided under Covered Risk 8.a. or 27.

10.  Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

File No:  124070782

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

·       For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

| | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $5,000.00 |

## CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)

### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.       Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:

   a.       building;
   b.       zoning;
   c.       land use;
   d.       improvements on the Land;
   e.       land division; and
   f.       environmental protection.

   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

2.       The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes.  This Exclusion does not limit the coverage described in Covered Risk 14 or 15.

3.       The right to take the Land by condemning it.  This Exclusion does not limit the coverage described in Covered Risk 17.

4.       Risks:

   a.       that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
   b.       that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
   c.       that result in no loss to You; or

Exhibit "3"
Page 79

File No: 124070782

   d.    that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.

5.    Failure to pay value for Your Title.

6.    Lack of a right:

   a.    to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   b.    in streets, alleys, or waterways that touch the Land.
   This Exclusion does not limit the coverage described in Covered Risk 11 or 21.

7.    The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.

8.    Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

9.    Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

### LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

·    For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $5,000.00 |

### ALTA OWNER'S POLICY (07-01-2021)

### EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.    a.    any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
      i.     the occupancy, use, or enjoyment of the Land;
      ii.    the character, dimensions, or location of any improvement on the Land;
      iii.   the subdivision of land; or
      iv.    environmental remediation or protection.
   b.    any governmental forfeiture, police, regulatory, or national security power.

File No:  124070782

    c.    the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.

2.    Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.

3.    Any defect, lien, encumbrance, adverse claim, or other matter:
    a.    created, suffered, assumed, or agreed to by the Insured Claimant;
    b.    not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    c.    resulting in no loss or damage to the Insured Claimant;
    d.    attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or
    e.    resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.

4.    Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction vesting the Title as shown in Schedule A is a:
    a.    fraudulent conveyance or fraudulent transfer;
    b.    voidable transfer under the Uniform Voidable Transactions Act; or
    c.    preferential transfer:
        i.    to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
        ii.    for any other reason not stated in Covered Risk 9.b.

5.    Any claim of a PACA-PSA Trust. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.

6.    Any lien on the Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.

7.    Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

## EXCEPTIONS FROM COVERAGE

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.**

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

*NOTE: The 2021 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage. In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed as 1 through 7 below:*

1.    (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.    Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land or (b) asserted by persons or parties in possession of the Land.

File No:  124070782

3.    Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.

4.    Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.

5.    (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6.    Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.

7.    Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B

## 2006 ALTA OWNER'S POLICY (06-17-06)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.    (a)    Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

(i)    the occupancy, use, or enjoyment of the Land;

(ii)    the character, dimensions, or location of any improvement erected on the Land;

(iii)    the subdivision of land; or

(iv)    environmental protection;

or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

(b)    Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.    Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.    Defects, liens, encumbrances, adverse claims, or other matters

(a)    created, suffered, assumed, or agreed to by the Insured Claimant;

(b)    not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

(c)    resulting in no loss or damage to the Insured Claimant;

(d)    attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or

File No:  124070782

(e)     resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4.     Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is

(a)     a fraudulent conveyance or fraudulent transfer; or

(b)     a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5.     Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

*NOTE: The 2006 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage. In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed below as 1 through 7 below:*

1.     (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.     Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land, or (b) asserted by persons or parties in possession of the Land.

3.     Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.

4.     Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.

5.     (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6.     Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.

7.     Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

File No:  124070782



Lawyers Title Company
7530 N. Glenoaks Blvd.
Burbank, CA 91504
Phone: (818) 767-2000
Fax: (818) 504-4937

Order No. 124070782

# Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment. Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the filed rate. As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative. These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for such discount. These discounts only apply to transactions involving services rendered by the FNF Family of Companies. This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

**FNF Underwritten Title Company**         **FNF Underwriter**
LTC – Lawyers Title Company              CLTIC – Commonwealth Land Title Insurance Co.

**Available Discounts**

**DISASTER LOANS (CLTIC)**
The charge for a Lender's Policy (Standard or Extended coverage) covering the financing or refinancing by an owner of record, within 24 months of the date of a declaration of a disaster area by the government of the United States or the State of California on any land located in said area, which was partially or totally destroyed in the disaster, will be 50% of the appropriate title insurance rate.

**EMPLOYEE RATE (LTC and CLTIC)**
No charge shall be made to employees (including employees on approved retirement) of the Company or its underwritten, subsidiary or affiliated title companies for policies or escrow services in connection with financing, refinancing, sale or purchase of the employees' bona fide home property. Waiver of such charges is authorized only in connection with those costs which the employee would be obligated to pay, by established custom, as a party to the transaction.

Notice of Available Discount                                          Mod. 10/21/2011

CLTA Preliminary Report Form – Modified (11-17-06)

Exhibit "3"
Page 84

File No: 124070782

# Wire Fraud Alert

This Notice is not intended to provide legal or professional advice. If you have any questions, please consult with a lawyer.

All parties to a real estate transaction are targets for wire fraud and many have lost hundreds of thousands of dollars because they simply relied on the wire instructions received via email, without further verification. **If funds are to be wired in conjunction with this real estate transaction, we strongly recommend verbal verification of wire instructions through a known, trusted phone number prior to sending funds.**

In addition, the following non-exclusive self-protection strategies are recommended to minimize exposure to possible wire fraud.

- **NEVER RELY** on emails purporting to change wire instructions. Parties to a transaction rarely change wire instructions in the course of a transaction.

- **ALWAYS VERIFY** wire instructions, specifically the ABA routing number and account number, by calling the party who sent the instructions to you. DO NOT use the phone number provided in the email containing the instructions, use phone numbers you have called before or can otherwise verify. **Obtain the phone number of relevant parties to the transaction as soon as an escrow account is opened**. DO NOT send an email to verify as the email address may be incorrect or the email may be intercepted by the fraudster.

- **USE COMPLEX EMAIL PASSWORDS** that employ a combination of mixed case, numbers, and symbols. Make your passwords greater than eight (8) characters. Also, change your password often and do NOT reuse the same password for other online accounts.

- **USE MULTI-FACTOR AUTHENTICATION** for email accounts. Your email provider or IT staff may have specific instructions on how to implement this feature.

For more information on wire-fraud scams or to report an incident, please refer to the following links:

*Federal Bureau of Investigation:*
*http://www.fbi.gov*

*Internet Crime Complaint Center:*
*http://www.ic3.gov*

**FIDELITY NATIONAL FINANCIAL**
**PRIVACY NOTICE**

Effective December 1, 2023

Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF," "our," or "we") respect and are committed to protecting your privacy. This Privacy Notice explains how we collect, use, and protect personal information, when and to whom we disclose such information, and the choices you have about the use and disclosure of that information.

A limited number of FNF subsidiaries have their own privacy notices. If a subsidiary has its own privacy notice, the privacy notice will be available on the subsidiary's website and this Privacy Notice does not apply.

### Collection of Personal Information

FNF may collect the following categories of Personal Information:
- contact information (*e.g.*, name, address, phone number, email address);
- demographic information (*e.g.*, date of birth, gender, marital status);
- identity information (*e.g.* Social Security Number, driver's license, passport, or other government ID number);
- financial account information (*e.g.* loan or bank account information); and
- other personal information necessary to provide products or services to you.

We may collect Personal Information about you from:
- information we receive from you or your agent;
- information about your transactions with FNF, our affiliates, or others; and
- information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities or through others.

### Collection of Browsing Information

FNF automatically collects the following types of Browsing Information when you access an FNF website, online service, or application (each an "FNF Website") from your Internet browser, computer, and/or device:
- Internet Protocol (IP) address and operating system;
- browser version, language, and type;
- domain name system requests; and
- browsing history on the FNF Website, such as date and time of your visit to the FNF Website and visits to the pages within the FNF Website.

Like most websites, our servers automatically log each visitor to the FNF Website and may collect the Browsing Information described above. We use Browsing Information for system administration, troubleshooting, fraud investigation, and to improve our websites. Browsing Information generally does not reveal anything personal about you, though if you have created a user account for an FNF Website and are logged into that account, the FNF Website may be able to link certain browsing activity to your user account.

### Other Online Specifics

Cookies. When you visit an FNF Website, a "cookie" may be sent to your computer. A cookie is a small piece of data that is sent to your Internet browser from a web server and stored on your computer's hard drive. Information gathered using cookies helps us improve your user experience. For example, a cookie can help the website load properly or can customize the display page based on your browser type and user preferences. You can choose whether or not to accept cookies by changing your Internet browser settings. Be aware that doing so may impair or limit some functionality of the FNF Website.

