B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| U.S. Trustee for the Central District of California, Region 16 | Shamicka Lawrence |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| Everett L. Green, Esq.<br>Office of U.S. Trustee - 3801 University Ave., Ste. 720<br>Riverside, CA 92501    T: (951) 276-6990 | Marc A. Liberman, Esq.<br>1875 Century Park E. Ste. 2230<br>Los Angeles, CA 90067  T: (310) 284-7350 |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| ☐ Debtor        ☒ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor      ☐ Other<br>☐ Trustee | ☒ Debtor        ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor      ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
 Complaint to deny discharge pursuant to 11 U.S.C. 727(a).

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☒ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $ |

Other Relief Sought

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Shamicka Lawrence | BANKRUPTCY CASE NO.<br>6:23-bk-15163-WJ | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Riverside | NAME OF JUDGE<br>Hon. Wayne E. Johnson |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>*Everett L. Green* | | |
| DATE<br><br>December 5, 2024 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Everett L. Green | |

### INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located.  Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate.  There also may be lawsuits concerning the debtor's discharge.  If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF).  (CM/ECF captures the information on Form 1040 as part of the filing process.)  When completed, the cover sheet summarizes basic information on the adversary proceeding.  The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court.  The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney).  A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.**  Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.**  Give the names and addresses of the attorneys, if known.

**Party**.  Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.**  Enter the dollar amount being demanded in the complaint.

**Signature.**  This cover sheet must be signed by the attorney of record in the box on the second page of the form.  If the plaintiff is represented by a law firm, a member of the firm must sign.  If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

1  PETER C. ANDERSON
   UNITED STATES TRUSTEE
2  ABRAM S. FEUERSTEIN, SBN 133775
   ASSISTANT UNITED STATES TRUSTEE
3  EVERETT L. GREEN, SBN 237936
   TRIAL ATTORNEY
4  UNITED STATES DEPARTMENT OF JUSTICE
   OFFICE OF THE UNITED STATES TRUSTEE
5  3801 University Avenue, Suite 720
   Riverside, CA 92501
6  Telephone:     (951) 276-6990
   Facsimile:     (951) 276-6973
7  Email:         Everett.L.Green@usdoj.gov

8                    **UNITED STATES BANKRUPTCY COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                        **RIVERSIDE DIVISION**

11

12  In re:                                    Case No. 6:23-bk-15163-WJ

13  SHAMICKA LAWRENCE,                         CHAPTER 7

14

15              Debtor.

16  _____

17  UNITED STATES TRUSTEE FOR THE            Adversary No. [pending assignment]
    CENTRAL DISTRICT OF CALIFORNIA,
18  REGION 16,
                                             **COMPLAINT TO DENY
19              Plaintiff,                    DEBTOR'S DISCHARGE PURSUANT
                                             TO 11 U.S.C. §§ 727(a)(2), (a)(4) & (a)(6)**
20         v.

21                                           (Summons To Be Issued)
    SHAMICKA LAWRENCE,
22

23              Defendant.

24

25

26

27

28

                                    -1-

Plaintiff, United States Trustee for the Central District of California, Region 16 ("U.S. Trustee" or "Plaintiff"), hereby alleges as follows:

**I.      JURISDICTION, VENUE AND STANDING**

1.      Jurisdiction is proper under 28 U.S.C. § 1334.  Venue is proper pursuant to 28 U.S.C. § 1409(a).

2.      This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (J) and/or (O).

3.      This adversary proceeding arises out of the chapter 7 case of debtor Shamicka Lawrence ("Defendant"), case number 6:23-bk-15163-WJ.

4.      To the extent this dispute involves any non-core matters, and/or matters in which a bankruptcy judge may not enter final judgment without the parties' consent, Plaintiff consents to the entry of final judgment by the Court.

**II.     THE PARTIES**

5.      Plaintiff is the duly appointed United States Trustee for Region 16, which comprises the Judicial District of the Central District of California.

6.      Defendant, with the assistance of counsel, filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code on November 3, 2023 ("Petition Date").