Web Beacons. We use web beacons to determine when and how many times a page has been viewed. This information is used to improve our websites.

Do Not Track. Currently our FNF Websites do not respond to "Do Not Track" features enabled through your browser.

Links to Other Sites.  FNF Websites may contain links to unaffiliated third-party websites. FNF is not responsible for the privacy practices or content of those websites. We recommend that you read the privacy policy of every website you visit.

### Use of Personal Information

FNF uses Personal Information for these main purposes:
- To provide products and services to you or in connection with a transaction involving you.
- To improve our products and services.

- To communicate with you about our, our affiliates', and others' products and services, jointly or independently.
- To provide reviews and testimonials about our services, with your consent.

**When Information Is Disclosed**

We may disclose your Personal Information and Browsing Information in the following circumstances:

- to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure;
- to affiliated or nonaffiliated service providers who provide or perform services or functions on our behalf and who agree to use the information only to provide such services or functions;
- to affiliated or nonaffiliated third parties with whom we perform joint marketing, pursuant to an agreement with them to jointly market financial products or services to you;
- to law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order; or
- in the good-faith belief that such disclosure is necessary to comply with legal process or applicable laws, or to protect the rights, property, or safety of FNF, its customers, or the public.

The law does not require your prior authorization and does not allow you to restrict the disclosures described above. Additionally, we may disclose your information to third parties for whom you have given us authorization or consent to make such disclosure. We do not otherwise share your Personal Information or Browsing Information with nonaffiliated third parties, except as required or permitted by law.

We reserve the right to transfer your Personal Information, Browsing Information, and any other information, in connection with the sale or other disposition of all or part of the FNF business and/or assets, or in the event of bankruptcy, reorganization, insolvency, receivership, or an assignment for the benefit of creditors. By submitting Personal Information and/or Browsing Information to FNF, you expressly agree and consent to the use and/or transfer of the foregoing information in connection with any of the above-described proceedings.

**Security of Your Information**

We maintain physical, electronic, and procedural safeguards to protect your Personal Information.

**Choices With Your Information**

Whether you submit Personal Information or Browsing Information to FNF is entirely up to you. If you decide not to submit Personal Information or Browsing Information, FNF may not be able to provide certain services or products to you.

For California Residents: We will not share your Personal Information or Browsing Information with nonaffiliated third parties, except as permitted by California law. For additional information about your California privacy rights, please visit the "California Privacy" link on our website (https://fnf.com/pages/californiaprivacy.aspx) or call (888) 413-1748.

For Connecticut Residents:  For additional information about your Connecticut consumer privacy rights, or to make a consumer privacy request, or to appeal a previous privacy request, please email privacy@fnf.com or call (888) 714-2710.

For Colorado Residents: For additional information about your Colorado consumer privacy rights, or to make a consumer privacy request, or appeal a previous privacy request, please email privacy@fnf.com or call (888) 714-2710.

For Nevada Residents: We are providing this notice pursuant to state law.  You may be placed on our internal Do Not Call List by calling FNF Privacy at (888) 714-2710 or by contacting us via the information set forth at the end of this Privacy Notice. For further information concerning Nevada's telephone solicitation law, you may contact: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; Phone number: (702) 486-3132; email: aginquiries@ag.state.nv.us.

For Oregon Residents:  We will not share your Personal Information or Browsing Information with nonaffiliated third parties for marketing purposes, except after you have been informed by us of such sharing and had an opportunity to indicate that you do not want a disclosure made for marketing purposes.

For Utah Residents:  For additional information about your Utah consumer privacy rights, or to make a consumer privacy request, please call (888) 714-2710.

For Vermont Residents: We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health

information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures.

For Virginia Residents: For additional information about your Virginia consumer privacy rights, or to make a consumer privacy request, or appeal a previous privacy request, please email privacy@fnf.com or call (888) 714-2710.

## **Information From Children**

The FNF Websites are not intended or designed to attract persons under the age of eighteen (18). We do not collect Personal Information from any person that we know to be under the age of thirteen (13) without permission from a parent or guardian.

## **International Users**

FNF's headquarters is located within the United States. If you reside outside the United States and choose to provide Personal Information or Browsing Information to us, please note that we may transfer that information outside of your country of residence. By providing FNF with your Personal Information and/or Browsing Information, you consent to our collection, transfer, and use of such information in accordance with this Privacy Notice.

## **FNF Website Services for Mortgage Loans**

Certain FNF companies provide services to mortgage loan servicers, including hosting websites that collect customer information on behalf of mortgage loan servicers (the "Service Websites"). The Service Websites may contain links to both this Privacy Notice and the mortgage loan servicer or lender's privacy notice. The sections of this Privacy Notice titled When Information is Disclosed, Choices with Your Information, and Accessing and Correcting Information do not apply to the Service Websites. The mortgage loan servicer or lender's privacy notice governs use, disclosure, and access to your Personal Information. FNF does not share Personal Information collected through the Service Websites, except as required or authorized by contract with the mortgage loan servicer or lender, or as required by law or in the good-faith belief that such disclosure is necessary: to comply with a legal process or applicable law, to enforce this Privacy Notice, or to protect the rights, property, or safety of FNF or the public.

## **Your Consent to this Privacy Notice; Notice Changes**

By submitting Personal Information and/or Browsing Information to FNF, you consent to the collection and use of the information in accordance with this Privacy Notice. We may change this Privacy Notice at any time. The Privacy Notice's effective date will show the last date changes were made. If you provide information to us following any change of the Privacy Notice, that signifies your assent to and acceptance of the changes to the Privacy Notice.

## **Accessing and Correcting Information; Contact Us**

If you have questions or would like to correct your Personal Information, visit FNF's Privacy Inquiry Website or contact us by phone at (888) 714-2710, by email at privacy@fnf.com, or by mail to:

Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, Florida 32204
Attn: Chief Privacy Officer

Copyright © 2023.                            Fidelity National Financial, Inc. All Rights
Reserved.

**FIDELITY NATIONAL FINANCIAL**
**CALIFORNIA PRIVACY NOTICE**

Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF," "our," or "we") respect and are committed to protecting your privacy. This California Privacy Notice explains how we collect, use, and disclose Personal Information, when and to whom we disclose such information, and the rights you, as a California resident ("Consumer"), have regarding your Personal Information ("California Privacy Rights"). "Personal Information" means information that identifies, relates to, describes, and is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household. If FNF has collected, used, or disclosed your Personal Information in relation to a job application or employment, independent contractor, officer, owner, or director relationship with FNF, FNF's practices are discussed in our Notice at Collection for Prospective Employees, available at **Prospective California Employees**.

Some subsidiaries maintain separate California Privacy Notices or privacy statements. If a subsidiary has a separate California Privacy Notice, it will be available on the subsidiary's website, and this California Privacy Notice does not apply.

**Collection of categories of Personal Information:**

In the preceding 12 months FNF has collected, and will continue to collect, the following categories of                                                                                              Personal Information from you:

- Identifiers such as name, address, telephone number, IP address, email address, account name, social security
  number, driver's license number, state identification card, passport number, financial information, date of birth, or other similar identifiers;
- Characteristics of protected classifications under California or Federal law;
- Commercial information, including records of personal property, products or services purchased, or other
  purchasing or consuming histories;
- Internet or other electronic network activity information including, but not limited to browsing history on FNF websites and information regarding a Consumer's interaction with an FNF website;
- Geolocation data;
- Professional or employment information;
- Education Information.

**This Personal Information is collected from the following sources:**

- Information we receive from you on applications or other forms;
- Information about your transactions with FNF, our affiliates, or others;
- Information we receive from consumer reporting agencies and/or governmental entities, either directly from these
  entities, or from internet service providers, data analytics providers, and social networks;
- Information from the use of our websites and mobile applications;
- Information we receive directly from you related to doing business with us.

**This Personal Information is collected for the following business purposes:**

- To provide products and services to you or in connection with a transaction involving you;
- To perform a contract between FNF and the Consumer;
- To improve our products and services;
- To comply with legal obligations;
- To protect against fraudulent or illegal activity;
- To communicate with you about FNF or our affiliates;
- To maintain an account with FNF or our affiliates;
- To provide, support, personalize, and develop our websites, products, and services;
- To provide reviews and testimonials about our services, with your consent;

- To directly market our products to consumers;
- As described to you when collecting your Personal Information or as otherwise set forth in the California
  Consumer Privacy Act.