7.      Defendant is an individual residing in the State of California and within the Central District of California.

**III.    ALTER EGO ALLEGATIONS**

8.      In her Statement of Financial Affairs, Defendant states that within four years of the Petition Date, she served as a member, partner and/or officer and director of 13 different entities organized under the laws of the State of California and other states (sometimes collectively referred to as the "Lawrence Entities"). At all relevant times, Defendant organized and conducted business through the Lawrence Entities.

9.      Plaintiff is informed and believes and based thereon alleges that at all relevant times mentioned herein, the Lawrence Entities were the alter egos of Defendant.

10.     Plaintiff is informed and believes and based thereon alleges that Defendant dominated, influenced and controlled the business, property, and affairs of the Lawrence Entities.

-2-

11.    Plaintiff is informed and believes and based thereon alleges that, at all times mentioned herein, Defendant used the Lawrence Entities as mere shells, instrumentalities or conduits to conduct her personal business, property and affairs.

12.    Plaintiff is informed and believes and based thereon alleges that Defendant treated the assets of the Lawrence Entities as her own.

13.    Plaintiff is informed and believes and based thereon alleges that Defendant disregarded corporate formalities in operating the Lawrence Entities.

14.    Plaintiff is informed and believes and based thereon alleges that the Lawrence Entities operated to further a fraudulent plan, scheme or device conceived and executed by Defendant.

15.    Plaintiff is informed and believes and based thereon alleges that at all times relevant hereto, the Lawrence Entities were undercapitalized and/or insolvent.

16.    Plaintiff is informed and believes and based thereon alleges that Defendant used the Lawrence Entities to defraud creditors by using the Lawrence Entities as a shield against personal liability.

17.    Plaintiff is informed and believes and based thereon alleges that Defendant and the Lawrence Entities were and/or are alter egos of each other, such that Defendant so owned, operated, managed, maintained and/or controlled the activities of the Lawrence Entities such that there existed a unity of interests and ownership between the Lawrence Entities and Defendant and the separate personalities of the Lawrence Entities and Defendant no longer exist and that the Lawrence Entities corporate shells should rightly be disregarded in the interests of justice.

18.    By virtue of the foregoing, adherence to the fiction of the separate corporate existence of the Lawrence Entities would, under the circumstances, sanction a fraud and promote injustice.

19.    At all times relevant hereto, Defendant was acting as the agent or employee of each and every Lawrence Entity.  In doing the things alleged in the claims for relief described in this complaint, Defendant was acting within the course and scope of her agency as an officer of the Lawrence Entities or employment and was acting with the consent, permission, and authorization of the Lawrence Entities.

**IV.    STATEMENT OF STANDING**

20.    Plaintiff has standing to bring this action under 11 U.S.C. §§ 307 and 727 and Federal Rule of Bankruptcy Procedure 7001(4).

-3-

## V.    GENERAL ALLEGATIONS

### A.    Within Three Years Of Her Bankruptcy Filing, Defendant's Entities Are Awarded Over Five Million Dollars In COVID-19 Pandemic Relief.

21.    Defendant is the direct and indirect owner of multiple massage, day spas, and wellness franchises.  Many of the Lawrence Entities are now closed and/or defunct.

22.    Beginning in 2020, Defendant applied for and received several Coronavirus Disease 2019 ("COVID-19") business disaster assistance loans.  The loans were issued by federal agencies and intended to provide financial relief and working capital to small businesses during the pandemic.

23.    The U.S. Small Business Administration ("SBA") awarded Defendant's companies over $2 million beginning on or about March 6, 2021, under the Paycheck Protection Program.[1]

24.    In addition, the SBA issued economic injury disaster loans ("EIDLs") to the Lawrence Entities of almost $3 million.

25.    As part of the application process, beginning on October 15, 2022, Defendant signed loan agreements for each entity promising under penalty of perjury that she would "use all the proceeds  . . . solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter."