**Disclosures of Personal Information for a business purpose:**

In the preceding 12 months FNF has disclosed, and will continue to disclose, the categories of Personal Information listed  above for a business purpose. We may disclose Personal Information for a business purpose to the following categories of  third parties:

- FNF affiliates and subsidiaries;
- Non-affiliated third parties, with your prior consent;
- Businesses in connection with the sale or other disposition of all or part of the FNF business and/or assets;
- Service Providers and non-affiliated third parties such as internet service providers, data analytics providers, and social networks;
- Law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order.

**Sale of Personal Information:**
In the preceding 12 months, FNF has not sold or shared Personal Information. FNF does not sell or share Personal Information.

**Retention Periods:**
Due to the breadth and variety of data collected by FNF, it is not possible for us to provide you with a comprehensive list of timeframes during which we retain each category of Personal Information. FNF retains categories of information as reasonably necessary to satisfy the purpose for which we collect the information. This time period varies depending on the purpose for which we collected the information, the nature and frequency of our interactions and relationship with you, whether we have a legal basis to continue retaining the information, industry practices, the value and sensitivity of the information, and state and federal recordkeeping requirements.

**Personal Information of minors:**
FNF does not knowingly collect the Personal Information of minors. FNF does not sell or share the information of consumers under 16 years of age.

**Sensitive Personal Information:**
FNF does not use or disclose sensitive Personal Information for any purposes other than those specified in the California Consumer Privacy Act.

**Right to know:**
Consumers have a right to know about Personal Information collected, used, disclosed, shared, or sold, including the categories of such Personal Information, as well as the purpose for such collection, use, disclosure, sharing, or selling, categories of third parties to whom Personal Information is disclosed, shared or sold, and the specific pieces of Personal Information collected about the consumer.  Consumers have the right  to request FNF disclose what Personal Information it collected, used, and disclosed in the past 12 months, or since January 1, 2022.

**Right to request deletion:**
Consumers have a right to request the deletion of their Personal Information, subject to certain exceptions.

**Right to Correct:**
Consumers have the right to correct inaccurate Personal Information.

**Right to non-discrimination:**
Consumers have a right not to be discriminated against because of exercising their consumer privacy rights. We will not
discriminate against Consumers for exercising any of their California Privacy Rights.

**Privacy Requests:**

**To exercise any of your California Privacy Rights, or if acting as an authorized agent on behalf of another individual, please visit _California Privacy Request_, call us Toll Free at 888-413-1748, or write to the address at the end of this notice.**

Upon making a California Privacy Request, FNF will verify the consumer's identity by requiring an account, loan, escrow  number, or other identifying information from the consumer.

The above-rights are subject to any applicable rights and obligations including both Federal and California                                                         exemptions rendering FNF, or Personal Information collected by FNF, exempt from certain CCPA requirements.
A Consumer may use an Authorized Agent to submit any CCPA request. Authorized agents' requests will be processed like any other CCPA request, but FNF will also require the Consumer provide the agent's written permission to make the request and verify his or her identity with FNF.

**FNF website services for mortgage loans:**
Certain FNF companies provide services to mortgage loan servicers, including hosting websites that collect customer  information on behalf of mortgage loan servicers (the "Service Websites"). The Service Websites may contain links to both  this Privacy Notice and the mortgage loan servicer or lender's privacy notice. The sections of this Privacy Notice describing  the categories, sources, and uses of your Personal Information do not apply to the Service Websites. The mortgage loan servicer or lender's privacy notice governs use, disclosure, and access to your Information. FNF does not share Information  collected through the Service Websites, except (1) as required or authorized by contract with the mortgage loan servicer or  lender, or (2) as required by law or in the good-faith belief that such disclosure is necessary to comply with a legal process  or applicable law, to enforce this Privacy Notice, or to protect the rights, property, or safety of FNF or the public.

**California Privacy Notice – Effective Date:**
This California Privacy Notice was last updated on December 1, 2023.

**Contact for more information:**
For questions or concerns about FNF's California Privacy Notice and privacy practices, or to exercise any                                          of                                          your California Privacy Rights, please visit **_California Privacy_**, call Toll Free 888-413-1748, or contact us by mail at the below address.

Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, Florida 32204
Attn: Chief Privacy Officer

Copyright © 2023.                                    Fidelity National Financial, Inc. All Rights Reserved.

Order No:  124070782 - LTLA - Michael Chediak--So

# CERTIFICATION OF TRUST
California Probate Code Section 18100.5

The undersigned declare(s) under penalty of perjury under the laws of the State of California that the following is true and correct:

1.  The Trust known as _____, executed on _____, is a valid and existing trust.

2.  The names of the settlors of the Trust are:
    _____
    _____

3.  The names of the currently acting trustees are:
    _____
    _____

4.  The trustees of the Trust have the following powers (initial applicable line(s)):
    _____ Power to acquire additional property.
    _____ Power to sell and execute deeds.
    _____ Power to encumber, and execute deeds of trust.
    _____ Other: _____

5.  The Trust is (check one): _____ Revocable _____ Irrevocable
    If revocable, who may revoke the Trust? _____

6.  Are all trustees required to execute the powers of the trustee? _____Yes _____No
    If no, explain trustee's authority: _____

7.  Title to Trust assets is to be taken as follows:
    _____

8.  The Trust has not been revoked, modified or amended in any manner which would cause the representations contained herein to be incorrect.

9.  The trustees signing below are all of the currently acting trustees.

10. The trustees signing below may be required to provide copies of excerpts from the original Trust documents which designate the trustees and confer the power to act in the pending transaction.

Dated: _____

_____        _____
Print Name:_____        Print Name: _____

STATE OF CALIFORNIA
COUNTY OF _____ }ss:

On _____ before me, _____, a Notary Public, personally
                                            (here insert name and title of the officer)
appeared _____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

Trust Certification (03/03)                                          (This area for notary stamp)



This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements, acreage or other matters shown thereon.

*EQUITY*

**RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:**
Gang, Tyre, Ramer & Brown, Inc.
Attn: Barbara Silberbusch, Esq.
132 South Rodeo Drive
Beverly Hills, CA 90212

**MAIL TAX STATEMENTS TO:**
Robert Lawrence, Trustee
c/o deBlois, Mejia & Kaplan, LLP
9171 Wilshire Boulevard, #300
Beverly Hills, CA 90210

TRA 053-050

LA1431357

**DOC # 2014-0321210**
08/25/2014 08:00 AM Fees: $21.00
Page 1 of 3
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: SMEZA

ABOVE SPACE FOR RECORDER'S USE ONLY

# INTERSPOUSAL TRANSFER GRANT DEED
### (Excluded from reappraisal under California Constitution Article 13A § 1 et seq.)

TRA: 053-050
A.P.N.: 136-050-035-8-9

THE UNDERSIGNED GRANTOR DECLARES:

DOCUMENTARY TRANSFER TAX $ -0-          CITY TAX $ -0-
☐ Computed on the consideration or value of property conveyed;
☐ Computed on the consideration or value less liens or encumbrances remaining at time of sale; OR
☒ Exempt from imposition of the Documentary Transfer Tax pursuant to Revenue and Taxation Code
  § 11927(a), on transferring community, quasi-community, or quasi-marital property assets between
  spouses, pursuant to a judgment, an order, or a written agreement between spouses in contemplation
  of any such judgment or order.

☒ This is an Interspousal Transfer and not a change in ownership under § 63 of the Revenue and Taxation
  Code and Grantor has checked the applicable exclusion from reappraisal;

☐ A transfer to a trustee for the beneficial use of a spouse, or the surviving spouse of a deceased transferor,
  or by a trustee of such a trust to the spouse of the Trustor;

☒ A transfer to a spouse or former spouse in connection with a property settlement agreement or decree of
  dissolution of a marriage or legal separation;

☐ A creation, transfer, or termination, solely between spouses, of any co-owner's interest;

☐ The distribution of a legal entity's property to a spouse or former spouse in exchange for the interest of
  such spouse in the legal entity in connection with a property settlement agreement or a decree of
  dissolution of a marriage or legal separation;

☐ Other: _____

☐ **Check when creating separate property interest in grantee spouse:  It is the express intent of the grantor,
  being the spouse of the grantee, to convey all right, title and interest of the grantor, community or otherwise,
  in and to the herein described property to the grantee as his/her sole and separate property.**

FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**MARTIN LAWRENCE, AS TRUSTEE OF THE LAWRENCE FAMILY TRUST OF 1994, U/D/T
DATED JUNE 10, 1994, AS AMENDED,**

hereby GRANTS to

**SHAMICKA LAWRENCE**, a single woman, an undivided one-half interest in
the following described real property in the City of Riverside, County of Riverside, State of
California:

2184471.1

DOC #2014-0321210  Page 2 of 3 08/25/2014 08:00 AM

Lot 8 of Tract No. 30725 in the Area of Riverside, County of Riverside, State of California, as per map recorded in Book 375 Page(s) 45-48 Inclusive of Miscellaneous Maps, in the Office of the County Recorder of said County. See attached Exhibit A for a complete legal description. (Commonly known as 11364 Estates Court, Riverside, CA 92503)

Date: *May 6, 2014*

Martin Lawrence, as Trustee of the Lawrence Family Trust of 1994, U/D/T dated June 10, 1994, as amended

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

On *May 6, 2014*, before me, *Lolita V. Atienza*, a notary public, personally appeared **MARTIN LAWRENCE**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

LOLITA V. ATIENZA
Commission # 1917786
Notary Public - California
Los Angeles County
My Comm. Expires Jan 15, 2015

(SEAL)

**MAIL TAX STATEMENTS AS DIRECTED ABOVE**

2184471.1

## EXHIBIT A

(Legal Description for 11364 Estates Court, Riverside, CA)

**LOT 8 OF TRACT 30725, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK 375, PAGE(S) 45 THORUGH 48, INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.**

**EXCEPT THEREFROM AN UNDIVIDED ONE HALF INTEREST IN AND TO ALL OIL, GAS, PETROLEUM, NAPTHA AND OTHER HYDROCARBON SUBSTANCES AND MINERALS OF WHATSOEVER KIND, REVERSED IN DEED FROM THE FEDERAL LAND BANK OF BERKLEY RECORDED JUNE 3, 1994 IN BOOK 624, PAGE 559, OFFICIAL RECORDS, RIVERSIDE COUNTY RECORDS.**

**EXCEPT ALL MINERALS, OIL, GAS AND OTHER HYDROCARBON SUBSTANCES BELOW A DEPTH OF 500.00 FEET FROM TE SURFACE OF SAID LAND, WITHOUT THE RIGHT OF SURFACE ENTRY, AS SAID SUBSTANCES ARE MORE PARTICULARLY DESCRIBED IN AND RESERVED BY CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, A UTAH CORPORATION SOLE, IN THE DOCUMENT RECORDED ON JUNE 6, 2003 AS INSTRUMENT NO. 2003-410157, OFFICIAL RECORDS.**

APN: 136-050-035-9

*EQUITY*

**RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:**
Gang, Tyre, Ramer & Brown, Inc.
Attn: Barbara Silberbusch, Esq.
132 South Rodeo Drive
Beverly Hills, CA 90212

**MAIL TAX STATEMENTS TO:**
Robert Lawrence, Trustee
c/o deBlois, Mejia & Kaplan, LLP
9171 Wilshire Boulevard, #300
Beverly Hills, CA 90210

*LA1431357*
*TRA 053-050*

*136-050-035-9*

**DOC # 2014-0321211**
08/25/2014 08:00 AM Fees: $21.00
Page 1 of 3
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: SMEZA

ABOVE SPACE FOR RECORDER'S USE ONLY

# GRANT DEED

TRA: 053-050
APN: 136-050-035-8 -9

THE UNDERSIGNED GRANTOR DECLARES:
    DOCUMENTARY TRANSFER TAX IS $ - 0 -**        CITY TAX $ - 0 -**
    ☐ computed on full value of property conveyed, or
    ☐ computed on full value of items or encumbrances remaining at time of sale,
    ☐ Unincorporated area   ☒ City of Riverside, and,

THERE IS NO CONSIDERATION FOR THIS TRANSFER
**This conveyance is an inter vivos gift, i.e., grantor is transferring a 50% interest in the
property to an irrevocable trust for the benefit of his children, R&T Code § 11930.**

**MARTIN LAWRENCE, AS TRUSTEE OF THE LAWRENCE FAMILY TRUST OF 1994, U/D/T
DATED JUNE 10, 1994, AS AMENDED,**

hereby grants to

**ROBERT LAWRENCE, AS TRUSTEE OF THE LAWRENCE CHILDREN'S TRUST U/D/T DATED
MAY 6, 2014,** an undivided one-half interest in

the following described real property in the County of Riverside, State of California:

Lot 8 of Tract No. 30725 in the Area of Riverside, County of Riverside, State of California, as per
map recorded in Book 375 Page(s) 45-48 Inclusive of Miscellaneous Maps, in the Office of the
County Recorder of said County. See attached Exhibit A for a complete legal description.
(Commonly known as 11364 Estates Court, Riverside, CA 92503)

Date: *May 6, 2014*

Martin Lawrence, as Trustee of the Lawrence
Family Trust of 1994 dated June 10, 1994, as
amended

2149501.1

DOC #2014-0321211  Page 2 of 3 08/25/2014 08:00 AM

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

On *May 6, 2014* , before me, *Lolita V. ATienza* , a notary public, personally appeared **MARTIN LAWRENCE**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature *Lolita V. Atienza*

LOLITA V. ATIENZA
Commission # 1917786
Notary Public - California
Los Angeles County
My Comm. Expires Jan 15, 2015  (SEAL)

Attached to Grant Deed; A.P.N. 136-050-035-9

**MAIL TAX STATEMENTS AS DIRECTED ABOVE**

2149501.1

## EXHIBIT A

(Legal Description for 11364 Estates Court, Riverside, CA)

**LOT 8 OF TRACT 30725, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK 375, PAGE(S) 45 THORUGH 48, INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.**

**EXCEPT THEREFROM AN UNDIVIDED ONE HALF INTEREST IN AND TO ALL OIL, GAS, PETROLEUM, NAPTHA AND OTHER HYDROCARBON SUBSTANCES AND MINERALS OF WHATSOEVER KIND, REVERSED IN DEED FROM THE FEDERAL LAND BANK OF BERKLEY RECORDED JUNE 3, 1994 IN BOOK 624, PAGE 559, OFFICIAL RECORDS, RIVERSIDE COUNTY RECORDS.**

**EXCEPT ALL MINERALS, OIL, GAS AND OTHER HYDROCARBON SUBSTANCES BELOW A DEPTH OF 500.00 FEET FROM TE SURFACE OF SAID LAND, WITHOUT THE RIGHT OF SURFACE ENTRY, AS SAID SUBSTANCES ARE MORE PARTICULARLY DESCRIBED IN AND RESERVED BY CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, A UTAH CORPORATION SOLE, IN THE DOCUMENT RECORDED ON JUNE 6, 2003 AS INSTRUMENT NO. 2003-410157, OFFICIAL RECORDS.**

APN: 136-050-035-9

SHEET 1 OF 4 SHEETS

# TRACT NO. 30725

IN THE UNINCORPORATED TERRITORY OF THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA

BEING A SUBDIVISION OF LOTS 19 AND 20, IN BLOCK 14 OF LANDS OF J.F. MOULTON AND H.B. EVEREST, AS SHOWN BY MAP ON FILE IN BOOK 3, PAGES 8 AND 9 OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, IN SECTION 25, TOWNSHIP 3 SOUTH, RANGE 6 WEST, ALSO BEING A PORTION OF RANCHO EL SOBRANTE DE SAN JACINTO

BLAINE A. WOMER CIVIL ENGINEERING

NOVEMBER, 2003

## RECORDER'S STATEMENT

FILED THIS 2nd DAY OF March _____ 2004
AT 8:24 IN BOOK 315 OF MAPS, AT
PAGES _____ AT THE REQUEST OF THE CLERK
OF THE BOARD.

No. 2005-0135463

_____ COUNTY RECORDER-CLERK-ASSESSOR

BY: _____ Y. Badosa _____ DEPUTY

SUBDIVISION GUARANTEE: CHICAGO TITLE COMPANY

## SURVEYOR'S STATEMENT

I HEREBY STATE THAT I AM A LICENSED LAND SURVEYOR OF THE STATE OF CALIFORNIA AND THAT THIS MAP CONSISTING OF FOUR (4) SHEETS CORRECTLY REPRESENTS A SURVEY MADE UNDER MY SUPERVISION DURING JANUARY OF 2003; THAT ALL MONUMENTS SHOWN HEREON ACTUALLY EXIST AND THEIR POSITIONS ARE CORRECTLY SHOWN, OR WILL BE IN ACCORDANCE WITH THE TERMS OF THE MONUMENT AGREEMENT FOR THE MAP. THE MONUMENTS WILL BE SUFFICIENT TO ENABLE THE SURVEY TO BE RETRACED. THE SURVEY IS TRUE AND COMPLETE AS SHOWN.