26.    Defendant also signed an unconditional guaranty agreement, promising to repay the obligations of the Lawrence Entities.  Based on Defendant's consent to abide by the provisions in the loan agreements and the guaranty agreements, beginning in 2022, the SBA deposited over $3 million into the bank accounts of Defendant's entities (sometimes referred to as "EIDL Proceeds").

27.    Although Defendant promised she would use the EIDL Proceeds as working capital to pay debt obligations arising from COVID-19, within one year of the Petition Date, beginning on or about May 17, 2022, Defendant accessed the bank accounts of ten separate entities who received EIDLs, and

---

[1]    On March 27, 2020, the Coronavirus Aid, Relief, and Economic Stimulus Act ("CARES Act") was enacted.  The CARES Act established the Paycheck Protection Program, a loan program that would provide relief to small businesses experiencing economic hardship as a result of the COVID-19 virus. Section 1102(a)(2) of the CARES Act extends loans to eligible small businesses for certain covered uses, including payroll costs, payment of interest on any mortgage obligation, and rent, among other approved uses.  *See* CARES Act § 1102(a)(2); 15 U.S.C. § 636(a)(36)(F)(i).

transferred $2.7 million of the EIDL Proceeds received by each entity into the account of her holding company.

28.    From the holding company's account, on or about June 20, 2022, Defendant wired $1.9 million to her daughter (the "Insider Transfer").  At the time of the Insider Transfer, Defendant's daughter was a minor.

29.    Defendant originally testified, at her meeting of creditors, that she transferred the funds to repay a personal loan made by her daughter.

30.    Defendant changed her testimony at a Rule 2004 examination.  She engaged in the Insider Transfer, she testified, to prevent certain aggressive creditors from filing a lawsuit against her and seizing funds held in her entities' bank accounts.

31.    Specifically, Defendant testified:

Q:        Why was the decision made to transfer funds from those entities in such large amounts?

Debtor:        . . . this was the month where [the creditor] was threatening and all that.

Q:        You're intending to make the transfer to [your daughter] and so you were moving funds to - ?

Debtor:        Yeah, that is accurate.  I moved it into [the holding company's account] hoping to settle everything with just a payment, but [the creditor] was still threatening so I gave [the creditor] what I could, and that I transferred [to my daughter].

Q:        Ms. Lawrence, why did you give the funds to [your daughter] to hold?

Debtor:        . . . To be honest, I knew that I could trust my child to just hold it. And, you know, what was – I knew I could trust her.[2]

32.    Based on their financial records, Defendant's entities were insolvent at the time of the Insider Transfer.  The Lawrence Entities, among other things, defaulted on loans from creditors, including a $1.6 million loan from Strategem Investments, LLC, and a loan of $120,000 from Glenn March.  According to Schedules E/F, Defendant is personally liable on these debt obligations.

---

[2]        The U.S. Trustee examined Defendant under Rule 2004 on October 16, 2024.

33.     The Insider Transfer, although carried out through her alter ego entities, allowed Defendant to hinder and delay the collection actions of the creditors of the Lawrence Entities and her creditors. Consequently, Defendant derived a direct and personal benefit from the Insider Transfer.

**B.      After Defendant Transferred $1.9 Million To Her Daughter, Defendant Maintained A Beneficial Ownership In The Transferred Funds.**

34.     According to Defendant, she instructed her daughter to hold the $1.9 million and to transfer some of the funds back to the entities upon request.  As set forth above, Defendant testified that she engaged in the Insider Transaction to prevent aggressive creditors from filing a lawsuit against her and seizing funds held in the Lawrence Entities accounts.  The maneuver was intended to place funds, some of which consisted of Defendant's executive compensation, out of the reach of Defendant's creditors.

35.     Around the time of the Insider Transfer, Defendant admitted that her daughter did not demand or request repayment of any prior loans.  Nonetheless, Defendant instructed her daughter to pay herself $300,000 of the $1.9 million in EIDL Proceeds.  Defendant also paid her personal expenses from the amounts her daughter transferred back into the entities.