DATED: October 21, 2004

SCOTT E. BRINKHALL, L.S. 7843    EXPIRATION: 12-31-05

## COUNTY SURVEYOR'S STATEMENT

THIS MAP CONFORMS WITH THE REQUIREMENTS OF THE SUBDIVISION MAP ACT AND LOCAL ORDINANCE. I HEREBY STATE THAT I HAVE EXAMINED IT, AND ITS DESIGN, AND FOUND TO BE SUBSTANTIALLY THE SAME AS IT APPEARED ON THE TENTATIVE MAP OF TRACT NO. 30725 AS FILED, AMENDED AND APPROVED BY THE BOARD OF SUPERVISORS ON SEPTEMBER 23, 2004, AND THAT I AM SATISFIED THIS MAP IS TECHNICALLY CORRECT.

DATED: FEB. 25, 2005

DAVID E. BARNHART, L.S. 4715
ACTING COUNTY SURVEYOR

## BOARD OF SUPERVISORS' STATEMENT

THE COUNTY OF RIVERSIDE, ...ATE OF CALIFORNIA, BY ITS BOARD OF SUPERVISORS, HEREBY APPROVES THE TRACT MAP AND ACCEPTS THE DEDICATION FOR THE OFFER OF DEDICATION OF ...PUBLIC USE OF EASEMENTS FOR PUBLIC ROAD AND UTILITY PURPOSES, AND AS PART OF THE COUNTY MAINTAINED ROAD SYSTEM. SUBJECT TO IMPROVEMENTS IN ACCORDANCE WITH COUNTY STANDARDS. THE DRAINAGE EASEMENTS ARE HE-REBY NOT ACCEPTED.

DATED: March 1, 2005

COUNTY OF RIVERSIDE, STATE OF CALIFORNIA

BY: _____
CHAIRMAN OF THE BOARD OF SUPERVISORS

ATTEST:
NANCY ROMERO
CLERK TO BOARD OF SUPERVISORS

BY: _____ DEPUTY

SECTION 25, TOWNSHIP 3 SOUTH, RANGE 6 WEST    SCHEDULE "B"

## TAX COLLECTOR'S CERTIFICATE

I HEREBY CERTIFY THAT ACCORDING TO THE RECORDS OF THIS OFFICE AS OF THIS DATE, THERE ARE NO LIENS AGAINST THE PROPERTY SHOWN ON THE WITHIN MAP FOR UNPAID STATE, COUNTY, MUNICIPAL OR LOCAL TAXES OR SPECIAL ASSESSMENTS COLLECTED AS TAXES, EXCEPT TAXES OR SPECIAL ASSESSMENTS COLLECTED AS TAXES NOW A LIEN BUT NOT YET PAYABLE WHICH ARE ESTIMATED TO BE $_____.

DATED: 2-11-2 2005

PAUL McDONNELL, COUNTY TAX COLLECTOR

BY: _____ DEPUTY

## TAX BOND CERTIFICATE

I HEREBY CERTIFY THAT A BOND IN THE SUM OF $15,000 HAS BEEN EXECUTED AND FILED WITH THE BOARD OF SUPERVISORS OF THE COUNTY OF RIVERSIDE, CALIFORNIA, CONDITIONED UPON THE PAYMENT OF ALL TAXES, STATE, COUNTY, MUNICIPAL OR LOCAL, AND ALL SPECIAL ASSESSMENTS COLLECTED AS TAXES, WHICH AT THE TIME OF THIS MAP WITH THE COUNTY RECORDER ARE A LIEN AGAINST SAID PROPERTY BUT NOT YET PAYABLE AND SAID BOND HAS BEEN DULY APPROVED BY SAID BOARD OF SUPERVISORS.

DATED: March 1 , 2004

CASH TAX BOND

PAUL McDONNELL,
COUNTY TAX COLLECTOR

BY: _____ DEPUTY

CLERK TO THE BOARD OF SUPERVISORS

NANCY ROMERO,
CLERK TO THE BOARD OF SUPERVISORS

## NOTARY ACKNOWLEDGEMENT

STATE OF CALIFORNIA )
_____ ) S.S.

ON Sept 9, 2005 BEFORE ME, Julie I. Espey
NOTARY PUBLIC, PERSONALLY APPEARED _____
PERSONALLY KNOWN TO ME (OR PROVED TO ME ON THE BASIS OF SATISFACTORY EVIDENCE) TO BE THE PERSON(S) WHOSE NAME(S) IS/ARE SUBSCRIBED TO THE WITHIN INSTRUMENT AND ACKNOWLEDGED TO ME THAT HE/SHE/THEY EXECUTED THE SAME IN HIS/HER/THEIR AUTHORIZED CAPACITIES, AND THAT BY HIS/HER/THEIR SIGNATURE(S) ON THE INSTRUMENT THE PERSON(S), OR THE ENTITY UPON BEHALF OF WHICH THE PERSON(S) ACTED, EXECUTED THE INSTRUMENT.

WITNESS MY HAND AND OFFICIAL SEAL.

_____

MY COMMISSION EXPIRES Dec. 31, 2005

RIVERSIDE
COUNTY, CALIFORNIA

## NOTICE OF DRAINAGE FEES

NOTICE IS HEREBY GIVEN THAT THIS PROPERTY IS LOCATED IN THE SOUTHWEST AREA DRAINAGE PLAN FOR WHICH DRAINAGE FEES BY THE BOARD OF SUPERVISORS OF THE COUNTY OF RIVERSIDE PURSUANT TO SECTION 10.25 OF ORDINANCE 460, AND THAT SAID PROPERTY IS SUBJECT TO THE PAYMENT OF SUCH FEES...

NOTICE IS FURTHER GIVEN THAT, PURSUANT TO SECTION 10.25 OF ORDINANCE 460, PAYMENT OF THE DRAINAGE FEES SHALL BE MADE BY THE OWNER OR DEVELOPER, PRIOR TO RECORDATION OF THE FINAL MAP. WHICHEVER OCCURS FIRST, AND THAT THE OWNER OF EACH PARCEL, AT THE TIME OF ISSUANCE OF THE GRADING OR BUILDING PERMIT FOR THE FEE OR MONEY ORDER ONLY. THE DISTRICT WILL NOT ACCEPT PERSONAL OR COMPANY CHECKS.

## OWNER'S STATEMENT

WE HEREBY STATE THAT WE ARE THE OWNERS OF THE LAND INCLUDED WITHIN THE SUBDIVISION SHOWN HEREON; THAT WE ARE THE ONLY PERSONS WHOSE CONSENT IS NECESSARY TO PASS A CLEAR TITLE TO SAID LAND; THAT WE CONSENT TO THE MAKING AND RECORDING OF THIS SUBDIVISION MAP AS SHOWN WITHIN THE DISTINCTIVE BORDER LINE. WE HEREBY DEDICATE TO PUBLIC USE FOR STREET AND PUBLIC UTILITY PURPOSES LOTS "A" THROUGH "G" INCLUSIVE.

WE ALSO HEREBY DEDICATE THE DRAINAGE EASEMENTS AS SHOWN HEREON, FOR CONSTRUCTION AND MAINTENANCE OF DRAINAGE FACILITIES.

GALLERY ESTATES PARTNERS, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

_____ MEMBER

## NOTARY ACKNOWLEDGEMENT

STATE OF CALIFORNIA )
COUNTY OF RIVERSIDE ) S.S.

ON September 1, 2006 BEFORE ME, R. Hector Perez NOTARY PUBLIC, PERSONALLY APPEARED Richard D. Howser
PERSONALLY KNOWN TO ME (OR PROVED TO ME ON THE BASIS OF SATISFACTORY EVIDENCE) TO BE THE PERSON(S) WHOSE NAME(S) IS/ARE SUBSCRIBED TO THE WITHIN INSTRUMENT AND ACKNOWLEDGED TO ME THAT HE/SHE/THEY EXECUTED THE SAME IN HIS/HER/THEIR AUTHORIZED CAPACITIES, AND THAT BY HIS/HER/THEIR SIGNATURE(S) ON THE INSTRUMENT THE PERSON(S) OR THE ENTITY UPON BEHALF OF WHICH THE PERSON(S) ACTED, EXECUTED THE INSTRUMENT.

WITNESS MY HAND AND OFFICIAL SEAL.

_____

MY COMMISSION EXPIRES August 31, 2006

Riverside COUNTY, CALIFORNIA

## TRUSTEE

1ST CENTENNIAL BANK, AS TRUSTEE, UNDER DEED OF TRUST RECORDED DECEMBER 5, 2003, AS INSTRUMENT NO. 2003-958885 OF OFFICIAL RECORDS.