**C.      Defendant Transfers A Portion Of The EIDL Proceeds To Herself And Liquidates Her Brokerage Accounts To Prevent Her Creditors From Seizing The Funds.**

36.     The same month as the Insider Transfer, on June 29, 2022, Defendant accessed her holding company's account and transferred $40,000 to her personal bank account.  Like the Insider Transfer, this transfer was part of Defendant's efforts to place assets out of the potential reach of creditors.

37.     Defendant sought the advice of counsel and as part of exemption planning, withdrew all amounts from a brokerage account she owned.

**D.      Defendant Attempts To Conceal The Insider Transfer From The Chapter 7 Trustee And Creditors.**

38.     Although it involved the transfer of $1.9 million to her daughter, in bankruptcy documents filed under oath, and testimony at her meeting of creditors, Defendant attempted to conceal the Insider Transfer.

39.     The Statement of Financial Affairs requires a debtor to disclose transfers and payments on debt owed to insiders within one year of the bankruptcy filing and transfers of property within two years

1  of the filing.

2      40.      As part of the Insider Transfer, Defendant's daughter, within the one- or two-year period

3  before the Petition Date, repaid herself $300,000 — purportedly to satisfy a personal loan made to

4  Defendant.    Defendant's failure to disclose this payment or transfer constitutes a false oath.

5      41.      When asked to explain why she engaged in the Insider Transfer at her meeting of creditors,

6  Defendant testified falsely.  Defendant initially testified that she did not recall the details of the Insider

7  Transfer or the recipient.  Later in the meeting, she testified that she used the proceeds to repay a loan.  At

8  her Rule 2004 examination, however, Defendant testified that she engaged in the Insider Transfer to

9  prevent aggressive creditors from seizing the funds.

10                          **FIRST CLAIM FOR RELIEF**

11                  **(Denial of Discharge Under 11 U.S.C. § 727(a)(2))**

12      42.      The U.S. Trustee re-alleges and incorporates herein by reference each of the allegations in

13  paragraphs 1 through 41 as though fully set forth herein.

14      43.      A court may deny discharge under 727(a)(2) where a debtor, with intent to hinder, delay, or

15  defraud a creditor or an officer of the estate charged with custody of property under this title, has

16  transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed,

17  destroyed, mutilated, or concealed (A) property of the debtor, within one year before the date of the filing

18  of the petition.

19      44.      Property of the debtor under Section 727(a)(2)(A) includes a debtor's tangible and

20  intangible assets as defined by state law.  Propery of the debtor also includes property held by a debtor's

21  alter ego. *Singh v. U.S. Trustee (In re Singh)*, BAP No. CC-17-1353-FLS, 2019 Bankr. LEXIS 806

22  (B.A.P. 9th Cir. March 14, 2019) ("[t]his Panel and other courts have held that "property of the debtor'

23  includes not only property nominally held by the debtor, but also property held by the debtor's alter

24  ego.").

25

26

27

28

                                      -7-

45.     The alter ego doctrine applies here since, among other things, Defendant disregarded corporate formalities in operating her entities and used the entities for a fraudulent purpose — to place funds out of the reach of her creditors and the creditors of her companies' creditors.  *See Compton v. Bonham (In re Bonham)*, 224 B.R. 114, 116 (Bankr. D. Alaska 1998) (denying the debtor discharge under § 727(a)(2) because she had "disregarded the corporate formalities in operating both [corporations] and used the corporations as her own pocket book. She used them for an illegal and fraudulent purpose — to operate a Ponzi scheme. She transferred money freely and without rhyme or reason between the corporations and herself.").

46.     Next, Section 727(a)(2) requires a denial of discharge based on a debtor's commission of one of five impermissible acts, "transferred," "removed," "destroyed," "mutilated," or "concealed." 11 U.S.C. § 727(a)(2)(A).

47.     A debtor conceals "property of the debtor" under Section 727(a)(2)(A) when he attempts to prevent its discovery by placing his assets or the assets of his alter ego beyond the reach of his creditors or transfers title to an asset yet retains some "secret benefit" or beneficial interest.  *See Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240-1241 (9th Cir. 1997).