BY: _____
SECRETARY / Vice President

## NOTARY ACKNOWLEDGEMENT

STATE OF CALIFORNIA )
COUNTY OF San Bernardino ) S.S.

ON 9-11-06 BEFORE ME, Sandra M. Palmer NOTARY PUBLIC, PERSONALLY APPEARED Edmund Schmidmeier
PERSONALLY KNOWN TO ME (OR PROVED TO ME ON THE BASIS OF SATISFACTORY EVIDENCE) TO BE THE PERSON(S) WHOSE NAME(S) IS/ARE SUBSCRIBED TO THE WITHIN INSTRUMENT AND ACKNOWLEDGED TO ME THAT HE/SHE/THEY EXECUTED THE SAME IN HIS/HER/THEIR AUTHORIZED CAPACITIES, AND THAT BY HIS/HER/THEIR SIGNATURE(S) ON THE INSTRUMENT THE PERSON(S) OR THE ENTITY UPON BEHALF OF WHICH THE PERSON(S) ACTED, EXECUTED THE INSTRUMENT.

WITNESS MY HAND AND OFFICIAL SEAL.

_____

MY COMMISSION EXPIRES 9-10-2006

San Bernardino COUNTY, CALIFORNIA

## TRUSTEE

FIRST AMERICAN TITLE INSURANCE COMPANY, AS TRUSTEE, UNDER DEED OF TRUST RECORDED DECEMBER 5, 2003, AS INSTRUMENT NO. 957480 OF OFFICIAL RECORDS.

BY: _____
SECRETARY

This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements, acreage or other matters shown thereon.



This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements, acreage or other matters shown thereon.



This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements, acreage or other matters shown thereon.



This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements, acreage or other matters shown thereon.

Exhibit "3"
Page 103

This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements, acreage or other matters shown thereon.

# Tax Search



| | |
|---|---|
| Riverside, California | |
| **Searched: 136-050-035** | |
| Order: 124070782 | |

| | |
|---|---|
| Tax Year: | 2023-2024 |
| Tax Cover: | 03/01/2024 |
| Searched By: | NEXTACE TPXML LOGIN |
| Searched On: | 3/11/2024 3:00 PM |

Company: LAWYERS TITLE INSURANCE COMPANY | 6323-BURBANK OPS - (FNFSTR) | 05 | CRN: 00063-00023

| | |
|---|---|
| APN: | **136-050-035** |
| Described As: | **1.03 ACRES M/L IN LOT 8 MB 375/045 TR 30725** |
| Address: | **11364 ESTATES CT** |
| City: | **UNINCORPORATED - COUNTY OF RIVERSIDE** |
| Billing Address: | **9171 WILSHIRE BLV 300 BEVERLY HILLS CA 90210** |
| Assessed Owner(s): | **LAWRENCE SHAMICKA; LAWRENCE ROBERT** |
| Search As: | **Lot 8 Map 375/45 (Tr 30725)** |

| | | | | | |
|---|---|---|---|---|---|
| Tax Rate Area: | 053-021 | **Value** | | Conveyance Date: | **AUG 2014** |
| | | Land: | 362,180.00 | Conveying Instrument: | 2014-0321211 |
| Use Code: | 419 | Improvements: | 1,146,924.00 | Date Transfer Acquired: | |
| **SINGLE FAMILY DWELLING** | | Personal Property: | | Vesting: | |
| Region Code: | | Fixtures: | | Year Built: | |
| Flood Zone: | | Inventory: | | Year Last Modified: | |
| Zoning Code: | | | | | |
| Taxability Code: | | **Exemptions** | | **Square Footage** | |
| | | Homeowner: | | | |
| Tax Rate: | 1.269805 | Inventory: | | Land: | 44867 |
| Auditor Tax Rate: | 1.216070 | Personal Property: | | Improvements: | |
| | | Religious: | | | |
| | | All Other: | | Tax Defaulted: | |
| Bill #: | 2023005239478 | Net Taxable Value: | 1,509,104.00 | Total Tax: | 19,162.68 |
| Issue Date: | | | | | |

| Installment | Amount | Penalty | Due Date | Status | Payment Date | Balance |
|---|---|---|---|---|---|---|
| 1st | 9,581.34 | 958.13 | 12/10/2023 | PAID | 11/13/2023 | 0.00 |
| 2nd | 9,581.34 | 996.19 | 04/10/2024 | UNPAID | | 9,581.34 |
| | | | | | **Total Balance:** | **9,581.34** |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Bonds: | **0** | Parcel Changed: | | Sold to State: | **0** | Mello-Roos: | **N** | NSF: | **N** |

| Account | Special Lien Description | Amount |
|---|---|---|
| 01-0000 | **GENERAL PURPOSE** | 15,091.04 |
| 03-0501 | **ALVORD UNIFIED SCHOOL B & I** | 2,986.06 |
| 03-9101 | **RIVERSIDE COMMUNITY COLLEGE B & I** | 221.84 |
| 04-5351 | **METRO WATER DISTRICT WEST 1302999** | 52.82 |
| 68-1377 | **FLOOD CONTROL STORMWATER / CLEANWATER/SANTA ANA** | 4.06 |
| 68-1789 | **CSA #132 ST LTS** | 89.26 |
| 68-1852 | **CSA #152 ST SWEEPING** | 45.02 |
| 68-4571 | **NORTHWEST MOSQUITO & VECTOR CONTROL DISTRICT** | 2.24 |
| 68-5360 | **METRO WATER DISTRICT STANDBY WEST** | 9.50 |

Exhibit "3"
Page 105

| 68-5705 | WESTERN MUNI WATER DIST FIXED SEWER CHG | 660.84 |

**\*\*\* END OF REPORT \*\*\***

**136-050-035**
Riverside, California

Page 2 of 2

Order: 124070782
Printed by LTINA23 on 3/11/2024 3:00:20 PM

Exhibit "3"
Page 106

RECORDING REQUESTED BY



SOUTHERN CALIFORNIA
**EDISON**
An *EDISON INTERNATIONAL* Company

WHEN RECORDED MAIL TO

**SOUTHERN CALIFORNIA EDISON COMPANY**

Corporate Real Estate
14799 Chestnut Street
Westminster, CA 92683-5240

Attn: Distribution/TRES

DOC # 2005-0691236
08/23/2005 08:00A Fee:10.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder



| M | S | U | | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| A | R | L | | COPY | LONG | REFUND | NCHG | EXAM | | |

**GRANT OF EASEMENT**

483700

DOCUMENTARY TRANSFER TAX $ NONE (VALUE AND CONSIDERATION LESS THAN $100.00)

SCE Company
SIG. OF DECLARANT OR AGENT DETERMINING TAX    FIRM NAME

| DISTRICT | WORK ORDER | IDENTITY | MAP SIZE |
|---|---|---|---|
| Ontario | 6834-1888 | E-1807 | |
| FIM APN N/A | APPROVED: REAL PROPERTIES AND ADMIN. SVCS. | BY SLS/AR | DATE 7/05/05 |

GALLERY ESTATES PARTNERS, LLC, a California Limited Liability Company (hereinafter referred to as "Grantor"), hereby grants to SOUTHERN CALIFORNIA EDISON COMPANY, a corporation, its successors and assigns (hereinafter referred to as "Grantee"), an easement and right of way to construct, use, maintain, operate, alter, add to, repair, replace, reconstruct, inspect and remove at any time and from time to time underground electrical supply systems and communication systems (hereinafter referred to as "systems"), consisting of wires, underground conduits, cables, vaults, manholes, handholes, and including above-ground enclosures, markers and concrete pads and other appurtenant fixtures and equipment necessary or useful for distributing electrical energy and for transmitting intelligence by electrical means, in, on, over, under, across and along that certain real property in the County of Riverside, State of California, described as follows:

ALL STREETS, HIGHWAYS, PUBLIC PLACES, AND WITHIN SIX FEET OF ALL FRONT LOT LINES, ALSO THREE FEET ON EACH SIDE OF ALL SIDE LOT LINES OF LOTS 1 THROUGH 13, INCLUSIVE, OF TRACT NO. 30725, AS PER MAP ON FILE IN BOOK 375, PAGES 45 THROUGH 48, INCLUSIVE, OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Legal description was prepared pursuant to Sec. 8730(c) of the Business & Professions Code.