48.     By engaging in the Insider Transfer and transfers of money to herself, Defendant placed her assets and the assets of her alter ego out of the reach of creditors.

49.     Defendant also retained a beneficial interest in the transferred funds.  After she transferred the funds to her daughter Defendant never relinquished control of the funds — directing her daughter to hold and return the funds on Defendant's request.

50.     Moreover, Defendant initiated the Insider Transfer, and other transfers, as she admits, with the intent penalized by Section 727(a)(2)(A) – to hinder, delay, or defraud creditors.

51.     The court should deny Defendant's discharge under 11 U.S.C. § 727(a)(2).

**WHEREFORE,** Plaintiff prays for judgment against Defendant as set forth herein below:

1

**SECOND CLAIM FOR RELIEF**

2

**(Denial Of Discharge Pursuant To 11 U.S.C. § 727(a)(4))**

3      52.      The U.S. Trustee re-alleges and incorporates herein by reference each of the allegations in

4    paragraphs 1 through 51 as though fully set forth herein.

5      53.      Under 11 U.S.C. § 727(a)(4)(A), a court shall not grant a debtor a discharge if a debtor

6    knowingly and fraudulently, in or in connection with a case, makes a false oath or account.

7      54.      The Statement of Financial Affairs requires a debtor to disclose transfers and payments on

8    debt owed to insiders within one year of the bankruptcy filing and transfers of property within two years

9    of the filing.  As part of the Insider Transfer, Defendant's daughter, within the one- or two-year period

10   before the Petition Date, repaid herself $300,000.  Defendant's failure to disclose this payment or transfer

11   constitutes a false oath.

12     55.      Despite the omission, Defendant confirmed the accuracy of her Schedules and Statement of

13   Financial Affairs under oath at the meeting of creditors.

14     56.      Defendant's false oaths were made knowingly and fraudulently.

15     57.      The court should deny Defendant's discharge under 11 U.S.C. § 727(a)(4).

16     **WHEREFORE,** Plaintiff prays for judgment against Defendant as set forth herein below:

17

**THIRD CLAIM FOR RELIEF**

18

**(Denial of Discharge Under 11 U.S.C. § 727(6))**

19     58.      The U.S. Trustee re-alleges and incorporates herein by reference each of the allegations in

20   paragraphs 1 through 57 as though fully set forth herein.

21     59.      11 U.S.C. § 727(a)(6) requires a court to deny discharge where a debtor has refused in the

22   case, to obey any lawful order of the court, other than an order to respond to a material question or to

23   testify.

24     60.      As part of the U.S. Trustee's efforts to ascertain Defendant's transactions, the parties

25   stipulated under Federal Rule of Bankruptcy 2004 to an order compelling Defendant to testify under oath

26   and to produce documents ("Rule 2004 Order").

27

28

61.     The Rule 2004 Order required Defendant, among things, to produce all documents of the Insider Transfer, documents of loans by Defendant's daughter to Defendant or to the Lawrence Entities, and documents reflecting how Defendant and the Lawrence Entities spent the loan proceeds.

62.     Defendant did not produce responsive documents.

63.     Defendant was aware of the Rule 2004 Order. She did not comply with its provisions. Defendant's failure to comply with Rule 2004 Order was willful.

64.     The court should deny Defendant's discharge under 11 U.S.C. § 727(a)(6).

**WHEREFORE**, Plaintiff prays for judgment against each Defendant as set forth herein below:

## **PRAYER FOR RELIEF**

A.     That the court deny Defendant's discharge pursuant to 11 U.S.C. § 727(a).

B.     For costs of suit and attorney's fees as allowed by law incurred herein.

C.     For such other and further relief as the court deems just and proper.

Dated: December 5, 2024          UNITED STATES TRUSTEE FOR
                                 THE CENTRAL DISTRICT OF CALIFORNIA,
                                 REGION 16


                                 By:     /s/ Everett L. Green
                                         Everett L. Green
                                         Trial Attorney