Grantor agrees for itself, its successors and assigns, not to erect, place or maintain, nor to permit the erection, placement or maintenance of any building, planter boxes, earth fill or other structures except walls and fences on the above described real property. The Grantee, and its contractors, agents and employees, shall have the right to trim or cut tree roots as may endanger or interfere with said systems and shall have free access to said systems and every part thereof, at all times, for the purpose of exercising the rights herein granted; provided, however, that in making any excavation on said property of the Grantor, the Grantee shall make the same in such a manner as will cause the least injury to the surface of the ground around such excavation, and shall replace the earth so removed by it and restore the surface of the ground to as near the same condition as it was prior to such excavation as is practicable.

EXECUTED this 2nd day of *August*_____, 20*05*.

**GRANTOR**

GALLERY ESTATES PARTNERS, LLC, a California Limited
Liability Company

Signature _____

Print Name *Richard D. Hauser*

Title *Agent, Managing Member*

Signature _____

Print Name _____

Title _____

STATE OF CALIFORNIA        )
                           ) ss.
COUNTY OF *Riverside*      )

On *8/2*_____, 2005, before me, *Debbie Jo Svette*_____ a Notary Public in
and for said State, personally appeared *Richard D. Hauser*_____
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacities, and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature of Notary

[Notary Seal:
DEBBIE JO SVETTE
Commission # 1505857
Notary Public - California
Riverside County
My Comm. Expires Aug 6, 2008]

STATE OF CALIFORNIA        )
                           ) ss.
COUNTY OF _____      )

On _____, 2005, before me, _____ a Notary Public in
and for said State, personally appeared _____
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacities, and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature of Notary

2

Exhibit "4"

1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  TINHO MANG, #322146
   tmang@marshackhays.com
3  MARSHACK HAYS WOOD LLP
   870 Roosevelt
4  Irvine, California 92620
   Telephone: (949) 333-7777
5  Facsimile: (949) 333-7778

6  Attorneys for Chapter 7 Trustee,
   ARTURO M. CISNEROS
7

8                    UNITED STATES BANKRUPTCY COURT

9            CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

10 In re                                Case No. 6:23-bk-15163-WJ

11 SHAMICKA LAWRENCE,                   Chapter 7

12          Debtor.                     STIPULATION REGARDING
                                        MARKETING OF CO-OWNED REAL
13                                      PROPERTY

14                                      [NO HEARING REQUIRED]

15 TO THE HONORABLE WAYNE JOHNSON, UNITED STATES BANKRUPTCY JUDGE, THE

16 OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

17      This stipulation is entered into between Arturo M. Cisneros, in his capacity as the duly

18 appointed and acting Chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of Shamicka

19 Lawrence ("Debtor"), and Robert Lawrence, solely in his capacity as trustee of The Lawrence

20 Children's Trust u/t/a dated May 6, 2014 ("Children's Trust" and collectively with Trustee, the

21 "Parties"), regarding the following:

22                            **Recitals**

23      A.    On November 3, 2023, Debtor filed a voluntary petition under Chapter 7 of Title 11

24 the United States Code commencing the above-captioned Bankruptcy Case. Arturo M. Cisneros is

25 the duly appointed and acting Chapter 7 Trustee of the Estate.

26      B.    Debtor and the Children's Trust are 50% title co-owners of real property commonly

27 known as 11364 Estates Court, Riverside, CA 92503 ("Property").

28      C.    The beneficiaries of the Children's Trust are Debtor's adult daughters.

                                    1

    D.      On January 30, 2024, as Docket No. 39, Trustee filed an application to employ Brian Thompson of Winterstone Real Estate and Development as the Estate's real estate broker ("Broker Application").

    E.      On February 14, 2024, as Docket No. 45, Trustee filed a stipulation between the Parties regarding the Children's Trust's nonconsent to Trustee commencing any marketing efforts for the Property, and providing terms between the Parties with respect to the Broker Application.

    F.      On March 1, 2024, the Parties conferred via videoconference and the Children's Trust provided written confirmation that it consented to Trustee beginning to market the Property for sale.

    G.      Trustee has informed the Children's Trust and Debtor that he intends on seeking the best and highest price for the Property, and to market the Property in a commercially reasonable manner, and to conduct a sale process for the Property to maximize its value, including that any offer to purchase the Property shall be expressly subject to overbid, and final approval by the Court.

    H.      On March 22, 2024, the Property was listed for $1,895,000.

    I.      Previously, on November 9, 2023, the Children's Trust paid the entire amount of the first installment of property tax due for the Property, in the amount of $9,581.34. An additional payment of $9,581.34 is due on April 10, 2024.

The Parties agree and STIPULATE as follows:

    1.      The Children's Trust consents to Trustee making commercially reasonable efforts to market the Property for sale. The Children's Trust shall not unreasonably restrict, during normal business hours, access to the Property by the Trustee and Trustee's agents, provided that Trustee provides the Children's Trust at least 48 hours' written notice.

    2.      The Children's Trust agrees that Trustee shall not be required to file an adversary proceeding to seek permission to sell the Property, subject to the terms of this Stipulation, and, solely for the purposes of facilitating an efficient process for maximizing the value of the Property and avoiding unnecessary adversary litigation, waives the procedural requirement of FRBP 7001(3) with respect to Trustee's efforts to administer the Property.

2

STIPULATION FOR TURNOVER OF REAL PROPERTY

3.   The Children's Trust does **not,** by execution of this Stipulation, consent to the sale of the Property. The Children's Trust retains all rights to oppose a motion for sale of the Property by Trustee, and all other rights under 11 U.S.C. § 363 of a co-owner of the Property.

4.   Prior to filing a motion seeking authority to sell the Property, Trustee shall provide the Children's Trust with a copy of any offer accepted by Trustee, and the Children's Trust, as co-owner of the Property, retains its rights to accept or reject any such offer on behalf of the Children's Trust.

5.   While reserving all rights as stated in Paragraph 3 above, the Children's Trust agrees that in the event that the Court approves a sale of the Property, the proceeds of the Property shall be allocated and paid as follows:

a.  First, to pay all outstanding and pro-rated real property taxes and documentary transfer taxes concerning the Property;

b.  Second, to pay all actual and commercially reasonable costs of sale, including but not limited to escrow fees, broker's/agent's fees, recording fees, and title insurance fees. The Parties agree that their respective professional fees, including attorney fees and accounting fees, and the Trustee's fee/compensation are not a cost of sale;

c.  Third, the Children's Trust shall be entitled to a credit and reimbursement out of escrow in the amount of $4,790.67, representing one-half of the post-petition property taxes paid by the Children's Trust – and to the extent that the Children's Trust actually pays the April 2024 property tax payment, the Children's Trust shall be granted an additional credit and reimbursement equal to one-half of the property tax payment actually made;

d.  Fourth, after paying items 5(a)-5(c) from the gross proceeds of the sale, that the remaining proceeds shall be evenly divided between the Estate and the Children's Trust, with the Children's Trust to receive, upon close of escrow, immediate payment of its portion out of escrow without any other deduction, setoff, or holdback except as expressly stated in this Stipulation or any further order by the Court; and

STIPULATION FOR TURNOVER OF REAL PROPERTY
4856-9108-8511,v.1/1004-029

e.  Fifth, the Parties shall each be responsible for any respective capital gains or other taxes, if any, which may arise from their portion of the proceeds from the sale of the Property. For the avoidance of doubt, the Children's Trust does not consent to the payment or allocation of any attorneys' fees or Trustee's statutory compensation being paid as a cost of sale under Paragraph 5(b), nor any such allocation to the detriment of its one-half portion under Paragraph 5(d), in connection with any sale and close of escrow. Nothing in this paragraph constitutes an objection by the Children's Trust to the payment of professional fees out of the Estate's portion of Property proceeds.

6.  The Children's Trust agrees that in the event that Trustee files a motion to sell the Property, it shall vacate the Property no later than the date of the hearing on Trustee's motion to sell the Property. Additionally, the Children's Trust agrees that it shall not (to the extent of its 50% ownership of the Property) grant permission to any third parties to occupy the Property, including specifically the Debtor, the Debtor's brother Donnell Gibbs, and the Debtor's mother Susan Gibbs. If the Children's Trust is the successful purchaser of the Property, this paragraph shall not apply.

7.  The Parties agree that the United States Bankruptcy Court for the Central District of California, Riverside Division shall have exclusive authority to interpret, enforce, and resolve any disputes arising from this Stipulation.

8.  This Stipulation may be executed in one or more counterparts and facsimile or electronic signatures may be used in filing this document with the Court.

Dated: April 10, 2024          JEFFER MANGELS BUTLER & MITCHELL LLP

                               By: _____
                               THOMAS M. GEHER
                               Attorneys for Robert Lawrence, Trustee of the
                               LAWRENCE CHILDREN'S TRUST U/T/A
                               MAY 6, 2014

Dated: April 10, 2024

                               By: _____
                               ARTURO M. CISNEROS
                               Chapter 7 Trustee

4856-9108-8511.v.1/1004-029

Presented By:

Dated: April 11, 2024

MARSHACK HAYS WOOD LLP

By: /s/ Tinho Mang
    D. EDWARD HAYS
    TINHO MANG
    Attorneys for Chapter 7 Trustee
    ARTURO M. CISNEROS

5

STIPULATION FOR TURNOVER OF REAL PROPERTY

4856-9108-8511,v.1/1004-029

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620.

A true and correct copy of the foregoing document entitled: **STIPULATION REGARDING MARKETING OF CO-OWNED PROPERTY** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 11, 2024**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On **April 11, 2024**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**DEBTOR**
SHAMICKA LAWRENCE
11364 ESTATES COURT
RIVERSIDE, CA 92503-0639

**INTERESTED PARTY**
ALL OCCUPANTS AND/OR TENANTS
OCCUPYING THE REAL PROPERTY
LOCATED AT:
11364 ESTATES COURT
RIVERSIDE, CA 92503-0639

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April 11, 2024**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA OVERNIGHT MAIL:**
HONORABLE WAYNE JOHNSON
UNITED STATES BANKRUPTCY COURT
3420 Twelfth Street, Suite 384 / Courtroom 304
Riverside, CA 92501-3819

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 11, 2024 | Chanel Mendoza | /s/ Chanel Mendoza |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **TRUSTEE: Arturo Cisneros (TR)**    amctrustee@mclaw.org,
  acisneros@iq7technology.com;ecf.alert+Cisneros@titlexi.com
- **ATTORNEY FOR DEBTOR: Alan W Forsley**    alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-
  lawyers.net,addy@flpllp.com
- **ATTORNEY FOR ROBERT LAWRENCE, TRUSTEE OF THE LAWRENCE CHILDREN'S TRUST UTA MAY 6,
  2014: Thomas M Geher**    tmg@jmbm.com, bt@jmbm.com;tmg@ecf.courtdrive.com
- **ATTORNEY FOR INTERESTED PARTY MASSAGE ENFY FRANCHISING: Eric D
  Goldberg**    eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- **ATTORNEY FOR TRUSTEE: D Edward Hays**    ehays@marshackhays.com,
  ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdri
  ve.com
- **ATTORNEY FOR DEBTOR: Marc A Lieberman**    marc.lieberman@flpllp.com,
  safa.saleem@flpllp.com,addy@flpllp.com
- **ATTORNEY FOR TRUSTEE: Tinho Mang**    tmang@marshackhays.com,
  tmang@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com
- **U.S. TRUSTEE: United States Trustee (RS)**    ustpregion16.rs.ecf@usdoj.gov

4887-4143-3526, v. 1

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                          **F 9013-3.1.PROOF.SERVICE**

Exhibit "4"
Page 115

Exhibit "5"







● Under contract

See all 29 photos

Listing Provided by: Brian Thompson DRE #01828461 949-981-9120, Brian Thompson, Broker

# $1,895,000

11364 Estates Ct, Riverside, CA 92503

**5** beds

**5** baths

**6,000** sqft

Est.: **$12,324/mo** ✎ Get pre-qualified

**Contact agent**

| 🏠 Single Family Residence | 🏷 Built in 2005 | 📐 1.03 Acres lot |
| 💲 $1,892,800 Zestimate® | 📊 $316/sqft | 🌐 $-- HOA |

## What's special

ROLLING HILLS    LUSH ENVIRONMENT    ELEVATED CULL DU SAC    LARGE KITCHEN UTILITY ISLAND

EXTENSIVE PANORAMIC VIEWS    GRAND DINING ROOM    SPACIOUS FLOORPLAN

The property will be open to any and all QUALIFIED overbidding at a future hearing date, yet to be set. Bankruptcy Court Sale Hearing details to follow....Fantastic opportunity to own a custom estate with dream home features.   The privately gated property is situated at the tip of an elevated cull du sac offering extensive panoramic views and privacy.  The resort style pool/spa and custom luxury "Cabana" (multiple

⌄ Show more

**19 days** on Zillow    |    **2,713** views    |    **139** saves    |    Likely to sell faster than **94% nearby**







**● Under contract**

See all 70 photos

Listing Provided by: Toma Groza DRE #01349455 951-310-4830, Realty Masters & Associates

# $1,499,000

11339 Morning Glory Ct, Riverside, CA 92503

| **4** beds | **4** baths | **4,279** sqft |

Est.: **$9,750/mo**  ✎ **Get pre-qualified**

| 🏠 Single Family Residence | 📐 Built in 2005 | 📏 0.62 Acres lot |
| 💲 $1,506,500 Zestimate® | 📊 $350/sqft | 🤲 $-- HOA |

Contact agent

## What's special

| GATED POOL | RV PARKING | PRIVATE IRON GATES | SPRAWLING ELEGANT HOME | BBQ ISLAND |

| PRIVATE VILLA STYLED BACKYARD | DOWNSTAIRS LAUNDRY |

This estate has everything you could possibly need & more. Behind private iron gates lies a sprawling elegant home with lots of upgrades, showcasing a private villa styled backyard with gated pool, spa, waterfalls, large covered patio and BBQ island, large fire pit with seating, huge sandbox, kids veggie garden box & multiple seating areas that are perfect for children & the master host. Over 50 trees / fruit trees. The

⌄ **Show more**

**21 days** on Zillow    |    **1,312** views    |    **62** saves    |    Likely to sell faster than **80% nearby**



# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620.

A true and correct copy of the foregoing document entitled: **TRUSTEE'S MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY: (A) OUTSIDE THE ORDINARY COURSE OF BUSINESS; (B) FREE AND CLEAR OF LIENS; (C) SUBJECT TO OVERBIDS; AND (D) FOR DETERMINATION OF GOOD FAITH PURCHASER UNDER § 363(M); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF ARTURO M. CISNEROS AND BRIAN THOMPSON IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 24, 2024**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On **April 24, 2024**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April 24, 2024**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA OVERNIGHT MAIL:**
HONORABLE WAYNE JOHNSON
UNITED STATES BANKRUPTCY COURT
3420 Twelfth Street, Suite 384 / Courtroom 304
Riverside, CA 92501-3819

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| April 24, 2024 | Chanel Mendoza | /s/ Chanel Mendoza |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **TRUSTEE: Arturo Cisneros (TR)**   amctrustee@mclaw.org, acisneros@iq7technology.com;ecf.alert+Cisneros@titlexi.com
- **INTERESTED PARTY COURTESY NEF: Alan W Forsley**   alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy@flpllp.com
- **ATTORNEY FOR LAWRENCE CHILDREN'S TRUST UTA MAY 6, 2014: Thomas M Geher**   tmg@jmbm.com, bt@jmbm.com;tmg@ecf.courtdrive.com
- **ATTORNEY FOR INTERESTED PARTY MASSAGE ENFY FRANCHISING: Eric D Goldberg**   eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- **ATTORNEY FOR TRUSTEE: D Edward Hays**   ehays@marshackhays.com, ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- **ATTORNEY FOR DEBTOR: Marc A Lieberman**   marc.lieberman@flpllp.com, safa.saleem@flpllp.com,addy@flpllp.com
- **ATTORNEY FOR TRUSTEE: Tinho Mang**   tmang@marshackhays.com, tmang@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com
- **U.S. TRUSTEE: United States Trustee (RS)**   ustpregion16.rs.ecf@usdoj.gov

2. **SERVED BY UNITED STATES MAIL**: (CONTINUED)

**DEBTOR**
SHAMICKA LAWRENCE
11364 ESTATES COURT
RIVERSIDE, CA 92503-0639

**INTERESTED PARTY**
ALL OCCUPANTS AND/OR
TENANTS OCCUPYING THE REAL
PROPERTY LOCATED AT:
11364 ESTATES COURT
RIVERSIDE, CA 92503-0639

**INTERESTED PARTY**
ROBERT LAWRENCE, TRUSTEE
LAWRENCE CHILDREN'S TRUST
U/D/T MAY 6, 2014
C/O NANCY BOXWELL, ESQ.
GANG TYRE RAMER BROWN &
PASSMAN
132 S RODEO DR, BEVERLY
HILLS, CA 90212

**SECURED CREDITOR**
RIVERSIDE COUNTY TAX
COLLECTOR
ATTN: MATTHEW JENNINGS
TREASURER-TAX COLLECTOR
4080 LEMON ST, 4TH FLOOR
RIVERSIDE, CA 92501-3609

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**